UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MICHAEL BARBARULA,
ADMINISTRATOR OF THE ESTATE OF
JING XIAN HE,
        Plaintiff,

V.

CANAL INSURANCE COMPANY,
ROYAL INSURANCE COMPANY OF AMERICA,
ROYAL INDEMNITY COMPANY and
ROYAL SURPLUS LINES INS. CO.,

        Defendants.

CIVIL ACTION NO.

3:02 cv 1142 (JCH)

OCTOBER 10, 2003

**REPLY TO PLAINTIFF'S OBJECTION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Defendants, ROYAL INSURANCE COMPANY OF AMERICA, ROYAL INDEMNITY COMPANY and ROYAL SURPLUS LINES INSURANCE COMPANY, hereby respond to the plaintiff's September 15, 2003 objection to their motion for summary judgment.

    A.    <u>Eagle Is Not a Motor Carrier</u>

The plaintiff argues that "Eagle is clearly a motor carrier and thus the Royal defendants must meet the minimum coverage requirements of the federal MCA since Eagle trailers haul property in interstate commerce." The plaintiff's argument fails under the plain language of the pertinent federal regulations.

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No. 412195

The minimum financial responsibility requirements for motor carriers operating in interstate commerce are set forth in the CODE OF FEDERAL REGULATIONS, TITLE 49—TRANSPORTATION, SUBTITLE B--OTHER REGULATIONS RELATING TO TRANSPORTATION, CHAPTER III--FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION, DEPARTMENT OF TRANSPORTATION, SUBCHAPTER B--FEDERAL MOTOR CARRIER SAFETY REGULATIONS, PART 387--MINIMUM LEVELS OF FINANCIAL RESPONSIBILITY FOR MOTOR CARRIERS, SUBPART A--MOTOR CARRIERS OF PROPERTY.  The starting point for our analysis is 49 C.F.R. § 387.3 Applicability.  "(a) This subpart applies to *for-hire motor carriers* operating motor vehicles transporting property in interstate or foreign commerce." (Emphasis added).  Therefore, the plaintiff must establish that Eagle Leasing is a for-hire motor carrier in order to trigger the minimum financial responsibility requirement set forth in the federal regulations.

What is a "for-hire motor carrier?"  We next look to 49 C.F.R. § 387.5 Definitions.  "As used in this subpart--For-hire carriage means the business of transporting, for compensation, the goods or property of another."  The plaintiff has failed to establish that Eagle is a for-hire motor carrier.  There is no evidence that Eagle Leasing is engaged in "the business of transporting, for compensation, the goods or property of another."  Eagle Leasing is an equipment lessor of trailers, and not a for-hire motor carrier.  Plaintiff offers no contrary evidence, other than to

2

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No. 412195

erroneously suggest that "Eagle holds itself out as a vehicle and trucking lessor…" when in fact, Eagle's website clearly states, "Eagle Leasing is New England's largest independent trailer and container leasing company." Eagle does not lease motor vehicles and does not provide for-hire transportation of property belonging to others in interstate commerce.

Eagle leases trailers to motor carriers. In this case, Eagle leased a semi-trailer to Barbara Haniewski d/b/a Salguod Warehouse & Transport. Haniewski / Salgoud was the "motor carrier" providing "for-hire transportation of property" in interstate commerce. Thus, Haniewski / Salgoud, not Eagle Leasing, was subject to the federal minimum financial responsibility requirements for for-hire motor carriers. This is why Haniewski / Salgoud obtained a policy of insurance with Canal Insurance Company that contained the federally-mandated MCS-90 endorsement, so that Haniewski / Salgoud would be in compliance with the federal requirements.

Because Eagle is not a for-hire motor carrier, the trailer it leased to Salguod cannot be a motor vehicle subject to the financial responsibility requirements of the Motor Vehicle Act of 1980. Consequently, the minimum levels of financial responsibility as set forth in 49 C.F.R. § 387.9 are not "applicable" in this situation for purposes of applying the contingent coverage endorsement at issue. There is no question of material fact that the "applicable" limits referenced in the contingent coverage endorsement are those set forth under Connecticut law.

3

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No. 412195

B. <u>The Policy Language is Not Ambigous</u>

If the words in the policy are plain and unambiguous the established rules for the construction of contracts apply. The language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning, and courts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties.  See <u>Downs v. National Casualty Co.</u>, 146 Conn. 490, 494-95, 152 A.2d 316 (1959).  A court should not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity and words do not become ambiguous because lawyers or laymen contend for different meanings."  Indeed as said in <u>McGlinchey v. Aetna Casualty & Surety Co., 224 Conn. 133, 137, 617 A.2d 445 (1992)</u>: "There is no presumption that language in insurance contracts is inherently ambiguous.  Only if the language manifests some ambiguity do we apply the rule that ambiguous insurance contracts are to be construed in favor of insureds and to provide coverage."

The plaintiff argues that the endorsement is ambiguous because the word "any" in the contingent coverage endorsement "allows for multiple reasonable conclusions to be reached by the parties."  Where a judge finds ambiguity where none exists, he or she is in effect making the insurance contract instead of the parties. Such inappropriate judicial activity also occurs when a court, in order to give its own meaning to the policy, fails to construe the contract as a whole.

4

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No. 412195

The plaintiff's decedent did not purchase the policy at issue. Neither did Barbara Haniewski d/b/a Salguod or Carlos Reummele. The policy at issue was purchased by Eagle Leasing and issued by American and Foreign Insurance Company. Eagle Leasing (the policyholder) and American and Foreign Insurance Company (the insurer, intended to provide only "contigent coverage" via the policy endorsement, upon a showing that the conditions of the policy endorsement had been met. This *contignent* coverage was meant to be "minimum" coverage required by applicable law, not primary coverage for unnamed persons who are strangers to the insurance contract. Interpreting the contingent coverage endorsement as the plaintiff suggests would result in $750,000 in "contingent" coverage for an unnamed "insured," when the primary policy limits for Eagle Leasing and other named insureds is $500,000. Such a result is absurd.

It should also be noted that where commercial insurance is involved, and two sophisticated entities are dealing with each other, the rule of interpreting all ambiguities against the insurer should not be woodenly applied and courts should look at what the reasonable intent of the parties was in entering into the insurance contract. State Underwriters v. Travelers Ins. Co., 803 F.2d 1308, 1314 (fn. 5) (3rd Cir. 1986). In the present case, the "intent of the contracting parties" was not to afford more "contingent" coverage for unnamed strangers to the policy than the underlying $500,000 policy limits for the named insureds. Insurance contracts are to be

5

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No. 412195

reasonably construed consonant with the apparent objective and intent of the parties. Limits for contingent coverage above the underlying policy limits is absurd.

Conclusion.

"The non-moving party may not rely on conclusory allegations or unsubstantiated speculation. Instead, the non-movant must produce specific facts indicating 'that a genuine factual issue exists. If the evidence [presented by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted.' To defeat a motion, there must be evidence on which the jury could reasonably find for the [non-movant].' " Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir.1998) (citations omitted).

The plaintiff has not provided anything more than conclusory allegations or unsubstantiated speculation and thus, the plaintiff's objection should be overruled.

DEFENDANTS,
ROYAL INSURANCE COMPANY OF AMERICA,
ROYAL INDEMNITY COMPANY and
ROYAL SURPLUS LINES INS. CO.

By_____
John W. Dietz of
HALLORAN & SAGE LLP
Fed. Bar #ct 13432
315 Post Road West
Westport, CT 06880-4739
(203) 227-2855

6

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No. 412195

## CERTIFICATION OF SERVICE

This is to certify that on this 10th day of October, 2003, I hereby mailed a copy of the foregoing to all counsel and pro se parties of record as follows :

Michael Stratton, Esq.
Joel Faxon, Esq.
Stratton Faxon
59 Elm Street
New Haven, CT 06510

John W. Mills, Esq.
Murphy & Karpie
350 Fairfield Ave.
Suite 408
Bridgeport, CT 06604

_____
John W. Dietz

471275.1(HSFP)

315 Post Road West
Westport, CT 06880

7
HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No. 412195