FILED

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

2003 OCT 16  A 10: 28

| | |
|---|---|
| MICHAEL JON BARBARULA, Administrator of the Estate of Jing Xian He | CIVIL ACTION NO. 3:02 CV 1142 (JCH) |
| vs. | |
| CANAL INSURANCE COMPANY, et al. | OCTOBER 16, 2003 |

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CANAL'S SECOND MOTION FOR SUMMARY JUDGMENT

The plaintiff, Michael Barbarula, Administrator of the Estate of Jing Xian He, submits the following memorandum of law in support of his opposition to the second motion for summary judgment filed by the Canal Insurance Company ("Canal"). For the following reasons the defendant's second motion for summary judgment should be denied.

### I.   Factual Background

The case now before the Court has been brought by the plaintiff, Michael Barbarula, Administrator of the Estate of Jing Xian He, against Canal pursuant to General Statutes § 38a-321, Connecticut's "direct action" statute, under the MCS-90 endorsement to the policy (see 49 C.F.R. § 387.15) and against Canal for bad faith handling of the claim. The plaintiff is seeking payment under a policy of insurance issued by Canal in partial satisfaction of a judgment entered in favor of his decedent's estate in Connecticut Superior Court. This case was removed to this Court by the defendants on July 1, 2002, based upon diversity jurisdiction, 28 U.S.C. § 1332(a) and 28 U.S.C. § 1441(b).

On September 12, 1996, the plaintiff's decedent, Ms. Jing Xian He, was operating a motor vehicle on Interstate 395 in Waterford, Connecticut. At approximately 6:30 pm

**ORAL ARGUMENT REQUESTED**

that evening, her vehicle was struck from behind by a tractor semi-trailer unit operated by Mr. Carlos Ruemmele, Jr. As a result of the accident and ensuing fire, Ms. He was killed after suffering severe burns and multiple fractures. She experienced excruciating ante-mortem pain and suffering before she perished. Ms. He is survived by her young son.

At the time of the accident, Mr. Ruemmele was employed as a commercial truck driver by Barbara Haniewski d/b/a Salguod Transport and Warehousing Company of Wallingford, Connecticut ("Salgoud"). Salguod owned the tractor truck.

During the course of the underlying case, the plaintiff filed an offer of judgment for $1,000,000., the limit of coverage under the Canal policy. Neither Canal nor the defendants in the underlying case accepted the offer and as a result it was deemed rejected. See General Statutes § 52-192a. Subsequently, Judge Blue issued his ruling declaring that the policy had been cancelled. During the course of the trial Canal offered the plaintiff $400,000 to settle the case. The plaintiff demanded $700,000. The plaintiff's demand was rejected as was Canal's offer. Subsequently judgment was entered in the plaintiff's favor for $5,700,000. The court has fully recounted the balance of the procedural history of this case in its Ruling on Canal's Motion for Summary Judgment [Doc. #34] ("Ruling"), wherein the court denied Canal's motion. Id. at 9-10. Now Canal is attempting to take a second bite at the apple having been stymied in its first attempt to have this case dismissed.

## II.   **Standard of Review**

A motion for summary judgment may not be granted unless the Court determines that there is no genuine issue of material fact to be tried and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either

party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. Id.

The burden of demonstrating the absence of a genuine dispute as to a material fact and entitlement to judgment as a matter of law rests with the party seeking summary judgment. Adicks v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). The moving party must identify those portions of the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, which they believe demonstrate the absence of a genuine issue of material fact. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If a party does not support its motion for summary judgment with admissible evidence (as in this case) it has not carried its burden of proving the absence of a triable issue, thus the motion should be denied. See Gianullo v. The City of New York, 322 F.3d 139, 140-41 (2d Cir. 2003) ("where the movant 'fails to fulfill its initial burden' of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, 'even if no opposing evidentiary matter is presented,' for the non-movant is not required to rebut an insufficient showing"); see Witt v. St. Vincent's Hospital, 252 Conn. 363, 372 n.7 (2000) (same). In assessing the record to determine whether there are any genuine issues of material fact, the Court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the nonmoving party. McLee v. Chrysler Corp., 109 F.3d 130, 133 (2d Cir. 1997).

Further, if discovery has to be completed in order to properly defend against the motion, the court is empowered to extend the time for hearing the motion and allow the record to be developed before issuing a ruling. See Fed. R. Civ. P. 56(f); Bristol Tech. Inc. v. Microsoft Corp., 3:98cv1657(JCH), 1998 U.S.Dist. LEXIS 22236, at *14 (D.Conn. Dec. 30, 1998) (Rule 56(f) continuance granted where motion "appropriately

3

suggests areas of discovery that this plaintiff is entitled to pursue before its claims are tested by a summary judgment motion."), <u>unopposed</u> <u>motion</u> <u>for</u> <u>vacatur</u> <u>granted</u> <u>sub nom</u>, <u>Microsoft Corp. v. Bristol Tech. Inc.</u>, 250 F.3d 152 (2d Cir. 2001). In this case the motion, as it relates to Count Two (Bad Faith), should be denied since Canal did not carry its initial burden of proving there to be no dispute of material fact and due to the fact that discovery is incomplete and additional evidence relative to the claim is being sought by the plaintiff.

### III.  Applicable Law

Canal claims that the plaintiff cannot proceed under General Statutes § 38a-321 since Judge Blue ruled that the policy was cancelled. Canal misapprehends, however, the effect on the policy of the MCS-90 endorsement and fails to recognize that the MCS-90 endorsement is part of the policy and the policy remains in "full force and effect" until properly cancelled according to law.[1]

Courts in this district have ruled, including at the urging of Canal's defense counsel in another case, that statutory claims related to the underlying insurance policy are cognizable under the direct action statute (in this case the statutorily mandated MCS-90 endorsement), General Statutes § 38a-321. In particular, Judge Goettel has ruled that:

> Connecticut's direct action statute, General Statutes § 38a-321 (formerly § 38-175), provides that once a final judgment is rendered against an insured for loss or damage covered by a policy of insurance and the judgment remains unsatisfied for more than 30 days, the "judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against such insurer to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment." (Emphasis added). In <u>Brown v. Employer's Reinsurance Co.</u>, 206 Conn. 668, 672 (1988), the Connecticut Supreme Court discussed the underlying purpose of the direct action

---

[1] The plaintiff has moved for summary judgment on the complaint to the extent that the MCS-90 endorsement requires Canal to satisfy the judgment under the policy of insurance.

4

statute, stating that the legislature's intent in enacting the statute was to give the injured person the same rights under the policy as the insured. The statute protects those injured by judgment-proof insureds by subrogating the injured party or judgment creditor to the rights of the insured against his insurer. Id. The Court held that a party subrogated to the rights of an insured under the direct action statute obtains no different or greater rights against the insurer than the insured possesses and is equally subject to any defense the insurer may have against the insured under the policy. Id. at 673. Consequently, the Court held that in order for a party to proceed under the direct action statute, "the insured must have had a viable statutory or contractual claim against the insurer." Id. (emphasis added).

Significantly, for purposes of the motion now before us, the Connecticut Supreme Court in Brown did not limit application of the direct action statute to contractual claims under the insurance policy but also included statutory claims. Although we have found no Connecticut cases specifically addressing whether a plaintiff/judgment creditor can assert a CUIPA, CUTPA, or bad faith claim against an insurer under the direct action statute, we have found no case prohibiting such claims (and defendant has cited none), and the language cited in Brown would seem to permit such claims. Moreover, we note that such claims have been asserted in a number of Connecticut state court cases brought under the direct action statute. See Willard v. Travelers Insurance Co., 247 Conn. 331, 334 n.5 (1998) (noting that, in the direct action, the plaintiff also sought damages from Travelers for breach of contract, breach of implied covenant of good faith and fair dealing, violation of CUIPA, violation of CUTPA, and third-party breach of contract); Black v. Goodwin, Loomis & Britton, Inc., 239 Conn. 144, 150-51 n.10 (1996) (a direct action case in which the plaintiff's claims for negligence and bad faith against the insurer went to the jury, along with his breach of contract claim); Cage v. Litchfield Mutual Fire Insurance Co., 1996 Conn. Super. LEXIS 1560, No. 536847 (Conn. Super. May 14, 1996) (a direct action suit against the tortfeasor's insurer for CUIPA and CUTPA violations as well as bad faith, although the CUIPA and CUTPA claims were dismissed on other grounds); Pacheco v. Allstate Insurance Co., 1995 Conn. Super. LEXIS 797, No. CV 94 541707 (Conn. Super. Mar. 9, 1995) (a direct action suit alleging CUTPA violation, although the CUTPA claim was dismissed on other grounds); McNair v. Liberty Mutual Insurance Co., 1991 Conn. Super. LEXIS 799, No. 27 10 87 (Conn. Super. Apr. 11, 1991) (a direct action case asserting CUTPA and CUIPA violations); see also Loftis v. Amica Mutual Insurance Co., 175 F.R.D. 5 (D. Conn. 1997) (a bad faith suit under the direct action statute by a judgment creditor against the tortfeasor's insurer for failure to make prompt settlement of her claim once liability was established); Mazziotti v. Allstate Insurance Co., 240 Conn. 799, 820 (1997)(noting settlement of a direct action suit for CUIPA and CUTPA violations by the insurance company).

Accordingly, we hold that plaintiff's claims for bad faith and violation of CUTPA and CUIPA may be brought under the direct action statute.

Peck v. Public Service Mutual Ins. Co., 114 F.Supp.2d 51, 54-55 (D.Conn. 2000), vacated on other grounds, 326 F.3d 330 (2d Cir. 2003). Likewise, as set forth below, the recovery for amounts that are covered under the contract, by virtue of the statutory and regulatory MCS-90 endorsement, and for amounts recoverable as a result of Canal's bad faith handling of the claim, should be permitted to proceed under General Statutes § 38a-321.

Further, contrary to Canal's suggestion, the MCS-90 endorsement does not cause the policy to disappear in a situation where the insurer would otherwise have a defense to coverage, but rather it simply acts as an "eraser" and removes the clause that would otherwise provide the victim with no coverage – in this case the cancellation clause. The text of the MCS-90 must be given a liberal, remedial construction. See Pierre v. Providence Washington Ins. Co., 784 N.E.2d 52, 55 (N.Y. 2002) ("remedial legislation" that must be "interpreted broadly"). Further, the court must apply "the literal language of the endorsement and the underlying policy to determine its meaning. See Integral Ins. Co. v. Lawrence Fulbright Trucking, Inc., 930 F.2d 258 (2d Cir. 1991)." Id. at 57.

Accordingly, if the MCS-90 is in force, as in this case due to ineffective cancellation, it creates liability under the policy on behalf of the insurance company to the injured victim; and only that portion of the policy which would defeat the injured victim's claim is construed as being eliminated from the policy. See T.H.E. Insurance Co. v. Larsen Intermodal Services, 242 F.3d 667, 673 (5th Cir. 2001) (the endorsement "read[s] out only those clauses in the policy that would limit the ability of a third party victim to recover for his loss."). Thus, under the literal language of the MCS-90, the terms of the policy remain in "full force and effect" until effectively cancelled. See id. at

671; 49 C.F.R. § 387.15. The MCS-90 endorsement does not have a separate existence separate and apart from the policy.

As stated recently by the New York Court of Appeals, the foregoing analysis of the effect of the MCS-90 endorsement on the policy of insurance asserted by the plaintiff here:

> is the only result consistent with the public policy underpinnings of the endorsement: shifting the risk of loss in motor vehicle accidents involving tractor-trailers operated in interstate commerce by guaranteeing that an injured party will be compensated even if a condition in the liability policy would otherwise provide the insurance carrier with a valid defense.

Pierre, 784 N.E.2d at 60. After identifying the proper construction of the endorsement, the court went on to persuasively:

> reject [the insurer's] contention that the MCS-90 endorsement should not be treated as a part of the underlying trucker's liability policy but should be viewed as imposing conditions distinct from those contained in the policy. First, we note that we are bound to interpret the endorsement according to federal law and none of the federal courts which have determined claims brought by injured parties under the MCS-90 endorsement have adopted this approach. Rather, in each case, the courts have interpreted the endorsement by reference to the policy to which it is attached. Second, by its literal language, the endorsement simply does not provide separate coverage. Like most endorsements to insurance policies, it explicitly cross-references and incorporates several of the terms of the policy.
> Most significantly, the endorsement delineates circumstances when the insurance carrier must compensate an injured party even if the policy purports to absolve the insurer of responsibility. Had the drafters intended to use the endorsement to create contractual obligations distinct from those in the policy, they would have included separate provisions in the endorsement defining coverage, rather than merely negating exceptions included in the policy. Under [the insurer's] view of the endorsement, a party insured under the policy might not be covered under the endorsement. We see nothing in the language of the endorsement indicating that coverage is being contracted in this manner; to the contrary, by its plain terms the endorsement unreservedly eliminates any conditions or limitations in the policy for purposes of compensating an injured party.

Id. at 60-61. The law clearly indicates that the MCS-90 endorsement does not have an existence separate and apart from the policy. In this case the plaintiff is fully entitled to proceed against Canal under the direct action statute.

Further, the plaintiff should be permitted to proceed against Canal for its bad faith handling of the underlying claim. Although Canal has not placed in dispute the validity of the claim on this motion, see Gianullo, 322 F.3d at 140-41, and additional discovery is required, see Fed. R. Civ. P. 56(f), it is clear that Canal's handling of the claim exposed the insured to a verdict significantly in excess of the policy limits.

The plaintiff filed an offer of judgment for the policy limit of 1,000,000. Canal failed to pay. Judge Blue then ruled that the coverage was cancelled. Then, during trial, Canal offered the plaintiff $400,000 in response to a $700,000 demand (with full knowledge that the MCS-90 endorsement would require payment of at least $1,000,000 plus supplementary payments). The plaintiff rejected that offer and judgment was entered against the insured for $5,700,000. The plaintiff has sought the claims file and other information through discovery to further develop the claim. Clearly, Canal's handling of the claim is suspect and subjected the insured to a significant overage verdict. The bad faith claim remains viable under controlling law.

### III. Conclusion

Based on the foregoing, Canal's second motion for summary judgment must be denied.

8

THE PLAINTIFF

BY *Joel T Faxon*
JOEL T. FAXON
Federal Bar No. ct16255
STRATTON FAXON
59 Elm Street
New Haven, Connecticut 06510
T: (203) 624-9500
F: (203) 624-9100
jfaxon@strattonfaxon.com

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed, postage prepaid, on this day to:

John W. Dietz, Esq.
Halloran & Sage
315 Post Road West
Westport, Connecticut 06880

John W. Mills, Esq.
Murphy and Karpie
350 Fairfield Avenue
Suite 408
Bridgeport, Connecticut 06604

*Joel T Faxon*
JOEL T. FAXON

9