UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHAEL JON BARBARULA<br>Plaintiff<br>VS<br>CANAL INSURANCE COMPANY, ROYAL<br>INSURANCE COMPANY OF AMERICA,<br>ROYAL INDEMNITY COMPANY AND<br>ROYAL SURPLUS LINES INSURANCE<br>COMPANY<br>Defendants | CIVIL<br>3-02-CV-1142 (JCH)<br><br><br><br>DECEMBER 12, 2003 |

**DEFENDANT'S MEMORANDUM OF LAW
IN OPPOSITION TO SUMMARY JUDGMENT**

**I.  COUNTER STATEMENT OF FACTS**

On February 27, 1996 Barbara Haniewski, doing business as Salgoud

Warehouse and Transport ("Salguod"), submitted an application to obtain insurance

with Swett Insurance Managers, Inc.  A copy of that application is attached hereto as

Exhibit 1.  Section 13 of the insurance application asked whether any governmental

filings (such as a proof of insurance filing with the ICC) were required to be made on

behalf of the applicant.  If so, the applicant was required to provide its docket or permit

number for the filing, as well as the applicant's name and address as it appeared on

each permit issued by any governmental agency.  Id.

The parties agree that Salguod left section 13 blank, and never requested that Canal Insurance Company ("Canal") file proof of insurance with the ICC. Similarly, it is not disputed that Salguod failed to provide Canal with an ICC permit number. Therefore, Canal never made any initial filings with the ICC, as would have normally been required when insuring any trucking company subject to ICC jurisdiction.

It is also undisputed that the original insurance policy did not contain an MCS-90 endorsement. Said endorsement was subsequently issued on March 28, 1996 in response to a request by Salguod's insurance broker, CPM Insurance, who represented that the endorsement was necessary to meet DOT regulations (as opposed to ICC requirements). See trial transcript attached hereto as Exhibit 2.

Although Salguod was obligated to pay insurance premiums of approximately $12,000, the company failed to do so. On August 8, 1996 Canal sent written notice of cancellation for failure to pay the premium pursuant to the cancellation procedure set forth in the policy. As Canal was never asked to initially provide proof of insurance to the ICC, and had never received an ICC permit number from Salguod, Canal had no

reason to provide notice of cancellation to the ICC or the Surface Transportation Board, the successor to the ICC following the termination of the ICC earlier in 1996.[1]

Five weeks after notice of cancellation was issued, on September 12, 1996, a truck owned by Salguod was involved in a fatal accident in Waterford, Connecticut. The state police conducted an in-depth investigation, which included a detailed vehicle inspection and inspection of the driver's travel log and bills of lading. A copy of the police report is attached hereto as Exhibit 3. The police report indicates that the tractor trailer did not have an ICC number displayed on the cab, which was confirmed by police photographs of the vehicle. While the police cited Salguod for numerous safety violations and impounded the vehicle, no penalties were issued for operating illegally in interstate commerce without ICC operating authority. Given the seriousness of the accident, and the scope of the police investigation, the court should infer that the truck was not operating illegally without an ICC permit. Surely such a blatant violation of law

---

[1] It is important to note that although the ICC was disbanded by Congress on January 1, 1996, the Surface Transportation Board was not functioning until almost two years later. 9 U.S.C. § 701 required President Clinton to appoint three people to the Surface Transportation Board, who were to hire employees and issue new regulations. The STB did not issue any regulations instructing insurance companies how to notify the STB of cancellation until October 1, 1998. 49 C.F.R. § 387.7(b). It can not be disputed that the policy at issue was canceled after the ICC was terminated, but before the STB was functioning.

would have been detected by the state police, who were investigating the accident in conjunction with the DOT.

The state police provided information about the accident to the Department of Transportation.  A copy of the certified accident report obtained from the DOT is attached hereto as Exhibit 4.  This report flatly states that Salguod was operating as an intrastate (as opposed to interstate) motor carrier, and was not subject to the jurisdiction of the ICC.  Finally, attached hereto as Exhibit 5 are copies of two certified reports from the Federal Motor Carrier Safety Administration, Insurance Compliance Division, verifying that Salguod was never registered with the ICC and was never assigned an ICC permit number or authorized to operate in interstate commerce.

In the memorandum in support of summary judgment the plaintiff erroneously submits that it is undisputed that Salguod was a for-hire motor carrier engaged in interstate commerce.  In fact, the defendant has always disputed that Salguod was subject to ICC jurisdiction at the time that the policy was canceled on August 8, 1996.  To date, the plaintiff has submitted no evidence in support of his claim that Salguod was registered with the ICC at the time of cancellation, or that Salguod ever notified Canal that it was subject to ICC jurisdiction so that Canal would know to provide additional notice of cancellation to the ICC.

All of the available documents obtained directly from the DOT firmly establish Salguod was not subject to ICC jurisdiction when the policy was issued or when it was cancelled.  The plaintiff argues that because a shipment undertaken by Salguod five weeks after notice of cancellation was provided qualifies as a form of interstate commerce, the prior notice of cancellation was ineffective.  The plaintiff fails to cite any legal authority in support of his argument, and in fact such a ruling would be contrary to several cases and to the entire statutory scheme of commercial trucking regulation.

The regulatory requirements all place the burden of compliance on the trucking company, as opposed to the insurer, and the rules make it clear that it was Salguod's responsibility to obtain the necessary operating authority from the ICC and to provide the ICC with proof of sufficient insurance.  Canal was not required to undertake an independent investigation in order to determine whether Salguod should have been registered with the ICC.  As it can not be disputed that Salguod was never registered with the ICC, or requested that Canal provide proof of insurance to the ICC, there was no obligation for Canal to subsequently provide notice of cancellation to the ICC or its successor agency.

The defendant did everything it was supposed to do in connection with the insurance policy at issue.  Given the facts now before the court, it is Canal, and not the

plaintiff, who is entitled to summary judgment.  There is no way for the plaintiff to recover pursuant to the terms of the underlying insurance policy, as it has already been determined in a prior action between these parties that the policy was properly canceled for lack of payment prior to the subject accident.  The mere fact that an MCS-90 endorsement was later issued does not provide the plaintiff with any additional benefit in this case, as the cancellation notice provided to Salguod also canceled the MCS-90 endorsement, absent proof that Salguod was also registered with the ICC.  As Salguod was not registered with the ICC, Canal was not obligated to provide the government with additional notice of cancellation, and the endorsement at issue was properly terminated along with the policy prior to the subject accident.

## II. LAW AND ANALYSIS

### (i) MCS-90 Endorsement

It must be emphasized from the beginning that the mere issuance of an MCS-90 endorsement does not mean that Salguod was subject to ICC jurisdiction, and did not alert Canal to the need for cancellation notice to be provided the ICC or its successor agency, the STB.  The MCS-90 endorsement was created by the DOT, and was later adopted by the ICC as well.  Thus, there were many trucking companies operating

outside of the jurisdiction of the ICC which required an MCS-90 endorsement solely for DOT purposes when Canal cancelled the policy.[2]

The Motor Carrier Act of 1980 authorized the DOT and the ICC to promulgate regulations to further the Act's purposes. 49 U.S.C.A. § 13301(a). The ICC initially issued regulations, codified at 49 C.F.R. § 1043.1(a)(1)-(3) (1995) and 49 C.F.R. § 1043.7 (1995), which required that a certificate of insurance, in the form of a BMC 91 or BMC 91X, be filed by the motor carrier in order to prove that every truck operating with ICC authority had at least the minimum levels of insurance.[3] Thereafter the ICC agreed to adopt the MCS-90 endorsement used by the DOT, and all ICC registered motor carriers were required to obtain an MCS-90 endorsement to prove that they had adequate insurance to protect the public. 49 C.F.R. § 1043.7(a)(4).

The DOT regulations for insurance requirements were codified at 49 C.F.R. § 387, and applied to interstate motor carriers not regulated by the ICC, such as companies carrying agricultural products or other exempt commodities. See 49 U.S.C.

---

[2] In 1996 the Federal Register reported that there were 170,320 interstate motor carriers registered with the DOT's Federal Highway Administration. Of these, only 96,141 were also registered with the ICC. Thus, there were 79,179 interstate trucking companies which may have required an MCS-90 endorsement solely for DOT purposes, not subject to ICC jurisdiction and not subject to ICC cancellation requirements. 61 Fed. Reg. 43816 (1996).

[3] ICC insurance registration requirements codified at 49 C.F.R. § 1043.1 did not apply to the transportation of certain commodities, such as "Lumber;" "Plywood;" or "Scrap Steel," the very items listed as cargo by Salguad in its insurance application.

§10521(b); Merchants Fast Motor Lines, Inc. v. ICC, 5 F.3d 911, 916 (5th Cir. 1993).

DOT motor carriers, operating outside the scope of ICC authority, also required proof of

insurance and MCS-90 endorsements.  See generally Jackson v. O'Shields, 101 F.3d

1083, 1085 (5th Cir. 1996).  49 U.S.C. Sections 10522, 10523, 10524, 10525 and 10526

all denote various types of commercial trucking not subject to ICC jurisdiction, yet any of

these motor carriers may have required an MCS-90 endorsement.

An MCS-90 endorsement issued to a motor carrier operating within the

jurisdiction of the DOT can be canceled simply by providing notice of cancellation to the

motor carrier at least thirty-five days prior to cancellation (as was done by Canal in this

case).  49 C.F.R. § 387.7(b)(1).

Thus, although Canal did issue an MCS-90 endorsement to Salguod on March

28, 1996, this fact alone does not establish that Salguod was subject to ICC jurisdiction,

and did not alert Canal to the fact that additional notice of cancellation had to be

provided to the ICC in order to effectively cancel the endorsement.  It was Salguod's

legal responsibility to notify Canal that it was a registered ICC motor carrier and that it

needed ICC filings when applying for insurance coverage.  Only in this way would Canal

know that notice of cancellation needed to be provided to the ICC when the policy was

canceled on August 8, 1996.  It can not be disputed that Canal never received the

necessary information from Salguod, and thus there was no legal requirement to provide additional notice to the ICC or the STB.

A very similar set of facts were presented to the Court of Appeals of New Mexico in a case entitled <u>Howard v. Quality Xpress, Inc.</u>, 989 P.2d 896 (N.M. App. 1999), wherein that court held that an ICC MSC-90 endorsement, requiring the insurer to provide additional notice of cancellation to the ICC, did not apply because the motor carrier failed to properly disclose to the insurer that it was involved in interstate commerce when applying for the insurance coverage.

The facts and legal issues in <u>Howard v. Quality Xpress, Inc.</u>, <u>supra</u>, are directly on point with those in the case at bar.  The plaintiff, Christie Howard, was the legal representative of the estate of Marion Howard, who was killed as a result of a trucking accident that occurred on July 19, 1996, just three weeks prior to the subject accident in this case.  Ms. Howard's attorneys obtained a judgment against the trucking company, Quality Xpress, Inc. ("Quality"), and proceeded to bring a collection action against the Guaranty National Insurance Company ("Guaranty"), which had previously insured Quality.  Guaranty denied liability, claiming that the insurance policy issued to Quality had been canceled prior to the date of the accident for nonpayment of premium. However, the plaintiff argued that the cancellation was not effective, because Guaranty

had failed to provide notice at least 35 days prior to cancellation as required by the terms of the MCS-90 endorsement for motor carriers engaged in interstate commerce.

Guaranty countered that it was not required to comply with the terms of the MCS-90 endorsement because Quality had not indicated on its application that it engaged in interstate trucking. The New Mexico Court of Appeals, in a unanimous decision by a panel of three judges, agreed with Guaranty, holding as follows:

> While we agree that it appears from the record that Quality was engaged in interstate commerce requiring it to have complied with DOT regulations, nothing in the record indicates that Guaranty, as an insurer, had any basis to believe that that the insurance contract needed to so comply. Guaranty complied with state law, but Quality did not inform Guaranty of its interstate travels. Precisely the opposite, Quality chose to answer "no" and leave blank the questions regarding interstate travel and filings required. Quality only requested intrastate coverage. The DOT regulations only apply to "for-hire motor carriers operating . . . in interstate or foreign commerce," 49 C.F.R. § 387.17. Thus, the regulatory scheme appears to place the burden of compliance with the compulsory insurance coverage requirements upon the motor carrier, not the insurer.

> We decline to impose responsibility on Guaranty to comply with DOT regulations on Quality's behalf when it had no knowledge or awareness that Quality was engaged in interstate commerce. As the insured, Quality had knowledge of the information that was relevant to Guaranty's assumption of the insurance risk and had an obligation to provide the requested pertinent information. . . . Guaranty specifically asked on the application form whether Quality required endorsement for interstate travel and filings for other states. *The answers to these questions were material to Guaranty's issuance of the policy because they directly affected the steps necessary for Guaranty to meet ICC regulatory requirements on behalf of Quality* and may have affected the premium charged. . . .

We make no conclusion of any intentional misrepresentations on Quality's part. However, neither do we place the burden on Guaranty to investigate to determine if Quality had correctly provided the information. . . . Although Quality left some requested information spaces blank, the blanks were consistent with Quality's indication that it did not require an MCS-90 endorsement.  Guaranty did not have reason to know that Quality incorrectly responded to the requests.

Guaranty properly canceled Quality's insurance policy in accordance with state law and was not required to comply with DOT regulations of which it had no reason to know applied to its policy.  The cancellation of the insurance policy terminated the liability of the insurer not only with respect to the insured, but also with respect third persons who are creditors of the insured and who bring attachment or garnishment proceedings against the insured. . . .

Id. at 899-900.  (Emphasis added)

In the case at bar it can not be disputed that Salguod failed to identify itself as an ICC registered motor carrier when applying for insurance.  The application sections with respect to ICC filings were left blank.  Similarly, it can not be disputed that Salguod was never registered with the ICC, and never obtained an ICC number.  Thus, even if Canal had sent any type of notice to the ICC, or its successor agency, the notice would have been discarded, as Salguod was never registered as an interstate motor carrier.  As the Howard court recognized, the insurer needs to obtain ICC filing information from the motor carrier, as part of the initial insurance application, in order to later meet ICC cancellation requirements on behalf of the motor carrier.  Id.

As Canal never received an ICC number or a filing request on behalf of Salguod there was no legal requirement to provide notice of cancellation to the ICC.  The burden of providing the correct information was on the motor carrier, not Canal.  Id.  See also Illinois Central R. Co. v. Dupont, 326 F.3d 665, 669 (5th Cir. 1993).

Thus, contrary to the plaintiff's assertions in his memorandum of law in support of summary judgment, a critical legal issue remains hotly disputed in this case.  The defendant does not agree with the plaintiff's argument that Salguod was subject to the jurisdiction of the ICC when the policy was canceled, and does not agree that there was any obligation to provide notice of cancellation to the ICC or its successor agency in order to properly cancel the MCS-90 endorsement.  Canal provided timely notice of cancellation to Salguod as required by the policy and DOT requirements, and both the policy and the endorsement were canceled prior to the subject accident.  The plaintiff's motion for summary judgment must be denied.

(ii)    **Insufficient Evidence Regarding Nature of Salguod's Business**

The plaintiff's motion for summary judgment must also fail because of the plaintiff's failure to produce any evidence concerning the type of trucking business conducted by Salguod during the relevant policy period, which was between February 27, 1996 and when notice of cancellation was provided on August 8, 1996.  Although

the plaintiff argues that Salguod was engaged in interstate commerce at the time of the

subject accident on September 12, 1996, that is completely irrelevant and immaterial to

the legal issues now before the court.  What Salguod did at a later time, after the policy

was canceled, is immaterial.  The plaintiff argues that additional notice of cancellation

had to be provided to the STB on August 8, 1996, but has failed to produce any

evidence which would indicate that Salguod was operating as an interstate trucking

company for-hire at that time.

   As confirmed by the defendant's exhibits, all of the documents obtained from the

federal government indicate that Salguod was not registered with the ICC, and was in

fact listed as an intrastate motor carrier.  The plaintiff has failed to produce any

evidence at all which would contradict these documents or otherwise establish that

Salguod was engaged in interstate commerce for-hire during the relevant policy period.

The plaintiff's motion for summary judgment must fail as a matter of law, for failure to

produce sufficient evidence regarding the nature of Salguod's business at the time the

notice of cancellation was provided.  Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106

S.Ct. 2458, 91 L.Ed2d 265 (1986).

   As there remain issues of material fact still in dispute, summary judgment is not

appropriate.  Once more, if the court examines the evidence in the light most favorable

to Canal, and draws all inferences in favor of Canal, as the non-moving party, summary judgment for the plaintiff would clearly be improper. <u>Marvel Characters v. Simon</u>, 310 F.3d 280. 285-86 (2d Cir. 2002).

### (iii)    Insufficient Evidence of ICC Jurisdiction

In an effort to avoid the shortcomings of his case, the plaintiff seeks to divert the court's attention from the unproven legal status of Salguod at the time notice of cancellation was provided on August 8, 1996, and instead focuses on the goods that were on the truck at the time of the subject accident, which was after the policy had been canceled. The plaintiff argues that because the truck operated by Mr. Ruemmele at the time of the subject accident was carrying medical supplies from Massachusetts, Salguod was subject to ICC jurisdiction five weeks earlier.

The plaintiff's argument must be rejected, as the relevant time period is not when the accident took place, but when the notice of cancellation was issued. No evidence has been offered which would establish that Salguod was subject to ICC jurisdiction on August 8, 1996. Moreover, the plaintiff's argument confuses jurisdiction over the subject matter with jurisdiction over the particular motor carrier. 49 U.S.C. § 10921 provides in relevant part as follows: "a person may provide transportation or service subject to the jurisdiction of the Interstate Commerce Commission under subchapter II,

III or IV of chapter 015 . . . only if the person holds the appropriate certificate, permit or license. . . ." As Salguod never held any certificate, license or permit issued by the ICC, Salguod was not subject to ICC jurisdiction for purposes of the MCS-90 endorsement.

A review of the statutes and regulations previously cited herein indicates that the statutory scheme was set up to work as follows:  A trucking company wishing to engage in interstate commerce is first required to obtain ICC operating authority, or risk heavy fines and even criminal charges for engaging in illegal interstate commerce.  Before the trucking company can obtain ICC operating authority, it must first provide proof of insurance to the ICC, much in the same way that a Connecticut motorist must provide proof of insurance to the Department of Motor Vehicles in order to register a car.  For this reason, the insurance application provided to Salguod specifically asked whether any ICC filings were needed, so that Canal could provide the necessary proof of insurance to the ICC, and Salguod could obtain ICC operating authority, if ICC operating authority was needed.

Salguod submitted its insurance application without any request for an ICC filing. Given that Salguod faced heavy fines and/or criminal prosecution if caught operating in illegal interstate commerce without ICC operating authority, which would be easily detectable given that the law requires the ICC number to be displayed in bold letters on

the doors of the truck, common sense indicates that ICC authority was not needed when Salguod submitted its application in February, 1996.

The initial policy did not even contain an MCS-90 endorsement. Subsequently, the endorsement was issued at the request of Salguod's own insurance agent in March, 1996. However, the agent specifically indicated that the endorsement was for DOT purposes only, and not for an ICC filing. Having this information, Canal properly sent notice of cancellation to Salguod at least thirty-five days prior to the cancellation date, as required by the terms of the MCS-90 endorsement for DOT motor carriers. Canal did everything correctly, according to the rules.

The plaintiff argues that notice of cancellation was ineffective based solely upon the type of goods that were on the truck when the accident occurred five weeks after the notice of cancellation was issued. Although the plaintiff must concede that Salguod was never registered with the ICC or the STB, he still argues that Canal had an obligation to send notice of cancellation to these agencies. The plaintiff fails to explain how Canal was supposed to know that Salguod was operating illegally in interstate commerce without an ICC number, or what purpose would have been served by attempting to provide notice of cancellation to the ICC in this scenario. Having never received any prior filings on behalf of Salguod, and having no record of that company as a registered

ICC motor carrier, any such notice would have been discarded by the STB. Connecticut law does not require the doing of a useless thing. Labbe v. Pension Commission, 229 Conn. 801, 813 (1994); Vaillancourt v. New Britain Machine, 224 Conn. 382, 396 (1993); Federal Finance Co. v. Forman Properties, Inc., 135 Conn. 153, 158 (1948).

The plaintiff's argument ignores the day-to-day realities and business practices of the trucking and insurance industries. Given the fact that MCS-90 endorsements are routinely issued to thousands of DOT motor carriers every year that have nothing to do with the ICC, and do not require notice of cancellation be sent to the ICC or the STB, there was no reason for Canal to make such a filing in this case. It would be grossly unfair to Canal to find in favor of the plaintiff, and thereby order Canal to pay significant damages on behalf of Salguod. Canal followed all the rules, and there was no requirement whatsoever for it to provide additional notice of cancellation to the ICC or the STB in this instance. The plaintiff's motion for summary judgment must be denied.

**(iv)    Arguments for Damages Under the Policy Barred as a Matter of Law**

The plaintiff's legal arguments with respect to notice to the ICC apply solely to the MCS-90 endorsement. The insurance policy itself required simply that notice of cancellation be provided to the insured at least ten days in advance of the termination date. There is no dispute that effective notice was provided to Salgoud pursuant to the

terms of the policy, which is why a prior court properly determined that the policy was effectively canceled prior to the subject accident. The MSC-90 endorsement, if found to be valid because of insufficient notice, will arguably provide the plaintiff with a maximum statutory recovery of $750,000 for this class of motor carriage, as set forth in the schedule of statutory coverage attached (as page 2) to the endorsement. See Exhibit 6.

The endorsement creates a surety between the insurer and the injured party pursuant to federal law; it does not resurrect insurance coverage under the terms of the policy. Harco Nat. Ins. Co. v. Bobac Trucking, Inc., 107 F.3d 733, 735-36 (9th Cir. 1997); National Am. Ins. Co. v. Central States Carriers, Inc., 785 F. Supp. 793, 797 (N.D. Ind. 1992). Canal has no obligation to insure Salguod for the judgment returned against it in favor of the plaintiff. In fact, the MCS-90 endorsement provides that any payment made by Canal pursuant to the terms of the endorsement can be recovered from Salguod. See Exhibit 6.

The case law is clear that the MCS-90 endorsement does not create insurance coverage. Although the endorsement is said to cancel out particular insurance clauses that would otherwise bar a recovery, such as "other insurance clauses" or policies which only cover "listed vehicles," no court has held that the endorsement breathes new life into a policy properly canceled prior to the date of loss for lack of payment.

In his memorandum in support of summary judgment the plaintiff seeks additional money damages beyond the statutory limits set forth in the MCS-90 endorsement. Specifically, the plaintiff seeks substantial post-judgment interest on the judgment returned against Salguod pursuant to the provisions of the underlying insurance policy. It has already been litigated and conclusively decided that the insurance policy was properly canceled prior to the subject accident.  See Exhibit 7. The plaintiff is bound by that decision pursuant to res judicata and collateral estoppel, and can not now maintain that the policy provisions are still enforceable.  Jackson v. R.G. Whipple, Inc., 225 Conn. 705, 717 (1993); Morganti v. Boehringer Ingelheim Pharmaceuticals, Inc., 20 Conn. App. 67, 72 (1989); Gionfriddo v. Gartenhaus Café, 15 Conn. App. 392, 401 (1998), aff'd on other grounds, 211 Conn. 67 (1989).

The prior court ruling established that Canal had no legal obligation to provide Salguod with a legal defense, because the policy was canceled prior to the subject accident. Given that Connecticut has long recognized that the duty defend is much broader than the duty to indemnify the insured, Heyman Associates No. 1 v. Ins. Co. of Pennsylvania, 256 Conn. 343, 382 (2001), no credible argument can be made that Canal is now obligated to pay the award returned against Salgoud or pay post-judgment interest pursuant to the terms of the policy.

As the policy itself provides the plaintiff with no benefits and no right to recovery, his damages are limited by the terms of the MCS-90 endorsement, which acts as a surety pursuant to federal law.  The endorsement contains no right of recovery of post-judgment interest, and is limited to the federally mandated amount of insurance coverage as set forth in the express terms of the endorsement.  The plaintiff's argument that he is entitled to additional damages pursuant to the terms of an insurance policy already ruled null and void by a prior court must be rejected as a matter of black letter law.

### III.    CONCLUSION

For all of the reasons stated and discussed herein, the plaintiff's motion for summary judgment should be denied.  If for any reason the plaintiff's motion should be granted, the amount of the judgment must be capped at the statutory limits set forth in the MCS-90 endorsement, which is $750,000 for this class of motor carrier.  The policy itself was not in effect at the time of the subject accident, and the plaintiff is not entitled to any damages which rely upon the terms of said policy.  Any recovery in this action is limited to the terms of the endorsement alone, which contains no mechanism for recovery of post-judgment interest.

THE DEFENDANT,
CANAL INSURANCE COMPANY


By _____
JOHN W. MILLS
MURPHY and KARPIE
350 Fairfield Avenue
Bridgeport, CT  06604
Federal Bar #CT11706
Tel: (203)333-0177

CERTIFICATION

This is to certify that a copy of the foregoing has been mailed, U.S. Mail, postage prepaid on December 12, 2003 to:

Joel Faxon Esquire
Stratton Faxon
39 Elm Street
New Haven, CT  06510

John Dietz, Esquire
Halloran & Sage
315 Post Road West
Westport, CT  06880

JOHN W. MILLS