**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

FILED

| | | |
|---|---|---|
| MICHAEL JON BARBARULA, | : | CIVIL ACTION NO. SEP 2  IN 45 AM '04 |
| Administrator of the Estate of | : | 3:02 CV 1142 (EBB) |
| Jing Xian He, | : | U.S. DISTRICT COURT |
| | : | NEW HAVEN, CONN |
| vs. | : | |
| | : | |
| | : | |
| | : | |
| CANAL INSURANCE COMPANY, et al. : | | SEPTEMBER 2, 2004 |

## NOTICE OF FILING OF SUPPLEMENTAL AFFIDAVIT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

The plaintiff files herewith the affidavit of Robert C. Tynes on the issue of

the obligation of Canal to comply with the cancellation requirements of the MCS-

90 endorsement related to the issue of notice to the ICC/FHWA.  Further, Canal's

argument related to ICC jurisdiction has already been completely rejected by the

Superior Court (Levin, J.), in Canal Ins. Co. v. Haniewski, Superior Court, judicial

district of New Haven, Doc. no. 417942 (July 26, 2000) (attached).

THE PLAINTIFF

By: _____
Joel T. Faxon
STRATTON FAXON
59 Elm Street
New Haven, CT. 06510
Telephone (203) 624-9500
E-Mail jfaxon@strattonfaxon.com
Federal Juris No. CT 16255

1

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed, postage prepaid, on this day to:

John W. Dietz, Esq.
Halloran & Sage
315 Post Road West
Westport, CT 06880

John W. Mills, Esq.
Murphy and Karpie
350 Fairfield Avenue
Suite 408
Bridgeport, CT 06604

_____
Joel T. Faxon

## AFFIDAVIT

State of Georgia

                ss: 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

County of Douglas

    I, **ROBERT CARL TYNES**, being duly sworn, depose and say that:

    1. I am over the age of eighteen years and understand the obligations of the oath.  I reside at 8619 Stone Creek Court in Douglasville, Georgia 30135.  I am co-owner of National Transportation Consultants Inc., a Georgia Corporation engaged in regulatory consulting work for the transportation industry.

    2. I am a graduate of Florida State University where, in 1973, I received my Bachelors Degree in Criminology.  I also attended one year of graduate school at Rollins College in Winter Park, Florida, with a major in Criminal Justice.

    3. Between 1973 and 1976,  I was employed by the Florida Public Service Commission (FPSC), the state regulatory body charged with enforcing laws governing the operations of trucking companies, both interstate and intrastate.  In this position I was called on daily to assess the type operation a particular carrier was performing, determine the application of the Interstate Commerce Commission(ICC) and FPSC regulations, and take enforcement action against those carriers in violation.  I performed this function on hundreds of operations at roadside and in carrier's offices.

Page 1 of  5

4. From 1976 to 1986 I was employed by the ICC as a Special Agent. In this position I interpreted and applied the Interstate Commerce Act, including regulations concerning the requirements that carriers obtain operating authority in order to conduct interstate and/ore foreign commerce operations. I was one of three Special Agents assigned to the Chicago Regional Office and was assigned the more complex cases for investigation. I also served as one of several primary instructors for the ICC's National Training Center in Washington, D.C., teaching, among other things, the application of the ICC's jurisdiction over various types of carrier operations.

5. From 1986 to my retirement in 1999 I was employed by the Federal Highway Administration, Office of Motor Carriers (OMC). While with the OMC I served in the positions of Safety Investigator, State Program Specialist, State Programs Manager, Federal Program Manager, and finally State Director of the Georgia Division Office. In these positions I interpreted and applied the Federal Motor Carrier Safety Regulations (FMCSR) to private and fore-hire carriers engaged in both interstate and foreign commerce.

6. In 1996 I served as one of four members of the OMC's ICC transition enforcement team. This group was charged with developing procedures to be followed in the application of the transferred ICC regulations. Included in these processes were the issues surrounding the jurisdiction of the OMC over fore-hire motor carriers. Because of my past experience with the ICC, I was called on to conducted training for OMC investigators in the Florida, Georgia, Kentucky, Tennessee, North Carolina, South Carolina, Alabama and Mississippi Divisions of the OMC regarding the application of the transferred ICC regulations, including issues concerning

jurisdiction.

7. This statement is based upon by review of documents as listed on the attached "elements relied upon in determining findings" as well as my over 26 years experience in regulating the trucking industry as detailed above.

8. Based on this review and the belief that Barbara Haniewski, d/b/a Salguad Warehouse & Transport in Wallingford, Connecticut, operated in interstate commerce, I find that:

A)    At the time of the transfer of all ICC regulatory functions to the Federal Highway Administration (FHWA), two upper management level personnel from the FHWA were detailed to the former ICC insurance registration section where they continued operation of that section in the same manner as had been conducted prior to the ICC Termination Act.

B)    The insurance registration section continued to receive mail at the same location, 14th Street and Constitution Avenue in Washington, D.C. 20423, regardless of whether it was addressed to the ICC or the FHWA.

C)    The Canal Insurance Company policy issued to Barbara Haniewski, d/b/a Salguad Warehouse & Transport in Wallingford, Connecticut (Haniewski) and its attendant Application for Commercial Motor Vehicle Insurance Liability and Physical Damage form clearly reflect Haniewski's operation as one of for-hire transportation of regulated freight for compensation.

D)    Haniewski was engaged in the for-hire interstate and/or foreign commerce transportation of regulated freight, for compensation.

E)    That Haniewski was subject to the jurisdiction of the Interstate Commerce Commission and its successor agency, the Federal Highway Administration.

F)    Given that Haniewski was subject to the jurisdiction of the ICC, Canal Insurance had an absolute obligation to send notification to the ICC. The fact that Haniewski may not have been registered with the ICC is irrelevant to this notice requirement. Pursuant to the regulations and the insurance policy at issue, the

Page 3 of 5

issue is whether the carrier is under the jurisdiction of the ICC or its successor agency, the FHWA.  The registration requirements are completely distinct from the issue of jurisdiction.

G)    It is my understanding that no notice was given to the ICC or its successor agency and, as such, it is my professional opinion that the requirements of the policy and the regulations have not been met and the policy should still be in full force and effect on the date of the collision.

Robert C.  Tynes

Subscribed and sworn to before me
on this *4th* Day of October, 2000

Notary Public
My Commission Expires: *03-04-04*

CAROLE P. GREENE
NOTARY
EXPIRES
GEORGIA
MARCH 4 2004
PUBLIC
DOUGLAS COUNTY

Page 4 of 5

Documents reviewed and relied upon in making my findings:

1.    49 U.S.C. Sections 13101, 13102, and 13501.
2.    49 CFR Part 365
3.    Insurance Policy No. 309923 issued by Canal Insurance Company to Barbara Haniewski d/b/a Salguad Warehouse & Transport.
4.    Connecticut Uniform Police Accident Report and accompanying Investigation Report.
5.    Motion For Summary Judgement filed by Canal Insurance Company on February 28, 2000.
6.    Defendant Barbarula's Objection To Motion For Summary Judgement Filed By Canal Insurance date April 20, 2000.
7.    Objection To Plaintiff's Motion For Summary Judgement filed by Eagle Leasing Company date April 20, 2000.
8.    Reply To Defendants Objection filed by Canal Insurance Company dated April 24, 2000.
9.    Memorandum Of Decision of the Superior Court, Judicial District of New Haven, dated July 26, 2000.
10.   Motion To Reargue filed by Canal Insurance Company dated August 9, 2000.
11.   Defendant Barbarula's Objection To Plaintiff's Motion To Reargue dated August 23, 2000.
12.   Reply To Defendant's Objection filed by Canal Insurance Company dated August 28, 2000.

No. 417942
**CANAL INSURANCE COMPANY**                              **SUPERIOR COURT**

VS.                                          JUDGE: E. C., 1ST OF NEW HAVEN **JUDICIAL DISTRICT**
                                                              **OF NEW HAVEN**

                                             JUL 26 2000
**BARBARA HANIEWSKI, ET AL**                 CHIEF CLERK'S OFFICE        **JULY 26, 2000**


## MEMORANDUM OF DECISION

   The plaintiff, Canal Insurance Company, issued an insurance policy to the defendant,

Barbara Haniewski, doing business as Salguad Warehouse & Transport, on February 27, 1996.

The defendant, Eagle Leasing, was added to the policy as an additional insured on or about June

19, 1996.  The term of said policy covered Haniewski's tractor trailer operations for the period of

one year ending February 27, 1997.  An Endorsement for Motor Carrier Policies of Insurance for

Public Liability Under Section 29 and 30 of the Motor Carrier Act of 1980, commonly known as

the MCS 90 endorsement, dated March 26, 1996, was attached to the policy on or about March

26, 1996. In the event the policy is canceled, the endorsement requires the plaintiff to send

advance notice of the cancellation to the Interstate Commerce Commission (commission) thirty

days in advance of the date of cancellation.  The commission, however, was terminated effective

January 1, 1996.  Haniewski failed to make payments of premium on the policy as required.  As a

result, on August 8, 1996, the plaintiff sent a notice of cancellation to Haniewski.  Notice of

cancellation was not sent to the defunct commission.  Haniewski still failed to pay the necessary

premium.  As a result, coverage was canceled, effective 12:01 a.m. on September 12, 1996.  At

12:31 p.m., on September 12, 1996, the defendant, Carlos Reummele, a driver for Haniewski, was

involved in a traffic accident which resulted in the death of Jing X. He, the decedent of the

defendant Michael Jon Barbarula. Haniewski made a claim for coverage to the plaintiff after

Barbarula filed a wrongful death action against Haniewski and Reummele. The plaintiff refused

coverage alleging that the policy was canceled and no longer in effect at the time of the traffic

accident.

The plaintiff filed this action for a declaratory judgment that the policy was no longer in

effect on the date of the accident, that the defendants are not entitled to coverage for liability

arising out of the accident, that the defendants are not entitled to a legal defense provided by the

plaintiff, and that the plaintiff is entitled to reimbursement of costs and legal fees spent in

connection with this matter. The plaintiff has now filed a motion for summary judgment that was

heard by the court on April 17, 2000. Barbarula and Eagle Leasing filed objections to the motion

for summary judgment along with memoranda of law on April 20, 2000, and April 25, 2000,

respectively.[1] The plaintiff filed a reply to Barbarula's objection on April 26, 2000.

A motion for summary judgment should be granted "if the pleadings, affidavits and any

other proof submitted show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law." Practice Book § 17-49. The parties

concede that there are no disputed questions of material fact. They agree that the plaintiff sent a

notice of cancellation to Haniewski and that no notice was sent to the commission or to its

successor. The plaintiff claims that the subject policy was properly canceled and that no notice

---

[1] Although these objections were untimely filed; see Practice Book § 17-45; § 17-45 "does not contain any provision . . . that the consequence of noncompliance with the rule is that the delinquent party 'shall be deemed by the court to have consented to the granting of the motion.'" **Pepe v. New Britain**, 203 Conn. 281, 287, 524 A.2d 629 (1987). Section 17-45 is not "a jurisdictional barrier that the parties cannot waive or the court may not excuse under any circumstances." **Pepe v. New Britain**, supra, 203 Conn. 288.

under the endorsement was necessary because the commission had been terminated more than nine months before the policy was canceled. The defendants argue that the ICC Termination Act transferred the responsibilities of the commission to another federal agency. Thus, determination of this motion for summary judgment turns only on the court's interpretation of the applicable law.

The commission was given regulatory authority over the motor carrier industry by the Motor Carrier Act of 1935. See Motor Carrier Replacement Information/Registration System, 61 Fed. Reg. 43816 (1996). The commission prescribed financial responsibility requirements for the motor carrier industry including endorsements on insurance policies obligating the insurance company to notify the commission in the case of cancellation. Id.; see also Surety bond, certification of insurance, or other securities, 49 C.F.R. 387.301 (1999) (formerly 49 C.F.R. 1043). The MCS 90 endorsement satisfied the commission's requirements. **Empire Fire and Marine Ins. Co. v. Liberty Mutual Ins. Co.**, 699 A.2d 482 (Md. App. 1997); see also Forms 49 C.F.R. 387.15 (1999).

The commission was terminated, effective January 1, 1996, by the ICC Termination Act of 1995 (Act). See ICC Termination Act of 1995, Pub. L. No. 104-88, 109 Stat. 804. New regulations were not promulgated until October 1998. Minimum Levels of Financial Responsibility For Motor Carriers, 49 C.F.R. 387 (1999). "Notwithstanding this hole in the regulatory fabric, pursuant to a savings provision contained in Section 204 of the Termination Act, the rules and regulations promulgated by the I.C.C. continue in effect until revised or revoked by parties designated in the Act's savings provision. As such, despite the demise of the I.C.C., the relevant law remains essentially the same." **Empire Fire and Marine Ins. Co. v.**

3

**Liberty Mutual Ins. Co.**, supra, 699 A.2d 491 (applying commission regulations to litigation that accrued prior to enactment of the ICC Termination Act of 1995, but which was not filed until after the Act went into effect).

Section 103 of the Act transferred to the Secretary of Transportation the responsibility of establishing minimum financial responsibility requirements. ICC Termination Act of 1995, supra, 109 Stat. 880. Section 104 of the Act, entitled "Saving Provisions," provided that "[a]ll orders, determinations, rules, regulations . . . (1) that have been issued, made, granted or allowed to become effective by the Interstate Commerce Commission . . . in the performance of any function that is *transferred by this Act* or the amendments made by this Act; and (2) that are in effect on the effective date of such transfer, *shall continue in effect according to their terms* until modified, terminated, superseded, set aside, or revoked in accordance with law by the Board . . . ." (Emphasis added.) ICC Termination Act of 1995, supra, 109 Stat. 941; see also Continuation of the Effectiveness of Interstate Commerce Commission, 61 Fed. Reg. 14372 (1996); 61 Fed. Reg. 43816, supra ("thereby preserving the status quo for the interim"). "Congress retained the requirement that notices of cancellations of insurance must be filed in advance with the FHWA [Federal Highway Administration]." 61 Fed. Reg. 43816, supra.

As the endorsement itself clearly states, "Cancellation of this endorsement *may be effected* by the company . . . if the insured is subject to the ICC's jurisdiction, by providing thirty (30) days notice to the ICC . . . ." (Emphasis added.) (Plaintiff's Motion for Summary Judgment, Exhibit 1, MCS 90 endorsement). It is undisputed that this notice was never given to the commission or to the Federal Highway Administration.

The plaintiff claims that, because the endorsement specifies notice only to the commission

4

and not to any successor, when the commission was terminated so was the plaintiff's obligation to give notice under the endorsement. The plaintiff further justifies its failure to give advance notice by claiming impossibility of notifying the commission after it was terminated.[2]

Giving notice under the endorsement was not impossible. As stated supra, public notice of the transfer of responsibility from the commission to the Federal Highway Administration was published in the Federal Register in March 1996, 61 Fed. Reg. 14372, supra, several months before cancellation of the subject policy. That public notice specified that the rules, regulations and legal documents of the commission were to remain in effect until modified or replaced by the Secretary. The public notice which appeared in the Federal Register in August 1996, 61 Fed. Reg. 43816, supra, specifically stated that the notice requirements were maintained and that advance notice to the Federal Highway Administration was required.

Although the plaintiff asks the court to rely on the language of the endorsement which specifies notice to the commission without mention of a successor[3], that endorsement was created and attached to the policy pursuant to federal regulation. The regulation provides protection to the public and obligates insurance companies independent of the wording of the endorsement.

---

[2] In support of this claim the plaintiff cites **Thompson v. Roach**, 52 Conn. App. 819, 728 A.2d 524 (1999), and **Vaillancourt v. New Britain Machine**, 224 Conn. 382, 618 A.2d 1340 (1993). Neither case concerns the regulation at issue in this case. In **Thompson**, the court held that the party required to give notice had fulfilled its obligation, although it had not *strictly complied* with the requirement, because it had done all that it could to supply the necessary information. **Thompson v. Roach**, supra, 52 Conn. App. 823. **Vaillancourt** merely holds that the court will not interpret a notice provision in a way that would render compliance impossible. **Vaillancourt v. New Britain Machine**, supra, 224 Conn. 393 n.10 ("construction of notice provision . . . would not require a type of notice that is impossible to give").

[3] The endorsement purporting to require advance notice to the commission was added to the policy in March, three months after the termination of the commission.

5

Subsequent changes in the regulation obligated the plaintiff to give notice to the Federal Highway

Administration. Compliance with the wording of the endorsement cannot discharge the

obligation that exists under the federal regulation, which was created to avoid the very situation

presented here. "Strict compliance by an insurer with the *statutory* mandates *and* policy

provisions as to notice is essential to effect a cancellation through such notice. . . . Any

ambiguities in the notice will be construed in favor of the insured." (Emphasis added; internal

quotation marks omitted.) **Stratton v. Abington Mutual Fire Ins. Co.,** 9 Conn. App. 557, 561,

520 A.2d 617, cert. denied, 203 Conn. 807, 525 A.2d 522 (1987). Allowing the plaintiff to

circumvent the federal requirements based on a narrow reading of the language in the

endorsement would defeat the purpose of the requirement. "The goal [of the regulation/licensing

and financial responsibility information systems] is to ensure sufficient financial responsibility

coverage to compensate the public for liability arising from personal injury, property damage,

cargo loss or damage, and property broker defaults." 61 Fed. Reg. 43816, supra.

The plaintiff was required to give notice to the Federal Highway Administration prior to

canceling the insurance policy. It did not. As a result, the insurance policy was not effectively

canceled. For this reason the plaintiff's motion for summary judgment is denied as a matter of

law.

BY THE COURT

Bruce L. Levin

*Judge of the Superior Court*

6