UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| MICHAEL BARBARULA<br>Plaintiff<br>VS<br>CANAL INSURANCE COMPANY, ET AL<br>Defendant | CIVIL<br>3:02 CV 1142 (EBB)<br><br>OCTOBER 29, 2004 |
|---|---|

**DEFENDANT'S OBJECTION MOTION FOR JUDGMENT INTEREST**

The defendant Canal Insurance Company hereby objects to the plaintiff's October 8, 2004 motion for judgment interest in its entirety. Although this court has ruled that the plaintiff is entitled to recover the full statutory amount permitted by an MCS-90 endorsement, which is expressly limited to $1 million dollars,[1] the endorsement does not provide for payment of judgment interest of any kind. The cases relied upon by the plaintiff in his motion for judgment interest are inapplicable to the case at bar because those holdings rely not upon an MCS-90 endorsement, but rather upon the contractual requirement to pay judgment interest set forth in the insurance policies in effect at the time of the loss at issue. None of the cited cases or any other decisions require an insurer that is exposed for liability solely on the basis of the MCS-90

---

[1] The MCS 90 endorsement is attached as Exhibit 1. In relevant part, the endorsement provides as follows: "In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, **within the limits of liability described herein**, any **final judgment** recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Section 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each such motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere." The endorsement also provides that "This insurance is primary and **the company shall not be liable for amounts in excess of $1,000,000 CSL for each accident.**" (emphasis added)

endorsement to pay anything beyond the amount indicated on the face of the MCS-90 endorsement.  In the case at bar the defendant has already obtained a final judgment against the plaintiff declaring that the insurance policy was properly canceled prior to the subject accident.  While the MCS-90 endorsement acts as a surety, and requires Canal to pay up to a fixed statutory amount of money to the plaintiff in accordance with the court's ruling, the plaintiff is not entitled to expand the scope of the surety beyond that intended by Congress in excess of the $1 million dollars set forth in the body of the endorsement.

### (i) MCS-90 Endorsement

It is critical to recognize that the insurance policy and the endorsement are different instruments.  The insurance policy issued by Canal was a contract between Canal and Salguod Warehouse & Transport ("Salguod"), wherein Canal agreed to insure Salguod in exchange for Salguod paying insurance premiums to Canal.  The MCS-90 endorsement is a surety created by Congress solely for the benefit of injured members of the public.  Northland Insurance Co. v. New Hampshire Insurance Co., 63 F.Supp.2d 128, 134 (D. New Hampshire, 1999). The MCS-90 endorsement was not a part of the original policy purchased by Salguod, and it provides no benefit of any kind to Salguod.  The endorsement does not create insurance coverage for Salguod, and in fact permits Canal to seek reimbursement of any money paid to the plaintiff pursuant to the endorsement.

As noted by this court, the MCS-90 endorsement is governed by federal law, not state law.  However, the construction of insurance policies, and, therefore, the scope of coverage are matters of state law.  T.H.E. Insurance Co. v. Larsen Intermodal Services, Inc., 242 F.3d 667, 671 (5th Cir. 2001).

The plaintiff has failed to cite any statute or any case law which provides for the collection of judgment interest above the policy limits stated on an MCS-90 endorsement.  The few reported decisions which have compared general policy provisions for cancellation with endorsements which require additional notice have all recognized that such endorsements are separate entities, distinct from the underlying policy, and have held that so long as the policy was properly canceled according to its own terms failure to also cancel the endorsement does not reinstate the policy.  See Edwards v. American Home Assurance Company, 361 F.2d 622, 626-27 (9th Cir. 1966); Home Indemnity Company v. Empire Fire & Marine Insurance Company, 537 F. Supp. 222, 225-26 (D. Montana, 1982).  See also  Truck Insurance Co. v. E.H. Martin, Inc., 876 S.W.2d 200, 203-05 (Tex. App.–Waco, 1994).

The MCS-90 endorsement at issue in the case at bar has its own defined terms and conditions of what constitutes an "accident" and what constitutes a "bodily injury" and "public liability."  A plain reading of the endorsement establishes that it provides a benefit to injured members of the public that is very different from the underlying policy provisions designed to protect Salguod.  Unlike the policy, the endorsement did not require Canal to provide Salguod with a legal defense.  T.H.E. Insurance Co. v. Larsen Intermodal Services, Inc., supra at 774-75.  Unlike the policy, the endorsement contains no provisions for the payment of judgment interest or any other costs associated with defending Salguod.  The MCS-90 endorsement does not provide insurance coverage, it only provides a surety to an injured member of the public which is capped at $1 million dollars.[2]

---

[2] The purpose of the endorsement is to assure members of the public that a motor carrier has independent financial responsibility, within the dollar amounts prescribed ($1million dollars), to pay

It is not disputed by the plaintiff that Salguod breached the underlying insurance contract, by failing to pay for insurance coverage. Nor is it disputed that Canal properly canceled the policy for lack of payment at least ten days prior to the subject accident taking place. Canal has already obtained a judgment against the plaintiff declaring that the insurance policy was properly canceled, and further declaring that Canal was not obligated to provide Salguod was a defense in the personal injury action commenced by the plaintiff. Although not articulated in Judge Blue's decision, it is well established in Connecticut that the insurer's duty to defend the insured is broader than the duty to indemnify the insured under the terms of the policy, and the holding that Canal was not obligated to defend Salguod makes it clear that Canal had no obligation to pay the judgment later returned against Salguod pursuant to the terms of the policy. See also DaCruz v. State Farm Fire & Casualty Co., 268 Conn. 675, 687, 794 A.2d 1132 (2004); Heyman Associates No. 1 v. Ins. Co. of Pennsylvania, 256 Conn. 343, 382, 653 A.2d 122 (2001).

The plaintiff accepted Judge Blue's decision, and did not appeal the holding that the policy was properly canceled. An insurance policy can not be deemed canceled for one purpose (the duty to defend), but then found to be in force for another reason as suggested the plaintiff. This is especially so when considering that the duty to defend is broader than the duty to indemnify the insured for any judgment obtained by the injured party. Id. It makes no sense to hold that Canal had no obligation to defend Salguod because the policy was canceled, but to now rule that the policy requires Canal to pay millions of dollars in interest on the judgment returned against Salguod in the very same

---

for losses created by carrier operations. Canal Ins. Co. v. First General Ins. Co., 889 F.2d 604, 611 (5th Cir. 1989).

4

case. The holding that the policy was canceled remains binding on these parties, and the plaintiff is not entitled to look to the underlying policy provisions in an effort to recover judgment interest not provided for by the MCS-90 endorsement.

The plaintiff only alleged in his complaint that he was seeking damages pursuant to the MCS-90 endorsement because he conceded that the policy was canceled prior to the subject accident. The plaintiff is not entitled to utilize policy provisions intended to benefit Salguod at this stage of the proceedings, and has failed to cite any case which holds to the contrary. The plaintiff has cited no legal authority of any kind which would authorize this court to grossly expand the amount of the surety authorized by Congress when it created the MCS-90 endorsement. Such a holding would be plain error in light of the clear language of the endorsement, which provides on its face that "the company shall not be liable in amounts in excess of $1,000,000 for each accident."

In an effort to further cloud the issues in a fairly complex case, the plaintiff relies upon the holding in T.H.E. Insurance Company v. Larsen Intermodal Services, 242 F.3d 667 (5th Cir. 2001) to argue that because the endorsement was not properly canceled, the policy itself remains enforceable, despite the prior holding that the policy was canceled prior to the subject accident. That is not what the court said in T.H.E. Insurance Company v. Larsen Intermodal Services, supra, and the plaintiff is incorrect on this important point of law.

Although it is accurate to state that the MCS-90 endorsement can read out, or nullify certain *clauses* of an insurance policy (such as other insurance clauses, geographic limitations for accidents, or policies which only cover specific vehicles listed on the policy) which would otherwise prevent a recovery, neither the decision rendered by the court in T.H.E. Insurance Company v. Larsen Intermodal Services, supra, nor

any other decision cited by the plaintiff has held that the endorsement resurrects an insurance policy properly canceled in its entirety for lack of payment prior to the subject accident.

The essence of the holding in T.H.E. Insurance Company, supra, is that the insurance company can not escape an obligation to satisfy the surety created by the MCS-90 endorsement, even if the policy itself would not have provided insurance coverage for loss in question because the tractor trailer was not listed on the policy. Even though the vehicle at issue in that case was not covered by the policy, the insurer was still obligated to pay the surety created by the MCS-90 endorsement, up to $1 million dollars. Id. The money being paid the injured party pursuant to the endorsement is a surety and is separate from the policy, so as to create an obligation to pay that the policy does not.

The MCS-90 endorsement is a form drafted by the Department of Transportation promulgated at 49 C.F.R. § 387.15. As this court has held, the MCS-90 imposes upon the issuing insurer a duty to pay certain judgments entered upon the insured motor carrier even though no coverage existed, for whatever reason, under the basic policy. In this case, it can not be disputed that the basic policy was canceled prior to the loss in question. The success or failure of the plaintiff's claims for judgment interest thus hinges solely upon the terms of the MCS-90 endorsement.

Ina standard liability insurance policy, the insurer has the duty to investigate any reported loss, to defend the insured in any lawsuit arising there from, and to respond in good faith to any settlement offers. In that context, Connecticut imposes the obligation to pay offer of judgment interest if an offer to settle is rejected and the plaintiff ultimately obtains a higher ward.

However, since the policy was cancelled prior to the loss at issue in this case, Canal had no duty to do anything until judgment was entered against its named insured and a subsequent claim was presented by the injured party pursuant to the MCS-90 endorsement.  In <u>Harco Nat'l Ins. Co. v. Bobac</u>, 107 F.3d 733 (9th Cir. 1997), the court held that the MCS-90 endorsement imposes no duty to defend.  <u>See</u> <u>also</u> <u>Accord, Travelers Indemn. Co. of Illinois v. Western American Specialized Transportation Co, Inc.</u>, 317 F. Supp.2d 693, 678 *W.D. La. 2004); <u>St. Paul Fire & Marine Ins. Co. v. Newman</u>, 2000 WL 1367980 at 6 (S.D. Ala., Sept. 5, 2000); <u>Northland Ins. Co. v. New Hampshire Ins. Co.</u>, 63 F. Supp.2d 128, 134 (D. N.H.  1999); <u>John Deere Ins. Co. v. Truckin' USA</u>, 1996 WL 734952 (N.D. Tex., Dec. 10. 1996), <u>aff'd</u> 122 F.3d 270 (5th Cir. 1997); <u>National Am. Ins. Co. v. Central State Carriers, Inc.</u>, 785 F. Supp. 793, 797 (N.D. Ind. 1992).

The insurer, by issuing the MCS-90 endorsement. Agreed only to pay, within the limits of liability, any final judgment recovered against the insured.  Until judgment entered and a claim was made pursuant to the MCS-90 endorsement the insurer owed no duty of any kind, and should not be responsible for judgment interest.  As the MCS-90 did not create insurance coverage, the plaintiff can not use the endorsement to argue that Canal had an obligation to engage in settlement negotiations pursuant to the terms of the underlying policy.  <u>Progressive Cas. Ins. Co. v. Hoover</u>, 570 Pa. 423, 434-35, n. 11, 809 A.2d 353, 360 (2002).  Since Canal had no duty to defend the underlying lawsuit and, concomitantly, no duty to entertain settlement offers, it is absurd to argue that its failure to settle entitles the plaintiff to recover "offer to settle" interest.

It can not be disputed that the endorsement limits the amount of payment to $1 million dollars.   In an effort to obtain a far greater sum, the plaintiff looks not to the

language of the endorsement, but rather to the canceled policy, arguing that because Canal agreed to indemnify Salguod for interest added to any judgment, he too should be paid for interest as a cost of litigation.  However, it has already been decided by Judge Blue that Canal owed no duty of any kind to Salguod, and certainly Salguod could not look to Canal to pay pre or post judgment interest.  The plaintiff is not entitled to rely upon specific policy provisions, as he has alleged damages solely under the MCS-90 endorsement.  That endorsement provides no means of recovering damages of any kind above $1 million dollars.  Therefore, the plaintiff is not entitled to any judgment interest.

    **(ii)  C.G.S. § 38a-321**

The plaintiff's complaint also seeks damages pursuant a Connecticut state statute, C.G.S. § 38a-321.  This aspect of the case is governed by state law, not federal law.  Pursuant to the plain terms of C.G.S. § 38a-321, the plaintiff's rights are identical to those held by Salguod pursuant to the terms of the underlying policy, and Barbarula is subject to the same policy defenses.  The Connecticut Supreme Court has repeatedly held that C.G.S. § 38a-321 only provides the injured party with a right identical to the right of the insured to recover *on the insurance policy*.  If the insured fails to qualify for coverage under the policy, the injured person too fails to qualify.  The rights of the injured person are entirely dependent upon the rights of the insured.  Brown v. Employer's Reinsurance Corp., 206 Conn. 668, 539 A.2d 138 (1988); Aetna Casualty & Surety Co. v. Jones, 220 Conn. 285, 305-06 (1991).  In this case, the insured has no rights, since the policy was cancelled and the MCS-90 confers no rights to the insured.

In support of his position that he is entitled to pre-judgment interest, the plaintiff relies heavily upon the case of Cox v. Peerless Ins. Co., 774 F. Supp. 83, 86 (D. Conn.

1991).  However, the holding in that case is readily distinguishable from the facts at issue here.  In Cox v. Peerless, supra the holding was closely tailored to the terms of the specific insurance policy before the court, which held that the insurer was obligated to pay "defense costs" in addition to "damages."  Id. at 86.  In the case at bar the policy was canceled prior to the subject accident, and Salguod would have no right to seek indemnification of judgment interest from Canal.  As Salguod would be precluded from seeking payment of judgment interest, so too is Mr. Barbarula, because he can receive no greater right to recover than the insured would have had pursuant to C.G.S. § 38a-321.  Brown v. Employer's Reinsurance Corp., 206 Conn. 668, 539 A.2d 138 (1988); Aetna Casualty & Surety Co. v. Jones, 220 Conn. 285, 305-06 (1991).

      The defendant moved for summary judgment as to this aspect of the case because C.G.S § 38a-321 clearly provides the plaintiff with no means of recovery in light of the decision by Judge Blue that the policy was canceled with respect to Salguod.  As the plaintiff steps into Salguod's shoes under the statute as a judgment creditor, he too is precluded from seeking indemnification from Canal.  The court's prior ruling that Salguod was not entitled to a legal defense or indemnification is binding upon the plaintiff, and should have been dispositive of his claims pursuant to C.G.S. § 38a-321, as well as any claim for bad faith insurance practices, which also depend entirely upon the existence of the underlying insurance policy.

      Awarding the plaintiff judgment interest would not only be legally improper, it would not serve the goals of Connecticut General Statutes § 37-3a, 37-3b and 52-192a, which is to promote resolution of disputed claims.  As discussed in Cox v Peerless, supra, the rationale for awarding pre-judgment interest is to encourage settlement and avoid a trial.  However, given the holding by Judge Blue, which was issued prior to trial

of the plaintiff's personal injury case, that Canal had no duty to defend (and therefore no duty to indemnify) Salguod because the policy had been canceled prior to the accident, there was no incentive to discuss settlement, and Canal should not be punished by having to more than $3 million dollars in interest above the original award returned by the jury.  It would be completely unfair to ignore Judge Blue's ruling which held that Canal had no obligation to defend the underlying case, but to now find that Canal is obligated to pay judgment interest in excess of $3 million dollars as a cost of defense associated with the very same claim.

      The plaintiff can not recover judgment interest added to the original judgment entered against Salguod because he is not entitled to demand enforcement of the policy provisions at this juncture of the litigation.  The plaintiff is limited to the terms and conditions of the MCS-90 endorsement, which provides nothing more than surety of up to $1 million dollars.  This same rationale also precludes the plaintiff from recovering offer of judgment interest against Canal in this case.  Neither the MCS-90 endorsement nor C.G.S. § 38a-321 relate to the plaintiff's bad faith claim against Canal Insurance Company as alleged in a separate count of the complaint.  The court has yet to decide the bad faith claim, and it is premature for the plaintiff to receive offer of judgment interest in this case for claims made directly against Canal.  Neither the MCS-90 endorsement nor the direct action statute provide the plaintiff with a right to recover offer of judgment interest calculated in connection with the claims made against Canal in this litigation, and the demand for an additional post-judgment interest are premature.

      It appears that this litigation will continue even after judgment enters in this case, as the parties will litigate the plaintiff's claims of bad faith insurance practices, which Canal strongly believes were mooted by the holding that the policy was canceled prior

to the subject accident. The court should wait until all claims are resolved and final judgment enters on all counts before considering the claim for offer of judgment interest in this case. C.G.S. § 52-192a provides in relevant part as follows: "(b) <u>After</u> <u>trial</u> the court shall examine the record to determine whether the plaintiff made an 'offer of judgment' which the defendant failed to accept. . . ." (emphasis added) In the case at bar additional claims have yet to be resolved, and there has not been a final disposition by trial or by summary judgment. It is therefore premature to award offer of judgment interest pursuant to this statute, which directs the clerk of the court to calculate interest at the end of the litigation, pursuant to a post-trial motion. <u>Tureck v. George</u>, 44 Conn. App. 154, 161, 687 A.2d 1309 (1997).

      For all of the reasons stated and discussed herein, the defendant Canal Insurance Company respectfully objects to the plaintiff's motion for judgment interest in its entirety. The amount of the judgment entered should not exceed $ 1 million dollars under any circumstances as a matter of law, and the defense requests that the court so rule.

THE DEFENDANT, CANAL
INSURANCE COMPANY

By _____
JOHN W. MILLS, CT 11706
MURPHY and KARPIE
350 Fairfield Avenue
Bridgeport, CT 06604
Tel: (203)333-0177
Facsimile: (203) 333-8475

## CERTIFICATION

       This is to certify that a copy of the foregoing has been mailed, U.S. Mail, postage prepaid on October 29, 2004 to:

> Attorney Joel Faxon
> Stratton Faxon
> 59 Elm Street
> New Haven, CT  06510
>
> Attorney John Dietz
> Halloran & Sage
> 315 Post Road
> Westport, CT  06880

                                               JOHN W. MILLS