UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **MICHAEL JON BARBARULA,** | : | CIVIL ACTION NO. |
| Administrator of the Estate of | : | 3:02 CV 1142 (EBB) |
| Jing Xian He, | : | |
| | : | |
| vs. | : | |
| | : | |
| **CANAL INSURANCE COMPANY, et al.**: | | NOVEMBER 3, 2004 |

### REPLY MEMORANDUM IN SUPPORT OF MOTION TO ADD OFFER OF JUDGEMENT INTEREST AND OTHER INTEREST OWED ON THE POLICY TO THE PARTIAL JUDGMENT

As this court stated in its Ruling on the Motions for Summary Judgment, the MCS-90 affects the relationship between the injured person and the carrier and the purpose of the endorsement is to fix "financial responsibility for damage and injuries to . . . members of the public." Ruling at 11, 18. "The endorsement [MCS-90] accomplishes its purpose by reading out only those clauses in the policy that would limit the ability of a third party victim to recover for his loss.' T.H.E. Insurance Company v. Larsen Intermodel Services, 242 F.3d 667, 673 (5th Cir. 2001)." Ruling at 17-18. "The holding of this Court, then, is that, as a matter of federal law as cited herein, Canal's Policy was never cancelled.[1] Thus,

---

[1] Canal argues repeatedly that the policy was cancelled. Since Judge Blue declined to rule on the application of federal law, his decision has no bearing on whether the policy was cancelled under federal law. Since this court has held that "as a matter of federal law as cited herein, Canal's Policy was never cancelled", Ruling at 18, the argument that the policy was cancelled flies in the face of this court's ruling and holding. Moreover, if there are conflicting provisions in policies (i.e. two cancellation clauses – the federal cancellation clause in this case more generous) the clause that favors the insured is the operative clause. See Royal Ins. Co. v. Zygo, Corp., No. 3:01cv1317, at 7-9 (D.Conn. Aug. 15, 2003) (if "the words of the policy are susceptible of two equally

1

Canal must compensate Barbarula, subject to reimbursement by Haniewski and Reummele." Ruling at 18.

Further, contrary to Canal's suggestion made for the third time in this litigation, the MCS-90 endorsement does not cause the policy to disappear in a situation where the insurer would otherwise have a defense to coverage, but rather it simply acts as an "eraser" and removes the clause that would otherwise provide the victim with no coverage – in this case the cancellation clause. The text of the MCS-90 must be given a liberal, remedial construction. See Pierre v. Providence Washington Ins. Co., 784 N.E.2d 52, 55 (N.Y. 2002) ("remedial legislation" that must be "interpreted broadly"). Further, the court must apply "the literal language of the endorsement and the underlying policy to determine its meaning. See Integral Ins. Co. v. Lawrence Fulbright Trucking, Inc., 930 F.2d 258 (2d Cir. 1991)." Id. at 57.

Accordingly, if the MCS-90 is in force, as in this case due to ineffective cancellation, it creates liability under the policy on behalf of the insurance company to the injured victim; and only that portion of the policy which would defeat the injured victim's claim is construed as being eliminated from the policy. See T.H.E. Insurance Co. v. Larsen Intermodal Services, 242 F.3d 667, 673 (5th Cir. 2001) (the endorsement "read[s] out only those clauses in the policy that would limit the ability of a third party victim to recover for his loss."); Ruling at 17-

---

responsible interpretations, the Court must adopt that interpretation that will sustain the claim and cover the loss"; the language is construed against the insurer and in favor of the insured). Accordingly, under federal law the policy was never cancelled and all provisions are still active and protect the plaintiff from loss.

18.  Thus, under the literal language of the MCS-90, the terms of the policy remain in "full force and effect" until effectively cancelled.  See iTHE Insurance Co., 242 F.3d at 671; 49 C.F.R. § 387.15.  The MCS-90 endorsement does not have a separate existence separate and apart from the policy.

As stated recently by the New York Court of Appeals, the foregoing analysis of the effect of the MCS-90 endorsement on the policy of insurance asserted by the plaintiff here:

> is the only result consistent with the public policy underpinnings of the endorsement:  shifting the risk of loss in motor vehicle accidents involving tractor-trailers operated in interstate commerce by guaranteeing that an injured party will be compensated even if a condition in the liability policy would otherwise provide the insurance carrier with a valid defense.

Pierre, 784 N.E.2d at 60.  After identifying the proper construction of the endorsement, the court went on to persuasively:

> reject [the insurer's] contention that the MCS-90 endorsement should not be treated as a part of the underlying trucker's liability policy but should be viewed as imposing conditions distinct from those contained in the policy. First, we note that we are bound to interpret the endorsement according to federal law and none of the federal courts which have determined claims brought by injured parties under the MCS-90 endorsement have adopted this approach. Rather, in each case, the courts have interpreted the endorsement by reference to the policy to which it is attached. Second, by its literal language, the endorsement simply does not provide separate coverage. Like most endorsements to insurance policies, it explicitly cross-references and incorporates several of the terms of the policy.
> Most significantly, the endorsement delineates circumstances when the insurance carrier must compensate an injured party even if the policy purports to absolve the insurer of responsibility. Had the drafters intended to use the endorsement to create contractual obligations distinct from those in the policy, they would have included separate provisions in the endorsement defining coverage, rather than merely negating exceptions included in the policy. Under [the insurer's] view of the endorsement, a party insured under the policy might not be covered under the endorsement. We see nothing in the language of the endorsement indicating that coverage is being contracted in this manner; to the contrary, by its plain terms the endorsement unreservedly eliminates any

>conditions or limitations in the policy for purposes of compensating an injured party.

Id. at 60-61.  The law clearly indicates that the MCS-90 endorsement does not have an existence separate and apart from the policy.  In this case the plaintiff is fully entitled to proceed against Canal under the direct action statute and obtain full compensation under the policy for all payments that should have been properly made thereunder – including the CSL limit of liability and all other payments (i.e. supplementary payments – including offer of judgment interest).

As stated in plaintiff's motion, since the policy was never properly cancelled under Federal Law, Canal is responsible for the payment of the offer of judgment interest, post judgment interest and costs because they are "defense costs" incurred by Canal due to its failure to settle the claim in accordance with the offer of judgment. See Cox v. Peerless Ins. Co., 774 F. Supp. 83, 86 (D. Conn. 1991).  Thus, partial judgment should enter accordingly.

Canal requests that the court defer ruling on this motion.  The court is fully empowered to decide the issues now.  First, the court specifically requested the plaintiff to submit any request for additional damages forthwith, which the plaintiff did.  In addition, the court should entertain the motion for judgment interest to the extent that it implicates the $1,000,000. limit of liability, since, under Fed. R. Civ. P. 54(b), this court can enter a partial judgment against Canal (inclusive of judgment interest), subject to revision should the plaintiff prevail on the bad faith and CUTPA claims that seek damages for all losses assessable against the defendants in the underlying case.

Based on the foregoing, the motion to add offer of judgment interest and other interest should be granted as set forth in the plaintiff's motion.

THE PLAINTIFF,

By: _____
    Joel T. Faxon, Esq.
    STRATTON FAXON
    59 Elm Street
    New Haven, CT 06510
    Telephone (203) 624-9500
    E-Mail jfaxon@strattonfaxon.com
    Federal Bar # ct16255

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been mailed, postage prepaid, on this day to:

**John W. Dietz, Esq**.
Halloran & Sage
315 Post Road West
Westport, CT 06880

**John W. Mills, Esq.**
Murphy and Karpie
350 Fairfield Avenue
Suite 408
Bridgeport, CT 06604

_____
Joel T. Faxon, Esq.
