UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MICHAEL JON BARBARULA | : | |
|     Plaintiff | : | |
| | : | |
|       vs | : | Case No.: 3-02-CV 1142 (EBB) |
| | : | |
| CANAL INSURANCE COMPANY, | : | |
| ROYAL INSURANCE COMPANY OF | : | |
| AMERICA, ROYAL INDEMNITY | : | |
| COMPANY AND ROYAL SURPLUS | : | |
| LINES INSURANCE COMPANY | : | |
|     Defendants | : | February 9, 2005 |

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
AND MOTION FOR EXTENSION OF TIME TO COMPLETE DISCOVERY**

STATEMENT OF FACTS

The above case was originally instituted in the Connecticut Superior Court

by way of summons and complaint, dated June 6, 2002. The case was

thereafter removed to federal court. The original complaint, which continues to

be the operative complaint in this case, contains four counts. Counts one

through three are brought against the defendant Canal Insurance Company

(hereinafter "Canal") and the fourth count is against the defendants Royal

Insurance Company of America, Royal Indemnity Company and Royal Surplus

Lines Insurance Company (hereinafter "the Royal defendants). The first count

alleges a cause of action pursuant to §38a-321, Conn.Gen.Stats. The second

count alleges a cause of action for breach of good faith and the third count

alleges a cause of action pursuant to the MCS-90 Endorsement.  The original

complaint sought compensatory damages and did not seek punitive damages.

Canal filed its answer, special defenses and jury claim (#9) on August 5,

2002.  The plaintiff filed an offer of judgment (#18) on December 2, 2002.  Canal

filed a motion for summary judgment as to counts 1, 2 and 3 (#19) on December

6, 2002. The plaintiff filed a motion for extension of scheduling order (#23) on

December 12, 2002, requesting that the discovery deadline be extended to

February 28, 2003 and the date for the defendants to file motions for summary

judgment be extended to January 15, 2003.  This motion states that these

extensions of time were discussed at the December 6, 2002 status conference.

The motion was granted on December 13, 2002, with an order that the discovery

cutoff date would be February 28, 2003 and dispositive motions would be due by

January 15, 2003.   The discovery deadline has never been modified.

After the discovery period ended, dispositive motions were filed and the

possibility of settlement was explored. Canal's first motion for summary judgment

(#19) was denied in the Ruling (#43, Hall, J.) issued by the court on September

11, 2003.  A telephone status conference was held on September 23, 2003.

Thereafter, all parties filed motions for summary judgment—Canal's was filed on

September 25, 2003 (see #38, #39 and #43); plaintiff's was filed on September

29, 2003 (see #40, #41, #42).  Various extensions of time were filed and granted

with respect to deadlines for filing briefs in connection with the summary

judgment motions.  In the meantime, the case was referred to Magistrate Holly

Fitzsimmons for the purpose of conducting a settlement conference, which was

held on December 19, 2003.  The case did not settle at that time.

On February 25, 2004, the case was reassigned to Judge Ellen Bree

Burns for all further proceedings.  Various memoranda were filed by the parties

pertaining to the pending motions for summary judgments.  The court issued a

Ruling (#87) dated September 29, 2004, denying Canal's second motion for

summary judgment (#38), granting the plaintiff's partial motion for summary

judgment (#40) and denying the Royal defendants' motion for summary judgment

(#26). The court temporarily deferred ruling on the issue of whether the plaintiff is

entitled to pre-judgment and post-judgment interest and on the plaintiff's bad faith

claim.   On October 4, 2004, the court referred this case to Magistrate Joan

Margolis for a settlement conference (#87).  The plaintiff filed a motion to add

offer of judgment interest and other interest (#89) on October 8, 2004.  Notice of

settlement conference was issued on October 25, 2004, scheduling the

settlement conference before Judge Margolis on December 16, 2004.  The case

did not settle at that time.

Despite the fact that the discovery phase and the time for filing dispostive

motions had long passed, on November 3, 2004, the plaintiff filed a motion to

amend complaint (#92), seeking to amend his complaint by adding an entirely

new count to assert a claim under CUTPA (Connecticut Unfair Trade Practices

3

Act, Conn.Gen.Stats. §42-110b, et seq.)  Canal filed an objection to the plaintiff's

motion to amend on the grounds that it is untimely, it evidences undue delay, bad

faith or dilatory motive and it causes undue prejudice to Canal.  The motion to

amend and objection thereto are pending before the court.

There was one outstanding discovery issue and the plaintiff recently

requested that the court issue a ruling on the plaintiff's outstanding motion to

compel (#57), dated December 3, 2003, which was fully briefed by the parties in

late 2003 and early 2004. That motion relates to interrogatories and requests for

production filed by the plaintiff in 2003, which sought, among other things, the

production of the entire claims file related to the underlying wrongful death case,

including but not limited to, all information on the reserve in this case,

documents, communications with counsel, claim memoranda and notes.  Without

waiving its objection, Canal produced copies of all non-privileged documents

from the claims file and provided a privilege log listing those documents withheld

from production.  What disclosure will be required in connection with the

previously filed interrogatories and requests for production is under consideration

by the court, which is presently conducting an *in camera* review of portions of the

underlying claims file.

Although the discovery period, as amended, set forth in the scheduling

order had long since passed, the plaintiff filed additional interrogatories and

requests for production, dated December 16, 2004.  The plaintiff also issued a

4

notice of deposition, dated January 11, 2005, for a Canal representative most

knowledgeable concerning the handling of the underlying wrongful death case,

and requesting the deponent produce at the deposition noticed for January 31,

2005, all items requested in the plaintiff's motion to compel, dated November 15,

2003, and all items requested in the plaintiff's interrogatories and requests for

production, dated December 16, 2005.  Canal objected to the interrogatories and

requests for production, and its objections are attached as Exhibit A to the

plaintiff's memorandum in support of motion to compel, dated January 19, 2005

(#107).  Canal also filed a motion for protective order as to the deposition notice

(#112).

LAW AND ARGUMENT

        Canal's first argument is that the interrogatories and requests for

production are untimely because the discovery period ended on February 28,

2003.  In his memorandum of law in support of motion to compel, the plaintiff

asserts that he is attempting to obtain documents related to Canal's handling of

the underlying claim which is the subject of the bad faith action against Canal.

The bad faith action was asserted in the original complaint filed dated June 6,

2002, and all discovery related to that cause of action, should have been filed

prior to the amended discovery deadline of February 28, 2003.  In fact, in 2003

the plaintiff had filed interrogatories and requests for production specifically

related to its bad faith claim, including a request for the underlying claims file.

5

The scheduling order is designed to streamline the litigation process and to provide dates by which different stages of the litigation must be completed. In this case, not only had the discovery period ended, but summary judgment motions had already been filed and considered, at least partially, by the court and settlement conferences had been held. Deadlines are meant to be followed not ignored by the litigants. The plaintiff has failed to provide the court with any reason whatsoever as to why these interrogatories and requests for production were not filed during the court-ordered discovery period, and a simple review of the interrogatories and requests for production leads to the conclusion that there is no reason why they could not have been filed then, rather than now. Plaintiff's much belated filing of a motion for extension of time to complete discovery, dated January 19, 2005 does not even contain any reasons why the discovery could not have been completed in accordance with the scheduling order as previously amended. This motion for extension of time, filed after Canal's objections to the interrogatories and requests for production, is simply an end-run around the orderly discovery process and should not be allowed. The motion to compel should be denied on that basis alone.

Re: Interrogatories 1, 2, 4 and 5 and Requests for Production 1, 2 and 3

Interrogatories 1, 2, 4 and 5, and requests for production 1, 2 and 3 seek information and documentation of insurance coverage "at the time of the incident which is the subject of this lawsuit, **and** at all times relevant to the pleadings filed

6

in this case **and** in connection with its adjustment of the underlying claim

[emphasis added]."  The plaintiff has failed to define what is meant by "the

incident which is the subject of the lawsuit."  In his memorandum in support of

motion to compel, the plaintiff states that he is seeking two categories of

information, one of which is referred to by the plaintiff as "insurance applicable to

this claim."  What "claim" does the plaintiff mean?  The plaintiff is well aware that

Canal believes that it had no obligation to provide insurance coverage in the

underlying claim for the reason that its policy had properly been cancelled.

If the plaintiff is seeking information as whether a monetary judgment

rendered against Canal on any of the counts of the complaint in the instant

federal action could be paid by another insurance company, Canal objects to

disclosing such information as it is not reasonably calculated to lead to the

discovery of admissible evidence.  Whether Canal, an insurance company, has

business or contractual relationships with other insurance companies, such that a

judgment rendered in this case against Canal might be paid by another company

is irrelevant and constitutes an intrusion into the business affairs of Canal. [1]

---

[1] Canal contends that Rule 26(a)(1)(D) does not apply to this case since the Report of Parties
Planning Meeting Pursuant to Fed.R.Civ.P. 26(f) does not incorporate said portion of Rule 26
and the defendant retains the right to assert an objection to its application here.  This rule
was not intended to apply to the instant situation, where an insurer is being sued for its
allegedly wrongful failure to settle and pay the judgment in an underlying tort case.  Even if
the court were to rule that the rule applies, the interrogatories and requests for production
go far beyond the discovery permitted by the rule, which just provides for the inspection and
copying of "any insurance agreement under which any person carrying on an insurance
business may be liable to satisfy all or part of a judgment which may be entered in the action

That the plaintiff has filed a request for a prejudgment remedy does not entitle

the plaintiff to such information.  While it is true that theoretically a defendant in a

PJR hearing might argue that the existence of insurance coverage, with limits

sufficient to cover a judgment that could reasonably be rendered,  would militate

against the attachment of personal assets, Canal has not made that argument.

In fact, Canal's financial position is such that it has assets sufficient to cover a

judgment that might be rendered against it in this case. [2]

Interrogatory 5 asks whether "the potential liability of the defendant in

connection with this matter [is] subject to any reinsurance agreements?"

> Reinsurance is a contract by which one insurance company
> agrees to indemnify another in whole or in part against loss
> or liability which the latter has incurred under a separate
> contract as insurer of a third party…Reinsurance is a method
> by which an insurance company distributes all or part of its
> potential losses to another insurance company in order to
> reduce the extent of its possible loss under any policy or
> policies it has issued.  The insurer, or ceding company,
> allots to the reinsurer, or assuming company, that possible
> liability which in its judgment may exceed the amount its
> financial structure should safely assume on any one risk.

Fontenot v. Marquette Casualty Co., 258 La. 671, 247 So.2d 572, 575 (1971).

Whether Canal had entered into any reinsurance contracts is irrelevant in this

case, and such disclosure would go beyond the insurance information

disclosable under Rule 26(a)(1)(D).  Such a contract would be between two

---

or to indemnify or reimburse for payments made to satisfy the judgment. If any insurance
disclosure is ordered by the court, it should be limited to that which is listed in the rule.

insurers and the reinsurer would owe no obligation to the plaintiff, but only to

Canal.  Allowing the discovery of reinsurance agreements constitutes an

unnecessary invasion into the business decisions of the company, and the

production of any such reinsurance agreements could not possibly lead to the

discovery of admissible evidence.

Re:  Requests for Production 15, 16, 17, 18, 19 and 21

The plaintiff states in his motion to compel that requests for production 15,

16, 17, 18, 19 and 20 "[b]asically,…,boil down to claims manuals that Canal uses

to determine whether a claim should be covered and the documents that provide

the basis for the denial of coverage."  However, a close reading of these requests

for production shows how much broader and burdensome they are than a

request for claims manuals and documents providing the basis for denial of

coverage.  For example, request 17 seeks "All guidelines, policies, rules,

instructions, operating procedures, manuals (including claims, underwriting or

other manuals), handbooks, instructional or other materials, created, prepared

by, used by, or intended to be used by or maintained by the defendant or its

employees for guidance, reference or training by persons responsible for

handling policyholders claims, on your behalf for the years 1996 to the present."

The first problem with this request is that it is overly broad and extremely

---

[2] Attached hereto is a copy of  Best's Rating Report, printed May 14, 2004, which shows
Canal's excellent financial rating.

burdensome, especially since, as written, the request seeks every imaginable

written guideline, policy, rule, instruction, procedure, manual, handbook,

instructional or other materials for handling policyholder claims, even policyholder

claims that are distinctly different than the instant one.  In this case, it has been

Canal's position from the outset that it properly canceled the policy issued to

Salgood and Haniewski for reasons well known to the plaintiff. [3]  This case

involves a very narrow issue of cancellation requirements of a policy to which is

attached an MCS-90 endorsement, and if the court does allow further discovery

with respect to Canal's coverage position, it should be limited Canal's policies

and rules, if any, specifically related to policies containing an MCS-90

endorsement.

Request for production 16 seeks "[a]ll documents concerning and/or

explaining any term, condition or exclusion in the policy on which you rely, or

intend to rely, in connection with the plaintiff's complaint in this matter."  It is

difficult to discern what the plaintiff is seeking here.  This request conceivably

could require the production of every document in the undersigned's file, all

pleadings filed to date, all pleadings filed in, all documents produced in, trial

---

[3] Canal's position on denial of coverage was asserted shortly after it received notice of the claim and was based upon its belief that the policy was cancelled.  This position was communicated to plaintiff's counsel from the outset.  Canal brought a declaratory judgment action in the state court while the wrongful death action was pending seeking a declaration as to the duty to defend and the duty to indemnify.  Counsel for the plaintiff in the instant case was actively involved in that state court coverage litigation.  Discovery was conducted

10

transcripts and trial exhibits in the prior state court declaratory judgment action. The plaintiff simply fails to state with any understandable particularity exactly what is being requested. The plaintiff's memorandum in support of motion to compel claims that this request and the others grouped with it, seek claims manuals Canal uses to determine whether a claim should be covered and the documents that provide the basis for the denial of coverage; however, this claim does nothing to enlighten counsel and court as to exactly what is being requested. As stated above and in footnote 3, plaintiff has already been provided with detailed information regarding why the claim was denied, i.e. for the reason that the policy was canceled.

Interrogatory 15 seeks "[a]ll documents concerning any insurance claim requesting defense, indemnity or insurance coverage for the Jung Xian He claims and the consideration, assessments and evaluations of such requests by the defendant, Canal Insurance Company and/or their respective representatives." This request is vague and overly broad, and it seeks documents already produced to the plaintiff in the prior state court declaratory judgment action and in the instant action, with the exception of the documents the court is presently inspecting *in camera*. It also is so broad as to seek the undersigned's entire file. The request is also not limited to the time period from

---

and a full trial on the merits was held. The plaintiff has had every opportunity to know why Canal denied coverage in the underlying claim and upon what basis.

the time the wrongful death claim was first asserted and when judgment entered in the wrongful death action, which would be the only relevant time period for the plaintiff's bad faith claim inasmuch as the plaintiff's complaint seeks damages for the allegedly wrongful refusal to settle the underlying wrongful death case within the policy limits.  Canal has already produced portions of the claims file in the underlying case and the court is currently conducting an *in camera* review of the rest of the claims file, which should be sufficient response to request 15.

Request for production 18 requests all documents concerning the reinsurance risk represented by the Policy and/or communications between you and any reinsurer which reference defense, indemnity, insurance coverage or possible financial exposure for claims made under the Policy in connection with the Jing Xian He claims.  As previously stated herein, whether Canal entered a reinsurance contract or agreement with another carrier is irrelevant to the instant case and should not be discoverable.  This request is also overly broad and burdensome in that it seeks documents generated after the judgment was rendered in the underlying wrongful death case, whereas the plaintiff's claims are related to Canal's alleged bad faith in refusing to settle within the policy limits before judgment was rendered.  Furthermore, it goes way beyond discovery rules that permit the simple disclosure of insurance agreements as further explained above.

Request 19 suffers from the same deficiencies as 18, and its reach is even broader, seeking "all documents concerning insurance coverage, including defense or indemnity, for the Jung Xian He claims." For all the reasons set forth above, Canal's objection to this request should be sustained. Canal has already provided the plaintiff with such permissibly discoverable documents, and further requests for these same documents simply constitutes harassment and should not be allowed.

CONCLUSION

For all of the reasons set forth above, it is respectfully requested that the plaintiff's motion to compel (#106) and the plaintiff's motion for extension of discovery deadlines (#109) be denied.

THE DEFENDANT

CANAL INSURANCE COMPANY


BY_____
KAREN L. KARPIE, Esq.
MURPHY and KARPIE, LLC
350 Fairfield Avenue, Suite 408
Bridgeport, CT 06604
Federal Bar #CT 04269
Tel. 203-333-0177, Fax 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
E-mail:  klkarpie@sbcglobal.net

13

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been mailed, U.S. Mail,

postage prepaid on February 9, 2004 to

Joel T. Faxon, Esq.
Stratton Faxon
59 Elm St.
New Haven CT 06510

John W. Dietz, Esq.
Halloran & Sage, LLP
315 Post Road West
Westport, CT 06880


_____
KAREN L. KARPIE

14