UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHAEL JON BARBARULA, Administrator of the Estate of Jing Xian He, | CIVIL ACTION NO. 3:02 CV 1142 (EBB) |
| vs. | |
| CANAL INSURANCE COMPANY | JULY 7, 2006 |

### FURTHER REPLY MEMORANDUM IN SUPPORT OF MOTION TO ADD OFFER OF JUDGEMENT INTEREST AND OTHER INTEREST OWED ON THE POLICY TO THE PARTIAL JUDGMENT

Since some time has passed since the plaintiff submitted any briefing on the issue of interest, the plaintiff files this Memorandum in further support of its position that interest is appropriately added to the partial judgment entered by the court in it Ruling on the plaintiff's Motion for Summary Judgment, and provides an updated calculation of the interest to be awarded based on the court's Ruling.

Canal contends that interest should not be awarded because the MCS-90 is a "stand-alone" endorsement. This position is contrary to the meaning of the term "endorsement"; see Schultz v. Hartford Fire Ins. Co., 213 Conn. 696, 703 (1990) (discussing the effect of an endorsement on a policy of insurance);[1] and the leading treatise on the effect of the MCS-90 Endorsement published by an

---

[1] Similarly, the Appellate Court, in Mount Vernon Fire Ins. Co. v. Morris, 90 Conn App. 525, 541-42, cert granted, 276 Conn. 907 (2005) has ruled:

> This is because it is in the very nature of an endorsement that it alters and takes precedence over the provisions of the policy to which it pertains. See Schultz, 213 Conn at 703-705 "If, any irreconcilable conflict exists between provisions of the policy and provisions of an endorsement, then the latter must control " (Internal quotation marks omitted ) Id. at 705, quoting 13A J Appleman, Insurance Law and Practice § 7537; see also 43 Am. Jur 2d 353, Insurance § 304 (2003)

1

insurance industry group, the CPCU Society, Gregory G. Deimling, et al., <u>The MCS-90 Book</u> at 54 (International Risk Management Group, 2004) (excerpts attached as Exhibit A), which states:

> Countless lawsuits and appeals have been filed with the courts, debating the definition of insured. The actual Form MCS-90 states repeatedly "the policy to which this endorsement is attached," ***which should indicate that the endorsement is not stand-alone and should not be viewed independently of the policy to which it is attached.*** Section 387 of Volume 49 of the Code of Federal Regulations clearly defines the endorsement as "an amendment to an insurance policy" and defines the insured and principal as being "the motor carrier named in the policy of insurance, surety bond, endorsement, or notice of cancellation, and also the fiduciary of such motor carrier

Canal has obstinately opposed this position because it fits its arguments in this case despite the clear endorsement of the argument that the MCS-90 is emphatically not a "stand-alone" document by the insurance industry itself in its publications.

Further, despite this court's ruling that the policy was not cancelled under federal law due to the lack of notice to the ICC or its successor agency,[2] which is also the position taken in the <u>MCS-90 Book</u> at 64-65 (describing strict cancellation requirements) (Exhibit A), Canal continues to argue that the policy was properly cancelled. Subsequent to this court's Ruling, the Federal Court in Texas, in entering an award for the plaintiff in an MCS-90 suit, subscribed to the

---

[2] Nor was the policy cancelled at the time of the crash under Canal's own procedures because Federal law requires 35 days notice to the insured. Here Canal issued the notice of cancellation on August 8, 1996. <u>See</u> Exhibit 3B. Thirty-five full days from that point would require cancellation effective September 13, 1996 at 12:01 a.m. Canal, however, prematurely cancelled the policy by stating the date of cancellation as September 12, 1996 at 12:01 a.m. The deadly crash in the case occurred on September 12 at about 6:30 p.m. -- everal hours before the expiration of the 35 day cancellation period

2

same rationale adopted by this court in ruling that the cancellation provisions of the MCS-90 endorsement must be strictly followed   See Republic Western Ins. Co. v. Rockmore, No  3.02cv1569, 2005 U S Dist. LEXIS 327, at *32-36 (N.D Tex  Jan. 10, 2005)

Moreover, the ruling of this court was foreshadowed by Judge Levin's decision in Canal v. Haniewski, Superior Court, judicial district of New Haven, Doc  No  417942, at 6 (July 26, 2000, Levin, J ) (Exhibit 9), where the court wrote "[t]he plaintiff [Canal] was required to give notice to the Federal Highway Administration prior to cancelling the insurance policy  It did not. As a result, the insurance policy was not effectively canceled  For this reason the plaintiff's motion for summary judgment is denied as a matter of law "  Therefore, before the trial of the underlying case that imposed crushing liability on Canal's insured, Canal itself had clearly been told by the courts that the policy was not cancelled.

Despite these clear indications that the policy was not properly cancelled, Canal and its employees, including its Vice President for claims, George Lindh, repeatedly ignored the law and elected, instead, to disparage the judges that heard Canal's cases – showing willful blindness to their rulings.  In fact, Canal's file contains memoranda and emails from Lindh to corporate headquarters describing Judge Blue (the respected jurist presiding over the state court declaratory judgment action) as: "biased", Exhibit 16, at 8; and "grasping at any theory that would help the plaintiffs recover on an excess judgment"; Exhibit 24 at 2; and "bending over backward to find a way to preserve a direct action against Canal in the future if the Plaintiffs obtain an excess judgment." Id.  Canal Vice

3

President Lindh also stated that "[i]n my opinion, the Judge blatantly tried to assist Mr. Barbarula's attorney in preserving bad faith claims." Exhibit 25, at 2. Last, but certainly not least, long time employee Carl Dunn, a senior advisor at Canal, showed his disdain for Judge Blue by describing him as: "**an incompetent, narrow minded, plaintiff loving, plaintiff arty supported, biased judicial incompetent.**" Exhibit 27, at 1 (bottom 3 lines of page) (emphasis added) Canal's ignorance of the law and disdain for the Connecticut judiciary could not be clearer

Based on the foregoing, the court should award mandatory prejudgment interest and exercise its discretion to enter a partial judgment based on its Ruling on the Plaintiff's Motion for Summary Judgment, including an interest award under the supplemental payments provision of the policy, Exhibit 2A, as follows:

| | |
|---|---|
| Limits of Insurance: | $1,000,000.00 |
| Offer of Judgment Interest Covered By Policy. | $2,100,000.00 |
| Post-Judgment Interest Covered By Policy at 8%: as of July 13, 2006 (per diem $1267 00) | $1,910,636.00 |
| Offer of Judgment Interest in This Case as of July 13, 2006 (per diem $1647 33) | $2,442,993.80 |
| Total Partial Judgment: as of July 13, 2006 | $7,453,629.80 |

Based on the foregoing, the motion to add offer of judgment interest and other interest should be granted as set forth in the plaintiff's motion and this supplement

4

THE PLAINTIFF,

By: _____
Joel T. Faxon, Esq.
STRATTON FAXON
59 Elm Street
New Haven, CT 06510
Telephone (203) 624-9500
E-Mail jfaxon@strattonfaxon.com
Federal Bar # ct16255

## CERTIFICATION

This is to certify that a copy of the foregoing has been served via ECF, on this day to:

**Karen L. Karpie, Esq.**
Murphy and Karpie
350 Fairfield Avenue
Suite 408
Bridgeport, CT 06604

_____
Joel T. Faxon, Esq