No. 417942
CANAL INSURANCE COMPANY                                    SUPERIOR COURT

VS.                                    JUDGE : : : : : OF NEW HAVEN    JUDICIAL DISTRICT
                                                                      OF NEW HAVEN

                                       JUL 2 ; 2K0
BARBARA HANIEWSKI, ET AL               CHIEF CLERK'S OFFICE    JULY 26, 2000

PLAINTIFF'S
EXHIBIT
9

## MEMORANDUM OF DECISION

The plaintiff, Canal Insurance Company, issued an insurance policy to the defendant,

Barbara Haniewski, doing business as Salguad Warehouse & Transport, on February 27, 1996.

The defendant, Eagle Leasing, was added to the policy as an additional insured on or about June

19, 1996. The term of said policy covered Haniewski's tractor trailer operations for the period of

one year ending February 27, 1997. An Endorsement for Motor Carrier Policies of Insurance for

Public Liability Under Section 29 and 30 of the Motor Carrier Act of 1980, commonly known as

the MCS 90 endorsement, dated March 26, 1996, was attached to the policy on or about March

26, 1996. In the event the policy is canceled, the endorsement requires the plaintiff to send

advance notice of the cancellation to the Interstate Commerce Commission (commission) thirty

days in advance of the date of cancellation. The commission, however, was terminated effective

January 1, 1996. Haniewski failed to make payments of premium on the policy as required. As a

result, on August 8, 1996, the plaintiff sent a notice of cancellation to Haniewski. Notice of

cancellation was not sent to the defunct commission. Haniewski still failed to pay the necessary

premium. As a result, coverage was canceled, effective 12:01 a.m. on September 12, 1996. At

12:31 p.m., on September 12, 1996, the defendant, Carlos Reummele, a driver for Haniewski, was

involved in a traffic accident which resulted in the death of Jing X. He, the decedent of the

defendant Michael Jon Barbarula. Haniewski made a claim for coverage to the plaintiff after

Barbarula filed a wrongful death action against Haniewski and Reummele. The plaintiff refused

coverage alleging that the policy was canceled and no longer in effect at the time of the traffic

accident.

The plaintiff filed this action for a declaratory judgment that the policy was no longer in

effect on the date of the accident, that the defendants are not entitled to coverage for liability

arising out of the accident, that the defendants are not entitled to a legal defense provided by the

plaintiff, and that the plaintiff is entitled to reimbursement of costs and legal fees spent in

connection with this matter. The plaintiff has now filed a motion for summary judgment that was

heard by the court on April 17, 2000. Barbarula and Eagle Leasing filed objections to the motion

for summary judgment along with memoranda of law on April 20, 2000, and April 25, 2000,

respectively.[1] The plaintiff filed a reply to Barbarula's objection on April 26, 2000.

A motion for summary judgment should be granted "if the pleadings, affidavits and any

other proof submitted show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law." Practice Book § 17-49. The parties

concede that there are no disputed questions of material fact. They agree that the plaintiff sent a

notice of cancellation to Haniewski and that no notice was sent to the commission or to its

successor. The plaintiff claims that the subject policy was properly canceled and that no notice

---

[1] Although these objections were untimely filed; see Practice Book § 17-45; § 17-45
"does not contain any provision . . . that the consequence of noncompliance with the rule is that
the delinquent party 'shall be deemed by the court to have consented to the granting of the
motion.'" **Pepe v. New Britain**, 203 Conn. 281, 287, 524 A.2d 629 (1987). Section 17-45 is not
"a jurisdictional barrier that the parties cannot waive or the court may not excuse under any
circumstances." **Pepe v. New Britain**, supra, 203 Conn. 288.

2

under the endorsement was necessary because the commission had been terminated more than nine months before the policy was canceled. The defendants argue that the ICC Termination Act transferred the responsibilities of the commission to another federal agency. Thus, determination of this motion for summary judgment turns only on the court's interpretation of the applicable law.

The commission was given regulatory authority over the motor carrier industry by the Motor Carrier Act of 1935. See Motor Carrier Replacement Information/Registration System, 61 Fed. Reg. 43816 (1996). The commission prescribed financial responsibility requirements for the motor carrier industry including endorsements on insurance policies obligating the insurance company to notify the commission in the case of cancellation. Id.; see also Surety bond, certification of insurance, or other securities, 49 C.F.R. 387.301 (1999) (formerly 49 C.F.R. 1043). The MCS 90 endorsement satisfied the commission's requirements. **Empire Fire and Marine Ins. Co. v. Liberty Mutual Ins. Co.**, 699 A.2d 482 (Md. App. 1997); see also Forms 49 C.F.R. 387.15 (1999).

The commission was terminated, effective January 1, 1996, by the ICC Termination Act of 1995 (Act). See ICC Termination Act of 1995, Pub. L. No. 104-88, 109 Stat. 804. New regulations were not promulgated until October 1998. Minimum Levels of Financial Responsibility For Motor Carriers, 49 C.F.R. 387 (1999). "Notwithstanding this hole in the regulatory fabric, pursuant to a savings provision contained in Section 204 of the Termination Act, the rules and regulations promulgated by the I.C.C. continue in effect until revised or revoked by parties designated in the Act's savings provision. As such, despite the demise of the I.C.C., the relevant law remains essentially the same." **Empire Fire and Marine Ins. Co. v.**

3

**Liberty Mutual Ins. Co.**, supra, 699 A.2d 491 (applying commission regulations to litigation that accrued prior to enactment of the ICC Termination Act of 1995, but which was not filed until after the Act went into effect).

Section 103 of the Act transferred to the Secretary of Transportation the responsibility of establishing minimum financial responsibility requirements. ICC Termination Act of 1995, supra, 109 Stat. 880. Section 104 of the Act, entitled "Saving Provisions," provided that "[a]ll orders, determinations, rules, regulations . . . (1) that have been issued, made, granted or allowed to become effective by the Interstate Commerce Commission . . . in the performance of any function that is *transferred by this Act* or the amendments made by this Act; and (2) that are in effect on the effective date of such transfer, *shall continue in effect according to their terms* until modified, terminated, superseded, set aside, or revoked in accordance with law by the Board . . . ." (Emphasis added.) ICC Termination Act of 1995, supra, 109 Stat. 941; see also Continuation of the Effectiveness of Interstate Commerce Commission, 61 Fed. Reg. 14372 (1996); 61 Fed. Reg. 43816, supra ("thereby preserving the status quo for the interim"). "Congress retained the requirement that notices of cancellations of insurance must be filed in advance with the FHWA [Federal Highway Administration]." 61 Fed. Reg. 43816, supra.

As the endorsement itself clearly states, "Cancellation of this endorsement *may be effected* by the company . . . if the insured is subject to the ICC's jurisdiction, by providing thirty (30) days notice to the ICC . . . ." (Emphasis added.) (Plaintiff's Motion for Summary Judgment, Exhibit 1, MCS 90 endorsement). It is undisputed that this notice was never given to the commission or to the Federal Highway Administration.

The plaintiff claims that, because the endorsement specifies notice only to the commission

4

and not to any successor, when the commission was terminated so was the plaintiff's obligation to give notice under the endorsement. The plaintiff further justifies its failure to give advance notice by claiming impossibility of notifying the commission after it was terminated.[2]

Giving notice under the endorsement was not impossible. As stated supra, public notice of the transfer of responsibility from the commission to the Federal Highway Administration was published in the Federal Register in March 1996, 61 Fed. Reg. 14372, supra, several months before cancellation of the subject policy. That public notice specified that the rules, regulations and legal documents of the commission were to remain in effect until modified or replaced by the Secretary. The public notice which appeared in the Federal Register in August 1996, 61 Fed. Reg. 43816, supra, specifically stated that the notice requirements were maintained and that advance notice to the Federal Highway Administration was required.

Although the plaintiff asks the court to rely on the language of the endorsement which specifies notice to the commission without mention of a successor[3], that endorsement was created and attached to the policy pursuant to federal regulation. The regulation provides protection to the public and obligates insurance companies independent of the wording of the endorsement.

---

[2] In support of this claim the plaintiff cites **Thompson v. Roach**, 52 Conn. App. 819, 728 A.2d 524 (1999), and **Vaillancourt v. New Britain Machine**, 224 Conn. 382, 618 A.2d 1340 (1993). Neither case concerns the regulation at issue in this case. In **Thompson**, the court held that the party required to give notice had fulfilled its obligation, although it had not *strictly complied* with the requirement, because it had done all that it could to supply the necessary information. **Thompson v. Roach**, supra, 52 Conn. App. 823. **Vaillancourt** merely holds that the court will not interpret a notice provision in a way that would render compliance impossible. **Vaillancourt v. New Britain Machine**, supra, 224 Conn. 393 n.10 ("construction of notice provision . . . would not require a type of notice that is impossible to give").

[3] The endorsement purporting to require advance notice to the commission was added to the policy in March, three months after the termination of the commission.

5

Subsequent changes in the regulation obligated the plaintiff to give notice to the Federal Highway Administration. Compliance with the wording of the endorsement cannot discharge the obligation that exists under the federal regulation, which was created to avoid the very situation presented here. "Strict compliance by an insurer with the *statutory* mandates *and* policy provisions as to notice is essential to effect a cancellation through such notice. . . . Any ambiguities in the notice will be construed in favor of the insured." (Emphasis added; internal quotation marks omitted.) **Stratton v. Abington Mutual Fire Ins. Co.,** 9 Conn. App. 557, 561, 520 A.2d 617, cert. denied, 203 Conn. 807, 525 A.2d 522 (1987). Allowing the plaintiff to circumvent the federal requirements based on a narrow reading of the language in the endorsement would defeat the purpose of the requirement. "The goal [of the regulation/licensing and financial responsibility information systems] is to ensure sufficient financial responsibility coverage to compensate the public for liability arising from personal injury, property damage, cargo loss or damage, and property broker defaults." 61 Fed. Reg. 43816, supra.

The plaintiff was required to give notice to the Federal Highway Administration prior to canceling the insurance policy. It did not. As a result, the insurance policy was not effectively canceled. For this reason the plaintiff's motion for summary judgment is denied as a matter of law.

BY THE COURT

Bruce L. Levin
*Judge of the Superior Court*

6