# *MEMORANDUM*

TO: Carl Dunn
    Mac Timmons

FROM: George Lindh

DATE: September 4, 2001

RE: L287-410X



PLAINTIFF'S EXHIBIT 16

---

The following will please serve as a report on the trial which occurred regarding the captioned file in New Haven, Connecticut over the period of August 27 – 30, 2001. Specifically, a bench trial was conducted on the pending declaratory judgment action filed by Canal Insurance Company. Canal Insurance Company was seeking a declaration from the court that it properly cancelled a policy issued to Barbara Haniewski dba Salguad Warehouse & Transportation Company. If so, there would be no coverage for an underlying wrongful death action. Neither the named insured nor the insured drive appeared at the trial and were defaulted. The declaratory judgment action was opposed by the executor of the estate in the underlying wrongful death action and the leasing company, Eagle Leasing. The opposition argued that the policy in question, including the MCS-90 endorsement, were not effectively canceled due to the fact that the insured was "subject to ICC jurisdiction", and therefore a BMC-35 needed to be filed with the ICC to effectively cancel the policy. [handwritten annotations]

Initially the parties met in a pre-trial conference with Judge Silbert. The purpose of the meeting was to see if any early settlement negotiations could resolve the case. Counsel for the underlying plaintiff estate indicated a demand of $950,000. I made a counter offer of $100,000. Settlement negotiations broke down at that point. The plaintiff's attorney threatened that if this case did not settle he would be entitled to interest on the judgment of approximately 50% as he had filed an Offer of Judgment. Moreover, he anticipated a judgment in excess of $2,000,000. If he obtained such a judgment, he planned on bringing a bad faith action. He estimated the total exposure to Canal Insurance Company to be in the range of $3,000,000.

When settlement negotiations broke down, Judge Silbert assigned the case to Judge Blue for a bench trial. It was hoped that the trial would occur in front of Judge Silbert who was known to have a defense slant. Unfortunately, this did not occur and we ended up with a plaintiff's oriented judge. Even before the trial began, our counsel, Jack Mills, Esquire, stated that Judge Blue would be a problem. The statement was quite prophetic.

At the beginning of the bench trial on August 28, 2001, counsel marked their trial exhibits. Our counsel did not have his exhibits ready and was forced to scramble to organize them. In doing so he failed to include the policy jacket with the policy marked as an exhibit for the purpose of trial. This was important because the policy cancellation language was omitted. The problem with the exhibits was a harbinger of other problems

to occur with our counsel.

After the exhibits were marked, the court took up pending Motions in Limine. The first motion addressed was our motion seeking to preclude any evidence regarding ICC jurisdiction. Attorney Mills pointed out that his petition indicated that the policy was properly cancelled. The opposition then raised the question whether the cancellation was ineffective due to the fact that no BMC-35 had been filed. Attorney Mills argued that such a claim constituted a special defense which was not pled by the opposition in their answer. Judge Blue denied the motion on the grounds that Judge Levin's order on the prior motions for summary judgment was the law of the case. Judge Levin's order acknowledged the opposition's special defense. He added that although Judge Levin's decision was the law of the case, he was taking an independent view of the case and was not certain whether he would adopt Judge Levin's logic. He declined to determine which party had the burden of showing whether the insured trucker fell within the ICC jurisdiction.

Judge Blue then addressed the defendant's Motion in Limine. The defendants argued that Canal Insurance Company had the burden of proof to show the insured trucker was not within the jurisdiction of the ICC. Judge Blue denied the motion citing Judge Levin's prior order again which addressed the jurisdictional issue as part of this case. He reiterated that while Judge Levin's decision was the law of the case, he was not adopting Judge Levin's order and was taking an independent view of this case.

At this juncture I was called as the first witness for Canal Insurance Company. I testified as to company procedures regarding cancellations of insurance policies, company procedures as to ICC filings and company procedures as to cancellation of policies with MCS-90 endorsements which had no filings. I also addressed the specific cancellation of the policy and MCS-90 endorsement for the insured in question. My testimony was relatively unchallenged, as I was not disclosed as an expert witness. Therefore opposing counsel was not able to elicit any expert opinions from me. I emphasized in my testimony that the policy in question was effectively cancelled and the only coverage in dispute was that coverage existing under the MCS-90 endorsement. I then emphasized that the endorsement was also effectively cancelled by the 35-day notice to the insured since there were no filings. I further emphasized that no BMC-35 was required as there were no filings. I pointed out that Canal Insurance Company had done untold numbers of cancellations with and without filings, and the issue of sending a BMC-35 to the ICC when there were no filings had never occurred. I stressed that Canal Insurance Company had been approached by the Federal Motor Carrier Safety Administration in recent years to develop an electronic filing program. It would have been strange for the Federal Motor Carrier Safety Administration to solicit Canal's help when they thought Canal was doing filings and cancellations incorrectly.

There was one problem in my testimony. Opposing counsel introduced Mac's prior affidavit which was inconsistent with my testimony as to why a BMC-35 was not required. However opposing counsel was not allowed to ask me any expert opinions regarding the document. Therefore there was little discussion regarding the document other than introducing it into evidence.

L287-401X
September 4, 2001
Page 3 of 8

The next witness called by Canal Insurance Company was Paul Blanchette. Mr. Blanchette had been previously disclosed in expert testimony. He had worked as a special agent in Connecticut enforcing ICC regulations.

The main thrust of Mr. Blanchette's testimony was to establish some question as to whether the insured trucker was exempt or not exempt under ICC. In his opinion there was a possibility that the insured trucker was exempt. He surmised that if the trucker were engaged in trucking under ICC jurisdiction there would have been a more thorough investigation by the Connecticut Trucking Department after the accident. He also stressed there was no ICC number on the vehicle which would indicate that it was hauling exempt freight.

Mr. Blanchette had some problems on cross-examination. He previously testified that lumber was non-exempt cargo. This was contradicted by the very manual he used when he did enforcement to determine if a commodity was exempt. Judge Blue was very interested in his testimony. He also admitted that there was evidence in the police report that the insured trucker was engaged in interstate commerce. Again, this peaked Judge Blue's interest. He admitted he never reviewed the full police report to determine whether the insured trucker was exempt or not. Mr. Blanchette also admitted that a trucker could fall within the jurisdiction of ICC and not be registered with the ICC. This testimony was damaging sense the key wording in the MCS-90 endorsement talked about the need for a BMC-35 when the activities of the trucker were "subject to the jurisdiction of the ICC."

Judge Blue questioned Mr. Blanchette directly at the end of his testimony. He inquired whether the Connecticut Motor Vehicle Department would have automatically conducted an investigation considering the nature of the accident. Mr. Blanchette's answer was, "they may or may have not." In my opinion the judge's question revealed his slant in this case. He was obviously seeking an answer which would dilute Mr. Blanchette's testimony that an investigation would have occurred if the insured trucker were operating illegally under ICC regulation. The question also signaled that Judge Blue was concentrating on the jurisdictional question in this case rather than Canal's processing of the cancellation.

The next witness called by Canal Insurance Company was Ed Arnn. Mr. Arnn had been disclosed as an expert witness. He was a former enforcement attorney for the Interstate Commerce Commission. He was a good witness on Canal's behalf. He was able to outline the history of the ICC and DOT.

Mr. Arnn confirmed that without a motor carrier number there was no plausible way for Canal Insurance Company to file the BMC-35. He also opined that Canal Insurance Company had no duty to determine if ICC filings were required beyond the information on the application. He emphasized that Canal Insurance Company was not a regulator and the ICC had no regulatory authority over an insurance company. He found no fault in Canal Insurance Company's application with regard to inquiries about filings and the way Canal Insurance Company cancelled the policy in question. He emphasized that if Canal

Insurance Company had sent a BMC-35 to the ICC in this case it simply would have been rejected.

Mr. Arnn also provided helpful testimony with regard to the MCS-90. He stated that it was the obligation of the trucker to obtain authority. In order to obtain that authority the trucker must obtain an MCS-90 and the proper filings. He added that simply because an MCS-90 is on the policy doesn't' mean that the trucker falls within the jurisdiction of the ICC. The DOT can require an MCS-90 without ICC jurisdiction. This could be due to a DOT compliance review.

Mr. Arnn testified that he had never seen an instance when an insurance company was held liable for failing to file a BMC-35 when there were no filings. He reiterated that it would have been impossible to file such a notice of cancellation with the ICC.

There were a couple of problems with Mr. Arnn's testimony. He agreed that based upon the information in the police report it was likely that the insured trucker was operating within the jurisdiction of the ICC. In other words he was hauling non-exempt goods. Moreover he testified that Canal Insurance Company could have notified the ICC of a cancellation on a form other than a BCM-35. [handwritten: ? If so would is also have been rejected. ?]

The first day of trial concluded when Mr. Arnn's testimony was completed.

The second day of trial (August 29, 2001) began with our attorney notifying the court that he had subpoenaed a witness from the Department of Transportation in Connecticut and that witness had not responded. Our counsel had subpoenaed the witness in part in order to look at the DOT file to determine whether the insured was hauling exempt or non-exempt commodities. He also wanted to look at the file to see if it contained a DOT application. If so, that would have been an explanation before the producer's request to add the MCS-90 approximately one month after the effective date of the policy.

At this point Judge Blue pointed out that under Connecticut law a state subpoena could not be used to compel a testimony of a Federal employee. In essence our counsel's subpoena was ineffective. Judge Blue felt there were three options to address the issue. The first was to grant the continuance until a proper subpoena could be obtained from the Federal courts to compel a testimony of the Federal employee. The second was to grant a mistrial since he would not be available after the week of August 27, 2001 to hear this case. Apparently he was scheduled to transfer from the civil to the criminal court. The third was to not grant additional time and force Canal Insurance Company to rest because it had no further witnesses. Judge Blue went with the third option even though at the beginning of the trial he indicated to opposition counsel that he was willing to continue the matter to the following week when one of his witnesses had not responded to a subpoena and a capias needed to be issued.

Attorney Mills became quite upset at Judge Blue's decision. He moved for a mistrial citing that the Judge was biased (which he was). After contemplating the motion Judge Blue felt it was groundless and denied the motion. He ordered Attorney Mills to call his next witness or rest. In the meantime Pat Martin of Swett & Crawford had arrived and was able to testify.

L287-401X
September 4, 2001
Page 5 of 8

Pat Martin testified that she is a Vice President of Swett & Crawford. She is the manager of the Transportation Department. She had reviewed the application submitted by the insured trucker.

Section 13 of the application dealt with required filings. It was blank. She indicated that her office had spoken to the producer and the producer had indicated that there was no need for filings. This is why the section was left blank. She did not believe that Swett & Crawford or Canal needed to investigate the need for ICC filings beyond the application.

Ms. Martin confirmed that the original policy was not issued with an MCS endorsement. It was placed on the policy at the request of the producer when a DOT number was issued. At this point court recessed for lunch. *Does the judge understand the differences between DOT # & MC#?*

At the beginning of the afternoon session Attorney Mills moved to continue the trial to allow him to issue the appropriate subpoena to the DOT official. He reiterated the reasons why he needed the testimony and file of the DOT official. Judge Blue denied the motion on the grounds that the file should have been subpoenaed earlier, the contents of the file were speculative and a continuance would result in further cost to the opposition.

In an effort to resolve the issue Judge Blue suggested to opposition counsel that they stipulate that the trucker may have been engaged in past conduct which was not subject to the ICC jurisdiction. Opposing counsel agreed that this was not satisfactory to Attorney Mills. Attorney Mills suggested that if opposing counsel was willing to agree to a continuance, Canal Insurance Company might be willing to assume some costs. Judge Blue suggested that the parties talk to see if an arrangement could be reached. Opposing counsel callously rejected the suggestion out of hand. At that point I withdrew our offer of $100,000. When Judge Blue returned to the bench Canal Insurance Company rested its case.

Opposing counsel started its case by filing a Motion for Dismissal for Failure to File a prima facia case. The motion was denied as there was evidence that the trucker was engaged in some exempt and non-exempt trucking. The ruling again emphasized that Judge Blue was concentrating on the jurisdictional issue as opposed to the cancellation issue.

Opposing counsel then called its first witness. The first witness was Trooper Victor Lenda of the Connecticut State Police. The purpose of Trooper Lenda's testimony was to identify and introduce the full police report for the underlying accident. Opposing counsel wanted to introduce the full report because it contained bills of lading and logs which indicated that at the time of the accident the trucker was engaged in illegal hauling under ICC regulation.

Opposing counsel's efforts were thwarted by the fact that Trooper Lenda did not know if the police report possessed by opposing counsel was the full report. As a result Judge Blue would not allow the police report to be introduced as a full exhibit. However, he bent over backwards at this point to help the plaintiff's attorney. He allowed Trooper Lenda to go back to his headquarters and to obtain a full copy of the report and to return

L287-401X
September 4, 2001
Page 6 of 8

with the file on Friday, August 31, 2001. In essence he was granting opposing counsel a continuance so that all of his necessary testimony could get in when he had denied a similar courtesy to Attorney Mills.

Opposing counsel then called his only expert witness, Robert Tynes. Mr. Tynes is a Safety and Economic consultant. He is a former special agent for the ICC and the DOT. In fact, he was a member of the Transition Team when the ICC functions were transferred to the DOT. Quite frankly, he was a strong expert. His testimony was at least as compelling as the testimony of Mr. Arnn.

Mr. Tynes opined that based upon the information in the application as well as materials in the police report the insured was engaged in non-exempt hauling at the time of the accident, and therefore subject to ICC jurisdiction. He emphasized that the application indicated that the trucker was operating with an unlimited radius, was hauling non-exempt commodities (steel and lumber) and had a contract with an intermodel association. He felt that the information in the application was significant enough to conclude that the trucker was engaged in non-exempt hauling. He could reach this conclusion without reviewing the materials in the police report.

Mr. Tynes further opined that since the trucker was operating within the jurisdiction of the ICC and the MCS-90 endorsement was on the policy, it was necessary for Canal to send a BMC-35 to the ICC or its successor to cancel the policy. He indicated that if a BMC-35 had been sent in it would have been addressed by the Office of Motor Carriers even though there was no MC number. It would have been considered a complaint and an investigation would have ensued.

On cross-examination Attorney Mills questioned the expert extensively on the jurisdictional issue. Quite frankly this was a waste of time since it was clear from the evidence that the insured was hauling non-exempt commodities at the time of the accident. Moreover, the jurisdictional was not part of our case, and in my opinion, emphasized the wrong issue for the court. The second day of trial concluded without Mr. Tynes cross-examination being finished.

The third day of trial (August 30, 3001) began with the continued cross-examination of opposing counsel's experts. In the interim I tried to convince Attorney Mills to de-emphasize the jurisdictional issue and to emphasize the cancellation issue. His cross-examination improved at this point but was still somewhat disorganized.

Attorney Mills was able to get the expert to admit that the ICC had no authority to regulate insurance companies. At this juncture it was discovered that the policy which had been entered as an exhibit did not contain the policy jacket and the cancellation provisions. I was forced to leave the courtroom in an effort to obtain copies of those forms. I was not present during the remainder of Attorney Mill's cross-examination of Mr. Tynes and cannot comment on it. I was told by Attorney Mills that he concentrated on the cancellation issue, but I am not aware of the specific testimony.

I did return near the end of the cross-examination. At that point Judge Blue announced that he felt that the ultimate issue in the case was whether the trucker fell within the

L287-401X
September 4, 2001
Page 7 of 8

jurisdiction of the ICC. It was clear to me at that point that the Judge was going to rule in favor of opposing counsel. I then made a phone call to Carl to discuss a settlement offer. We discussed the fact that the only document in play was the MCS-90 endorsement which provided a maxim coverage of $750,000. I explained this issue to Attorney Mills. He was able to bring this issue out through cross-examination with Attorney Tynes and the Judge took note of it.

The testimony at that point ended. The only issue left was the police report which was going to be brought into court by the State Trooper the following day. There was not going to be any testimony on the police report. Attorney Mills would review the report when it was received and indicate to the Judge what portions he objected to. The Judge agreed to rule on those objections at a later date.

At this point the Judge indicated that he was going to request full briefs from both sides and oral arguments. It is expected that the briefing period will be two to three weeks. All arguments will take place some time in October 2001.

Since it appeared that we were going to lose this issue Attorney Mills requested another opportunity to discuss settlement with Judge Silbert. Judge Silbert was unavailable. However, the court referred the issue to Judge Larger for further settlement negotiations.

The further settlement negotiations did not produce a settlement. The official demand was $750,000 and our last offer was $250,000. I refused to make any further offers when Judge Larger advised me that opposing counsel's rock bottom demand was $700,000. I decided to leave at that point and leave this issue to the appellate court. I withdrew my offer when I left.

Overall, I do believe that we will lose this issue with Judge Blue. This will result in an appeal. Judge Blue did indicate that his decision will only address the duty to defend pending a judgment in the underlying case. However, whichever side prevails on the duty to defend will most like also prevail on the indemnification issue. [handwritten: *Cases in Point* *No Duty on MCS 90*]

Attorney Stanton envisions obtaining a judgment in the range of $2,000,000 and then prevailing on the coverage dispute. If so he expects to recover roughly $3,000,000 from Canal Insurance due to his offer of judgment and Canal's alleged bad faith.

A critical issue in this case is the true effect of the MCS-90 endorsement. It is our position that the policy has been effectively cancelled. What may still exist is any coverage under the MCS-90 endorsement.

The MCS-90 endorsement only compels Canal Insurance Company to pay once a judgment had been rendered against the insured. The endorsement is intended to protect the injured party and not the insured. Therefore, an argument can be made that there is no duty to negotiate in good faith until a judgment has been rendered. Absent a duty to negotiate to protect the insured, it is difficult to see how Canal could be held liable for an excess judgment in a bad faith action. Moreover, if only the endorsement is in play, it would appear that the limit of coverage is only $750,000.

[handwritten: *Be Sure Insured & driver are notified on Demands & subrogation rights*]

L287-401X
September 4, 2001
Page 8 of 8

I would like to say that I am confident that Judge Blue will find that only the endorsement is in play and therefore coverage is limited to $750,000. However, after watching his demeanor at trial and listening to his comments, I get the impression he will do whatever he can to maximize the recovery for the plaintiff. I am hopeful the appellate court will be more reasonable, but there are no guarantees. If the appellate continues to rule for the opposition, we may ultimately find that a settlement of $700,000 wasn't such a bad idea. Hopefully this does not occur.

When I left the courthouse, Attorney Stanton had not withdrawn his demand of $700,000. I suspect it will remain on the table and will not be removed for some time.

I plan on calling Attorney Mills on Tuesday, September 4, 2001 to find out the exact nature of the briefing schedule. Once I have spoken to Attorney Mills I will advise further.

GWL/thl