# *MEMORANDUM*

TO: Mac Timmons

FROM: George Lindh

DATE: November 6, 2001

RE: *L 287-410X*
*Canal vs. Haniewski*



PLAINTIFF'S EXHIBIT 25

Mac: please be advised that I attended the further oral arguments in the captioned matter in New Haven, Connecticut on November 5, 2001. The following will please outline the events that occurred at the hearing.

The trial Court asked the parties to submit supplemental memorandum regarding the potential role of the Connecticut Direct Action statute and Canal's duty to indemnify the insureds under the terms of the insurance policy at issue in the declaratory judgment action. In the file you will see copies of our supplemental memorandum and the supplemental memorandum filed by defendant Barbarula.

We argued that the insurance policy was effectively cancelled by the 35-day notice to the insured. As such, there was no duty to defend or duty to indemnify as those duties arise from the policy and not the MCS-90 endorsement. In our opinion the only issue for the Court to decide was whether the MCS-90 endorsement was effectively cancelled. If not, we would be subject to the payment of a judgment up to $750,000.

We also argued that the Connecticut Direct Action statute had no bearing in this case as the insurance policy was effectively cancelled. The Direct Action statute can only be utilized if there was an insured covered by an effective policy. Such a scenario does not exist in this case, and therefore the issue is moot.

In reviewing the memorandum filed by Defendant Barbarula you will note that his counsel basically agrees with our argument with one major exception. Mr. Barbarula's attorney contends there is $1 million in coverage as indicated in the policy.

The bulk of the hearing was dominated by the Judge's questions. The questions were also very telling.

First the Judge tried to duck all the issues entirely by arguing the only thing he could rule on was the Duty to Defend. He did not feel that such a ruling would be helpful because Canal Insurance Company would be forced by the trial Judge to provide a defense at this late point. All counsel argued that it would be a tremendous waste of time and money for the Judge to refuse to rule on any issues at this point. As such, he hinted that he might be willing to rule on the Duty to Defend only.

Our counsel argued that if he ruled on the Duty to Defend, he would have to declare that the policy was effectively cancelled because the duty arises from the policy only. In fact, as stated above, all parties seem to be in agreement on this point. However, the Judge intimated that since the MCS-90 endorsement referenced the policy, he felt he could declare that there was no Duty to Defend but that the policy was still effective with regard to the Duty to Indemnify. In essence he was trying to bootstrap the Duty to Indemnify from the policy into the MCS-90 endorsement. It was a clear effort, in my opinion, to preserve a bad faith action for the underlying plaintiff.

At the end of the hearing the attorney for Mr. Barbarula saw the light and agreed with the Judge that he could rule on the Duty to Defend and not necessarily declare the policy was cancelled. In my opinion, the Judge blatantly tried to assist Mr. Barbarula's attorney in preserving bad faith claims.

After the hearing Jack Mills and I agreed that it would be impossible for the Judge to rule on the Duty to Defend without declaring that the policy was cancelled. However, I'm of the belief that this Judge will try to craft novel law so that he can preserve whatever bad faith claims he can against Canal Insurance Company.

I expect that the Court will issue its opinion within the next two weeks shortly before the trial in the underlying case if it has not been continued. There was some indication that the trial in the underlying case would not be reached. You probably know the status of that case better than I do.

Overall, I believe the Court will be committing error if it does not declare that the policy was cancelled when it rules on the Duty to Defend. We should have a good issue for appeal if he rules the other way. However, I am worried about a precedent in this case. In fact there is a potential for two bad precedents. The first would be that we had an obligation to send a Notice of Cancellation to the ICC when there was no filing. The second would be that the MCS-90 endorsement incorporates the Duty to Indemnify in the policy even when the policy has been effectively cancelled. In light of these potential risks, we may want to give some consideration to resolving this case.

I would like to speak with you in greater detail once you have review the attached.

George.

GWL/thl

cc:   Carl Dunn