Exhibit A

# THE MCS - 90 BOOK

## *Truckers versus Insurers and the Government Makes Three*





## A RESEARCH PROJECT FROM THE CONSULTING, LITIGATION & EXPERT WITNESS (CLEW) SECTION OF THE CPCU SOCIETY

GREGORY G. DEIMLING, CPCU, ARM, AMIM

GEORGE M. GOTTHEIMER JR., PH.D., CPCU, CLU

DONALD S. MALECKI, CPCU

LYNN S. REDMILE

International Risk Management Institute, Inc.
Dallas, Texas

Private carriers must, even in the absence of the Motor Carrier Act, comply with laws requiring them to identify hazardous commodities they haul on their own vehicles Shippers using common or contract carriers are similarly required, by laws other than the Motor Carrier Act, to prepare documents specifying whether the commodities to be shipped qualify as hazardous cargoes.[3]

The purpose of the MCS-90 endorsement is to ensure adequate levels of coverage are provided in the event of a trucking accident involving a member of the public or the environment. The term "accident" is defined in the MCS-90 endorsement as including "continuous or repeated exposure to conditions which result in bodily injury, property damage, or environmental damage which the insured neither expected nor intended." Within the form, the term "public liability" is defined to mean "liability for bodily injury, property damage, and environmental restoration." The MCS-90 endorsement is activated, even if a member of the public is not injured, as long as property or the environment is damaged or harmed

The MCS-90 endorsement is a federal form, considered public information  It is an endorsement to the auto policy and is required by federal law to prove minimum financial responsibility. (It is *not* designed to protect the insured; it is designed to protect the public.) A commercial auto policy typically provides less scope of coverage than when the MCS-90 applies  The main policy may cover scheduled vehicles only  The MCS-90, on the other hand, applies to all motor vehicles used by the motor carrier, whether scheduled or not  The main policy, furthermore, may exclude pollution coverage, while the MCS-90 endorsement encompasses cleanup costs  The MCS-90 endorsement does not provide a duty to defend the insured, and it only covers the specifically named insured

---

[3]April 1996—Requirements of Motor Carrier Act

# Insured versus Named Insured

There is a difference between an insured and a named insured  All named insureds are insureds, but not all insureds are named insureds. The named insured is the party specifically named on the policy; other insureds may be permissive users

The MCS-90 endorsement refers to the term "insured" without defining it  Who an insured might be is defined in the respective commercial auto policies  Chapter 5 discusses the "who is an insured" provision of the business auto, truckers, and motor carrier policies  Having said that, however, it is also important to note that "the MCS-90 Endorsement mandates coverage for permissive users of non-covered vehicles; it is simply irrelevant whether the driver qualifies as an insured under the basic policy."[4]

Countless lawsuits and appeals have been filed with the courts, debating the definition of insured  The actual Form MCS-90 states repeatedly "the policy to which this endorsement is attached," which should indicate that the endorsement is not stand-alone and should not be viewed independently of the policy to which it is attached. Section 387 of Volume 49 of the Code of Federal Regulations clearly defines the endorsement as "an amendment to an insurance policy" and defines the insured and principal as being "the motor carrier named in the policy of insurance, surety bond, endorsement, or notice of cancellation, and also the fiduciary of such motor carrier."[5] A document filed in the *Federal Register* on

---

[4]*Lynch v Yob*, 95 Ohio St 3d 441, 768 NE2d 1158 (Ohio 2002), cited in 2003 Developments Text, Law Offices of Schindel, Farman & Lipsius, LLP, http://www sfl-legal com/2003%20Developments%20Frame htm (accessed June 24, 2004)

[5]49 CFR § 387 5

cident involves a covered auto. The policy is quite clear on this, it said, citing the pertinent provision of the trucker's policy reading that there is "no duty to defend 'suits' for 'bodily injury' or 'property damage' not covered by this Coverage Form."

The named insured then turned to the argument that the MCS-90 endorsement says it is "primary," thereby mandating the insurer to defend the underlying action. The court, however, countered this argument by stating that reference to "primary" in the MCS-90 endorsement pertains to actions between two insurers. In its final argument over the duty to defend, the named insured pointed to that part of the MCS-90 endorsement stating:

> It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency, or bankruptcy of the insured

With reference to the above provision, the named insured argued that the endorsement distinguishes between liability from payment of a final judgment and that therefore "liability" somehow refers to the insurer's contractual duties to the named insured under its policy. The court, however, held that the above provision deals solely with the insurer's duty to pay, even if its insured is unable to respond to the insurer's claim for reimbursement

Based on this court decision, it can be summarized that:

- The MCS-90 endorsement requires the insurer to pay damages at the hands of a negligent trucker, whether the policy covers the auto and/or trailer in question

- When an insurer is required to pay damages that it would not have had the obligation to pay in the absence of the MCS-90 endorsement, the insurer can seek reimbursement from the negligent trucker and the firm under whose authority the trucker is operating

- The MCS-90 endorsement does not require an insurer to defend where there is no obligation to defend under the policy.

## Absolute Liability

The MCS-90 endorsement also creates absolute liability on the part of the insurer. The provision that supports this states, "It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described ..." The liability, however, is limited to the stated limits in the policy. The limit of liability is established by the requirements of the Motor Carrier Act of 1980—in general $750,000, $1 million, or $5 million, as required by the commodities transported.

## A Matter of Cancellation

The MCS-90 endorsement creates a dilemma for the insurance company regarding cancellation. The insurance policy cancellation is already controlled by individual state statutes that, while similar, have various nuances by state. The MCS-90 endorsement adds now a federal nuance, stating that:

> Cancellation of this endorsement may be effected by the company of[1] the insured by

---

[1]Older versions of the MCS-90 state that "Cancellation of this endorsement may be effected by the company or the insured ." It is unclear whether the federal government intended to change the meaning of this cancellation provision when the word "or" was replaced by the word "of" in this version of the endorsement; however, the federal statute on which this endorsement is based, Title 49, Section 387 7 of the Code of Federal Regulations, still provides for cancellation by either party

giving (1) thirty-five (35) days notice in writing to the other party (said 35 days notice to commence from the date the notice is mailed, proof of mailing shall be sufficient proof of notice), and (2) if the insured is subject to the FMCSA's registration requirements under 49 U.S.C. 13901, by providing thirty (30) days notice to the FMCSA (said 30 days notice to commence from the date the notice is received by the FMCSA at its office in Washington, D.C.).

Under item (1), the insurer is required to give the policyholder 35 days' written notice of cancellation. The clock begins to run "from the date the notice is mailed." It further states that a simple "proof of mailing" is sufficient evidence. This is accomplished by obtaining a Certificate of Mailing complete with postmark from the United States Post Office.

Ugly as the above is, there is more. Should the insured also be subject to the FMCSA registration requirements of 49 USC § 13901, then a 30-day notice is to be provided to FMCSA. Unlike the previous notice where proof of mailing starts the clock, the trigger in FMCSA notice fires upon receipt by FMCSA in its Washington, D.C., office. In this age of electronics and the Web, things are a bit easier because FMCSA will accept an electronic notification. However, caution is needed because again the burden of proof falls on the insurance company to prove it has met all the requirements to effect cancellation.

The real ugliness here is the reality that failure to give notice or properly effect a cancellation of the MCS-90 or policy (by issuing BMC 35, 36, or 85), leaves the insurer obligated with respect to coverage under the MCS-90 endorsement, which remains continuously in effect until canceled.

## Who Is an Insured

The MCS-90 endorsement uses the term "insured" without definition, therefore generat-

ing some questions at times. As a result, it continues to be an ongoing debate in legal circles. To the practitioner when reviewing a policy of insurance, one would review the policy in total and each attached form and endorsement as a total document. One would not pick and choose a particular language section or phrase and use it to establish what is meant. Lacking a formal definition of "insured" within an endorsement, one normally would look to the primary policy forms and apply that definition to the word "insured." Case closed? Not on your life!

There is another camp of legal scholars that holds to the belief that the word "insured" does not require any special definition since the federal regulations that promulgated the MCS-90 endorsement already defined the term "insured" to mean "the motor carrier named in the policy of insurance."

A recent case in point is *Pierre v Providence Washington Insurance Company*, 2002 WL 31770499 (NY, Dec. 12, 2002), where the court of appeals, by a split 4–3 decision, found that the MCS-90 endorsement attached to an insured's policy was applicable and obligated the insurance company to pay a default judgment entered against the owner and driver of a tractor leased to a registered motor carrier. The unit was being used in the carrier's business in New York where the accident occurred. The actual vehicle was both licensed and garaged in Pennsylvania. The plaintiff in this case sued only the owner and driver of the tractor involved in the collision. Testimony at trial revealed that the plaintiff did not know the name of the motor carrier at the time of the accident.

The owner-driver defaulted. The court then awarded a judgment of $250,000. Upon learning of the motor carrier, plaintiff began an action against it. Subsequently the plaintiff dropped that action and instituted an action suit against the motor carrier's insurance company, demanding payment of the judgment under the MCS-90 endorsement be-