```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT


MICHAEL BARBARULA,                :
Administrator of the Estate       :
of Jing Xian He,                  :
          Plaintiff,              :
                                  :
       v.                         :    3:02-cv-1142 (EBB)
                                  :
                                  :
CANAL INSURANCE COMPANY, et al.,  :
          Defendant.              :
```

RULING ON MOTION TO ADD OFFER OF JUDGMENT AND OTHER INTEREST

Plaintiff Michael Barbarula, Administrator of the Estate of Jing Xian He, ("Plaintiff" or "Barbarula"), moves the Court for interest in connection with this Court's Partial Summary Judgment ruling (Doc. No. 87) against Canal Insurance Company ("Canal") as to the validity and applicability of a federally created "MCS-90" endorsement to Canal's insurance policy (the "Policy"), at issue herein. In this Court's Partial Summary Judgment ruling, the Court found that, while the underlying insurance policy was cancelled pursuant to state law, the MCS-90, which is controlled by federal law, with a separate cancellation provision, remained in effect and thus provided one million dollars in coverage.

Oral argument on Plaintiff's motion was held on July 13, 2006. Plaintiff asserts that he is entitled to offer of judgment interest and postjudgment interest, not only on the $1 million awarded thus far in this pending federal case, but also on the $3.6 million judgment entered against Canal's insureds in state court.

Plaintiff argues that the policy and the endorsement are not separate, but rather the MCS-90 "revives" the underlying insurance policy, though the state court found that the policy was properly cancelled under state law. Canal v. Haniewski, No.CV-98-417942-S, 2001 WL 1517458 (Conn. Super. Ct. Nov. 13, 2001). Further, Plaintiff contends that the endorsement cannot have an existence of its own, and that without the policy, the MCS-90 is meaningless.

Canal, on the other hand, argues that the only document at issue for the purpose of litigation is the MCS-90. Canal also accepts that it is liable, per this Court's ruling, for $1 million pursuant to the MCS-90. Canal takes issue with the position that interest is owed on the one million dollars. It argues that the terms of the MCS-90 are clear in that it does not provide for any payments to the injured party over the limits of the insurance policy, which in this case is $1 million.

## FACTS

This case arises from a motor vehicle accident that occurred on September 12, 1996 at 6:31 p.m. on I-395 near Waterford, Connecticut. A tractor-trailer rig driven by Carlos Reummele on behalf of Barbara Haniewski and her company, Salguod Warehouse and Transport, collided with a car driven by Jing Xian He, exactly eighteen hours and thirty minutes after the insurance policy on the

tractor-trailer was cancelled due to nonpayment.[1]  Ms. He died as a result of the accident.  The insurer of the tractor-trailer involved in the fatal accident is the defendant in this case, namely Canal Insurance Company.

Initially, the deceased plaintiff's representative, Michael Barbarula, filed a wrongful death suit in state court against Reummele, Haniewski, and Salguod Warehouse and Transport. (Barbarula v. Haniewski, No. CV-97-0437585-S (Conn. Super. Ct. 1997)). Prior to trial in that case, on September 15, 1998, Canal filed a declaratory action in state court, naming Haniewski, Reummele, Eagle Leasing and Salguod Warehouse and Transport as defendants.[2]  Canal v. Haniewski, No. CV-98-417942-S, 2001 WL 1517458 (Conn. Super. Ct. Nov. 13, 2001). Canal sought to be absolved of both the duty to defend and the duty to indemnify the defendants, who were also Canal's insureds under the policy of insurance issued to them, as Canal claimed that the policy was properly cancelled pursuant to state law.  It also sought reimbursement for costs and attorney fees incurred in connection with defending its insureds. On November 13, 2001, Judge Blue issued his ruling in the declaratory action. Judge Blue ruled that

---

[1] The trailer portion of the rig was leased from Eagle Leasing. Eagle is no longer a party to this action. Eagle was not sued by Plaintiff in the underlying state court action, either.

[2] Barbarula petitioned the court to be joined as a defendant later in the proceeding and the court granted his request.

because the policy was properly cancelled under state law, Canal had no duty to defend its insureds. He also held that Canal was not entitled to attorney fees or costs, as they were sought in connection with the declaratory judgment action, and there was no basis for such an award. Judge Blue declined to rule on the issue of whether the MCS-90 endorsement to the policy, which is governed by federal law, was properly cancelled and what effect, if any, that would have on the pending wrongful death action.

On November 29, 2001, the jury in the wrongful death case against Haniewski, et al., produced a verdict for Plaintiff in the amount of $3.6 million. Plaintiff filed a motion to reopen the judgment and add offer of judgment interest to the verdict, as Plaintiff had offered to settle the case for $1 million. The court granted the request, and the judgment amount was increased to $5.7 million on April 24, 2002. (Exhibit I, Plaintiff's Local Rule 56(A)1 Statement).

Plaintiff next filed the instant action in federal court on July 1, 2002 against Canal, seeking compensation under Canal's insurance policy via Connecticut's direct action statute § 38a-321 and the MCS-90 endorsement attached to the insurance policy covering the tractor-trailer. Plaintiff also filed an offer of judgment in this case, in the amount of $1 million. Canal did not accept this offer to settle. This Court awarded plaintiff one million dollars in its partial summary judgment ruling, pursuant to

4

the MCS-90 endorsement that was never cancelled pursuant to federal law, and now Plaintiff is seeking offer of judgment interest and postjudgment interest in both the underlying state case and in the instant federal case.  Trial on Plaintiff's remaining bad faith claim against Canal for failure to settle is scheduled to commence September 5, 2006.

## LEGAL ANALYSIS

In a diversity of citizenship case,  prejudgment interest is governed by state law, and postjudgment interest is governed by federal law.  Brandewiede v. Emery Worldwide, 890 F. Supp. 79, 82 (D. Conn. 1994)(prejudgment interest governed by state law); Charts v. Nationwide Mutual Insurance Co., 397 F. Supp. 2d 357, 386, n.24 (D. Conn. 2005)(postjudgment interest governed by federal law).  The statute governing postjudgment interest in a federal case is 28 U.S.C. § 1961.  As for the state case, an award of postjudgment interest in Connecticut is a question of fact.  "A decision to deny or grant postjudgment interest is primarily an equitable determination and a matter lying within the discretion of the trial court."  Bower v. D'Onfro, 696 A.2d 1285 (1997).  Indeed, the statute governing postjudgment interest states that "interest at the rate of ten percent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable." Conn. Gen. Stat. § 37-3a).

A. The MCS-90, Insurance Policy, and Applicability of Pierre v.

<u>Providence Washington Insurance Company, 99 N.Y.2d 222 (N.Y. Ct. App. 2002)</u>

Before proceeding to the issue of interest in this case, the Court recognizes that it must address some preliminary issues, over which the parties differ greatly.  Plaintiff insists that the MCS-90 cannot be a stand-alone document, and its function was to somehow "revive" the underlying insurance policy, and that the two documents are intertwined.  Plaintiff cites to <u>Pierre v. Providence Washington Insurance Co.</u>, 784 N.E.2d 52 (N.Y. 2002), in support of his position.  He argues that the cancellation terms of the MCS-90 also govern the underlying insurance policy. Plaintiff cites to a book published by the Chartered Property Casualty Underwriter Society, entitled <u>The MCS-90 Book</u>, to support his argument regarding the strict MCS-90 cancellation requirements.  <u>See</u> Exhibit A to Plaintiff's Further Reply Memorandum.

When the underlying insurance policy is in effect, the two documents indeed may be read together.  <u>Pierre</u>, 784 N.E.2d at 60.  But here, that is not the case.  This Court notes that this is a case of first impression for any court in this circuit, possibly for the entire United States.  As such, <u>Pierre</u> is simply not instructive.  Never before (so far as this Court or the parties can tell) has there been a case where the underlying insurance policy has been cancelled and the MCS-90 has not been cancelled.  But this is the scenario now before this Court.  Plaintiff's attempts to

6

make the MCS-90 endorsement seem like any run-of-the-mill endorsement attached to an insurance policy is not correct and is not instructive.  Clearly, a document that can provide compensation to a plaintiff where no coverage in the attached policy exists, and cause the insured to reimburse its insurer, is not a typical endorsement, and cannot be treated as such.[3]

Additionally, Plaintiff's position that the MCS-90 is not a stand-alone document is a dangerous one.  If that were true, Plaintiff would recover nothing in either the state or federal court, as the policy was cancelled, and indeed it is only the MCS-90 that provides compensation in the form of a federally-designed "safety net" for members of the public injured by motor carriers.

Plaintiff points to a passage in The MCS-90 Book with respect to the strict cancellation provisions of the MCS-90, in support of his argument that the policy must still be in effect because the MCS-90 was not cancelled.  The Court, however, found this passage in The MCS-90 Book more instructive to the matter at hand:  "The real ugliness here is the reality that **failure to give notice or properly effect a cancellation of the MCS-90 or** policy (by issuing a BMC 35, 36, or 85), **leaves the insurer obligated with respect to coverage under the MCS-90 endorsement, which remains continuously**

---

[3] Canal Insurance Co. v. Carolina Casualty Insurance Co., 59 F.3d 281, 283 (1st Cir. 1995)(federally mandated safety net created for the public, not a typical endorsement).

**in effect until cancelled**." The MCS-90 Book, p.65; see Exhibit A to Plaintiff's Further Reply Memorandum. Thus, even Plaintiff's own authoritative source bolsters the Court's previous ruling that the MCS-90 is the only document at issue in this lawsuit.

B. Prejudgment ("Offer of Judgment") Interest

In Connecticut, there is a strong public policy to engage in pretrial negotiations and to settle cases before trial. See Cox v. Peerless Insurance Co., 774 F. Supp. 83 (D. Conn. 1991); Accettullo v. Worcester Insurance Co., 775 A.2d 943 (Conn. 2001). This policy is the rationale behind Connecticut's statute which awards prejudgment (also known as offer of judgment) interest to the plaintiff, should he offer to settle for the same or lower amount of money eventually awarded to him as a result of a completed trial. See Conn. Gen. Stat. § 52-192a. By enacting section 52-192a, the Connecticut legislature sought to encourage "fair and reasonable compromise between litigants" and to "penaliz[e] a party that fails to accept a reasonable offer of settlement." Blakeslee Arpaia Chapman, Inc. v. EI Constructors, Inc., 687 A.2d 506, 526 (Conn. 1997). This Court must take that public policy into consideration, because in federal court, state law governs the award of prejudgment interest. Brandewiede v. Emery Worldwide, 890 F. Supp. 79, 82 (D. Conn. 1994); Elgard Corp. v. Brennan Construction Co., 388 F.3d 30, 36-37 (2d Cir. 2004)(applying

Connecticut's prejudgment or "offer of judgment" statute). This Court must balance the important state public policy concerns with the policies promulgated by federal law. Connecticut's offer of judgment statute states as follows:

> After trial the court shall examine the record to determine whether the plaintiff made an offer of compromise which the defendant failed to accept. If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain specified in the plaintiff's offer of compromise, the court shall add to the amount so recovered eight per cent annual interest on said amount. The interest shall be computed from the date the complaint in the civil action was filed with the court if the offer of compromise was filed not later than eighteen months from the filing of such complaint. If such offer was filed later than eighteen months from the date of filing of the complaint, the interest shall be computed from the date the offer of compromise was filed. The court may award reasonable attorney's fees in an amount not to exceed three hundred fifty dollars, and shall render judgment accordingly. This section shall not be interpreted to abrogate the contractual rights of any party concerning the recovery of attorney's fees in accordance with the provisions of any written contract between the parties to the action.

Conn. Gen. Stat. § 52-192a(c). As this Court concurs with Judge Blue's ruling that the underlying policy was cancelled pursuant to state law, it now turns its focus to the federally mandated MCS-90 and whether offer of judgment interest should be awarded in conjunction with it.

Congress passed legislation enabling the MCS-90 endorsement to protect the public from interstate motor carriers who are inadequately insured. 49 C.F.R. § 387.7; <u>The Integral Insurance Co. v. Lawrence Fulbright Trucking, Inc.</u>, 930 F.2d 258, 260 (2d Cir. 1991). The endorsement is considered a "safety net," providing coverage only when the underlying policy does not. <u>Canal Insurance</u>

9

Co. v. Carolina Casualty Insurance Co., 59 F.3d 281, 283 (1st Cir. 1995); accord, Minter v. Great American Insurance Co., 423 F.3d 460, 470 (5th Cir. 2005). The MCS-90, standing alone, does not provide a duty to defend to an insured. Harco National Insurance Co. v. Bobac Trucking, Inc., 107 F.3d 733, 735-36 (9th Cir. 1997). Its benefits are meant for the protection of society at large, not for other insurance companies or the insured. Canal Insurance Co. v. First General Insurance Co., 889 F.2d 604, 611 (5th Cir. 1989). As a federally mandated form, it is not a typical endorsement to an insurance policy. Canal Insurance Co., 59 F.3d at 283. In fact, should the insurance company that issued the policy and the MCS-90 become obligated to pay a judgment pursuant to the MCS-90, it may seek reimbursement from the insureds. Travelers Indemnity Co. of Illinois v. Western American Specialized Transportation Services, Inc., 409 F.3d 256, 260 (5th Cir. 2005). Thus, the MCS-90 creates a surety relationship between the insured and the insurer. Harco National Insurance Co., 107 F.3d at 736.

Within the plain language of the endorsement, the MCS-90 does not provide for any additional payments beyond the limits of the underlying policy. Here, the policy limit was $1 million, which is incorporated into the MCS-90. "[T]he insurer agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance, or use of motor vehicles

10

. . . regardless of whether or not each motor vehicle is specifically described in the policy . . . ." See Doc. No. 42, Exhibit C to Plaintiff's Statement of Facts.  While the underlying insurance policy did in fact provide for payment of interest (See Doc. No. 42, Exhibit B to Plaintiff's Statement of Facts, p. 2), that policy is not before us now, as it has been cancelled.  Given that Canal no longer had a duty to defend its insureds due to the cancellation of the underlying insurance policy, it need not comply with the other terms found in the policy, either, including those pertaining to interest payments on judgments.  Connecticut, however, has an offer of judgment statute, and a strong public policy backing it.

In Cox v. Peerless Ins. Co., 774 F. Supp. 83 (D. Conn. 1991), the court discussed the underlying public policy of Connecticut's offer of judgment statute, in that it was designed to encourage settlement.  It stated that the award of prejudgment interest was a statutory right, triggered when a plaintiff files an offer of judgment with the court and subsequently receives a verdict for the same or a higher amount than the settlement offer on file.  Cox, 774 F. Supp. at 86; Conn. Gen. Stat. § 52-192a.  The court also noted that the award of offer of judgment interest, also known as prejudgment interest, was tied to the strategy of the defense and to the insurance policy.  The insurance policy at issue in Cox was silent as to prejudgment interest, and stated only that it would

11

cover "defense costs." Shortly thereafter, the policy language was changed to read, "[w]e will pay damages for bodily injury or property damage . . . . Damages include prejudgment interest awarded against the insured." Id. at 85.  The court stated:

An award of prejudgment interest arises from a defense attorney's strategic decision to reject an offer of settlement, and proceed to trial. Therefore, an award of prejudgment interest does not arise out of the action's underlying controversy, and is not taxed to the defendant's policy's $50,000 limit of liability as "damages", but rather is an expense associated with the "defense costs" and strategy of the case.

Cox, 774 F. Supp. at 86.  In the present case, the underlying policy was cancelled under state law and the state court found there was no duty to defend, and this Court concurred.  Canal, however, defended its insureds throughout the wrongful death case in state court.  Canal's decision to defend its insureds involved a concern that it might be liable for those defense costs, depending on how Judge Blue ruled on Canal's declaratory judgment action and its duty to defend its insureds.  The Superior Court ruled that Canal did not have a duty to defend, but the ruling was issued mere weeks prior to trial, and Canal was obliged to continue its defense of its erstwhile insureds.

Ultimately, the judgment in state court was against Haniewski, Salgoud, et al., not against Canal.  The parties have provided the Court with little evidence as to who decided not to settle.  There has been no presentation of evidence that would suggest that Canal's insureds were not consulted about settlement or what, if

12

anything, their opinions were on the subject. As such, the Court denies Plaintiff's motion for offer of judgment interest in the state court case.

As for offer of judgment interest in the current federal action, this Court finds no reason to withhold such an award, aside from the fact that the decision on this issue is not yet ripe. This case was filed against the insurer itself and squarely addresses Canal's responsibility, as issuer of the MCS-90 and the underlying policy, to compensate Plaintiff for the actions of its insureds. The Supreme Court of Connecticut faced just such a situation in Accettullo v. Worcester Insurance Co., 775 A.2d 943 (Conn. 2001). In Accettullo, plaintiff was injured by an uninsured motorist while she was driving her father's car. Accettullo, 775 A.2d at 945. Plaintiff brought suit against the insurer that issued the policy on her father's car for uninsured motorist coverage. Id. Prior to trial, plaintiff filed an offer of judgment of $450,000. Defendant insurance company rejected this offer and the case proceeded to trial before an attorney trial referee, who awarded plaintiff $475,000. Plaintiff then filed a motion for judgment interest. The trial court upheld the award of $475,000 and granted plaintiff's motion for interest. Defendant appealed, arguing that the uninsured motorist policy contained no provisions for payment of interest or costs beyond compensatory damages. Id.

The Supreme Court affirmed the trial court and upheld the

award of offer of judgment interest. Id. at 947. The Court, citing to several state court of appeals cases as well as some of its own decisions, stated that when offer of judgment interest is requested and the request complies with the statute, the award of interest is mandatory. Accettullo, 775 A.2d at 946. The award does not involve an analysis of the underlying facts or circumstances, including an insurance policy that does not provide for payment of interest. Id. In discussing the rationale behind the offer of judgment statute, the Court explained, "[t]his statutory provision clearly reflects the consequences at play when a party rejects a valid offer of judgment, proceeds to trial, consumes precious judicial resources, and ultimately is subject to a verdict that exceeds that offer. In this regard, the [insurance] policy limitations have no effect on the punitive nature of the statute or the clear legislative intent of § 52-192a to promote settlements and preserve judicial resources." Id. at 946-47.

Though the MCS-90 itself contains no provision for interest payments, Accettullo instructs that the provisions of any document authorizing payment[4] does not factor in to a determination of whether the award of interest is appropriate. Clearly, Plaintiff is entitled to receive it, as the offer of judgment in this case

---

[4] It is of no consequence whether the operative document in question is a promissory note, see Paine Webber Jackson & Curtis, Inc. v. Winters, 579 A.2d 545 (Conn. App. 1990), or an insurance policy, see Accettullo v. Worcester Ins. Co., 775 A.2d 943 (Conn. 2001).

14

was $1,000,000.  In addition, the punitive nature of Connecticut's offer of judgment statute correlates with Canal's obstinate refusal, over the course of many years, to settle this matter.

Plaintiffs submitted an offer of judgment in the pending federal case in the amount of $1,000,000 on December 2, 2002.  The complaint was filed on July 1, 2002.  This Court has ruled that Canal should have paid $1,000,000, pursuant to the policy limits. (Doc. No. 87, Ruling on Plaintiff's Motion for Partial Summary Judgment.) The judgment in this Court, however, is not final per the Connecticut offer of judgment statute.  The statute states: "**After trial** the court shall examine the record to determine whether the plaintiff made an offer of compromise which the defendant failed to accept. . . ." Conn Gen. Stat. § 52-192a(c)(emphasis added). The summary judgment ruling by this court was not a final judgment, which is what the statute means by the phrase "after trial." Turek v. George, 687 A.2d 1309, 1313 (Conn. App. 1997).  At the conclusion of the trial on the bad faith claim in this case, this Court will figure the offer of judgment interest that Canal will owe Plaintiff.  Currently, the interest amount in the federal action is $490,191.78.[5]

---

[5] This is based on the 12% per annum rate per statute and a 365-day year, from the date the complaint was filed to the date of final judgment. The statute was amended in 2005 to provide for eight per cent interest, but only applied to actions accruing on or after October 1, 2005. Prior to that date, twelve per cent was the rate of interest in the statute. CONN. GEN. STAT. § 52-192a.

15

C. Postjudgment Interest

Plaintiff also seeks postjudgment interest in both the state wrongful death case as well as the federal case currently before this court. In federal cases based on diversity of citizenship, federal law governs postjudgment interest, pursuant to 28 U.S.C. § 1961. See Charts v. Nationwide Mutual Insurance Co., 397 F. Supp. 2d 357, 386, n.24 (D. Conn. 2005). This will not be ripe for decision, however, until this Court has ruled on the bad faith claim in September, which will be the "final judgment" in the federal case.

As for the state case, an award of postjudgment interest in Connecticut is a question of fact. "A decision to deny or grant postjudgment interest is primarily an equitable determination and a matter lying within the discretion of the **trial court**." Bower v. D'Onfro, 696 A.2d 1285, 1288 (Conn. 1997) (emphasis added). Indeed, the statute governing postjudgment interest states that "interest at the rate of ten percent a year, and no more, **may** be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable." Conn. Gen. Stat. § 37-3a (emphasis added). When a party seeking postjudgment interest "cannot be said to have wrongfully delayed the matter and there is a rescript that modifies a judgment, postjudgment interest is to run from the date of the original judgment." TDS Painting and

Restoration, Inc. v. Copper Beech Farm, Inc., 808 A.2d 726, 739 (Conn. App. 2002) (citations omitted).

Plaintiff moved to re-open the judgment and add offer of judgment interest after the final judgment was entered in the state case. The state court granted the motion on April 24, 2002, and thus increased the final judgment amount to approximately $5.7 million. Plaintiff diligently pursued prejudgment interest; yet, Plaintiff never sought postjudgment interest from the trial court in the state case. This Court has examined the case docket and checked with the state court clerk's office to ascertain this fact. Connecticut law is quite clear that such an award is within the discretion of the trial court. The trial court in that matter was the Connecticut Superior Court. This court cannot provide Plaintiff with the relief he seeks, and his request is therefore denied.

## CONCLUSION

Plaintiff is not entitled to interest at this time, and his motion is therefore denied.

SO ORDERED.

_____
ELLEN BREE BURNS
SENIOR UNITED STATES DISTRICT JUDGE

Dated at New Haven, Connecticut this \_\_\_\_ day of July, 2006.

