UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

MICHAEL BARBARULA, Administrator of the
Estate of Jing Xian He,

                        Plaintiff,

vs.

CANAL INSURANCE COMPANY,

                      Defendants

Civil Action No. 3:02-CV-1142
(EBB)

AUGUST 16, 2006

**MEMORANDUM OF LAW IN SUPPORT OF CANAL INSURANCE
COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE
ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

<u>**INTRODUCTION**</u>

In its prior orders this Court has held that Canal Insurance Company's

("Canal") MCS-90 endorsement was still in effect at the time of the loss in

question, but that the Canal policy issued to Barbara Haniewski dba Salguod

Warehouse & Transport ("Haniewski") had properly been canceled prior to

the loss.  Only the bad faith claim of plaintiff Michael Barbarula ("Barbarula")

set forth in Count Two, remains to be adjudicated.

The plaintiff argues that Canal had the opportunity, during the trial of

the underlying wrongful death case, to settle his bodily injury action against

Haniewski prior to judgment, and, in failing to do so, acted in bad faith.  This

allegation fails as a matter of law because the insurance policy out of which a

duty to settle might have arisen under Connecticut law was properly canceled

and because the MCS-90 does not impose any duty to settle. The plain

language of the MCS-90 and the case law interpreting it, give an insurer the option to settle cases to protect <u>its own</u> interests, but do not require any payment until judgment is entered.  Since there is no duty to settle there can be no question of bad faith for failing to settle.  Canal owed no legal duty to Haniewski; by extension, it owed no duty to plaintiff and is, therefore, entitled to judgment on the bad faith claim as a matter of law.

## STATEMENT OF FACTS

Barbarula, as administrator of the estate of Jian Xian He, brought a personal injury action in July, 1997, in Connecticut Superior Court, case no. CV97 0437585 S (the "underlying action"), for damages incurred in a September 12, 1996, motor vehicle accident involving a truck operated by Carlos Reummele on behalf of Barbara Haniewski dba Salguad Warehouse & Transport (hereinafter, collectively, "Haniewski").  Canal, which had issued liability policy number 30 99 23 to Haniewski (the "Canal policy"), asserted that the policy had been canceled prior to the accident, but offered to provide Haniewski with a defense in the underlying action subject to a reservation of rights.  Canal's reservation of rights letter, first sent to Haniewski by certified mail, return receipt requested, on or about July 9, 1997, and then sent by regular mail on or about September 3, 1997 (cf. Exhibit 1, attached hereto), stated in pertinent part:

> Please be advised that Canal Insurance Company has decided to provide a defense to you with respect to this claim under a reservation of rights.  It is the position of Canal Insurance Company that no coverage was afforded to you under the policy

of insurance issued by Canal Insurance Company to Barbara
Haniewski dba Salguad Warehouse and Transport, policy 30 99
23, for the reason that said policy was canceled due to non-
payment of premium effective at 12:01 a.m. on September 12,
1996.  Therefore, it is the position of Canal that there is no
coverage for any claims that may be asserted against you as a
result of the accident involving the vehicle operated by
Ruemmele on Interstate 95 at approximately 6:30 p.m. on
September 12, 1996.

…

Canal Insurance Company has decided to defend the claims
being made against you under a reservation of rights and
without waiving any rights that Canal has to withdraw a defense
and to refuse to indemnify you in the event that any judgment is
obtained against you.   Canal Insurance Company further
reserves its right to withdraw its defense of you at any time.
Any action that Canal Insurance Company may take in the
investigation and/or defense of this occurrence is not to be
construed as a waiver of any of the policy terms and conditions
contained in policy 30 99 23…..

… [I]t is the express intent of this correspondence to advise you
that it is the position of Canal Insurance Company that no
coverage is afforded to you under the terms of policy 30 99 23
due to the fact said policy was canceled for non-payment of
premium effective at 12:01 a.m. on September 12, 1996.

In addition to issuing this reservation of rights, on September 15, 1998,

Canal commenced a declaratory judgment action against Haniewski, and

Barbarula in Connecticut Superior Court, case no. CV 98 0417942 S (the

"declaratory judgment action"), seeking judicial confirmation that the Canal

policy issued to Haniewski had been canceled properly and effectively prior to

the date of the subject motor vehicle accident.  On November 13, 2001, the

court granted summary judgment in favor of Canal on this issue, holding:

The substantive question of Canal's duty to defend the insured
parties is easily answered.  Canal has no such duty.  Any duty it
has arises under the policy, and the policy (for duty to defend
purposes) was fully and effectively canceled prior to the

accident in question.   Condition 10, of the policy, governing
cancellation of the policy, has been fully complied with.

As mentioned, there is an active, and as yet unresolved, dispute
as to whether the MCS-90 endorsement has been canceled.
That dispute, however important to Barbarula, has no
applicability to Canal's duty to defend the insured parties. (This
is the one point on which Canal and Barbarula agree.)   As
mentioned, the court's construction of the MCS-90 is governed
by federal law.   Under federal law, "the MCS-90 does not
implicitly create a duty to defend." *John Deere Insurance Co. v.
Nueva*, *supra*, 229 F.3d at 857.

Canal thus has no duty to defend the insured parties in the
underlying action.

On November 26, 2001, Canal wrote again to Haniewski (cf. Exhibit 3,

attached hereto), stating in pertinent part:

I am enclosing a copy of Judge Blue's order which was recently
handed down in the coverage action.   Due to some unclear
language in the judge's order, we will continue to defend you
notwithstanding the lack of coverage which we have previously
explained.

Please be advised that we will not respond to any judgment
under the indemnity portion of Canal policy, 30 99 23.

If Canal Insurance Company is required to issue any payment
as a result of judgment against either of you pursuant to the ICC
(MCS-90) endorsement attached to policy, 30 99 23, we will
demand reimbursement from you pursuant to the terms of this
endorsement.

Recently, there have been discussions with Attorney Michael
Stratton, who represents the estate of the deceased.  We wish
to inform you that these negotiations were undertaken solely
because of possible obligations under the potential ICC filing.
Once more, we reiterate that we will continue to defend you
under a reservation of rights, as we have previously explained,
and that our position remains the indemnity portion of your
policy does not apply.

A copy of this letter was also mailed to Attorney Brian Smith at Berchem, Moses & Devlin, P.C., the defense counsel retained by Canal to represent Haniewski and Ruemmele in the underlying tort case. (cf. Exhibits 2 and 3 attached hereto.)

A jury rendered a verdict of $3,600,000 in favor of Barbarula in the underlying action on November 29, 2001, and the state court, after adding offer of judgment interest in the amount of $2,100,000, entered judgment for the plaintiff in the total amount of $5,700,000 on April 23, 2002. (This Court recently ruled that Canal has no obligation to pay the portion of the judgment representing the offer of judgment interest in the underlying case.) Barbarula filed his complaint in the present action against Canal in the Connecticut Superior Court, on or about June 6, 2002, which action was removed subsequently to this Court.  Count One and Count Three of the complaint asserted that Canal was liable to satisfy Barbarula's judgment in the underlying action, up to the $1,000,000 limit provided either under the Canal policy or the "MCS-90" endorsement contained in that policy.  On September 20, 2004, this Court held that Canal had no duty to indemnify Haniewski against the judgment under the terms of the Canal policy, because the policy had been canceled prior to the loss in question.  However, the Court found that Canal was obligated to pay $1,000,000 of the judgment pursuant to the terms of the MCS-90 endorsement.   (This holding, that Canal's entire exposure arises under the MCS-90, and not under the policy, was reaffirmed in the Court's opinion of August 3, 2006.)

In addition to those allegations in the complaint in which plaintiff claimed that Canal was obligated to pay the plaintiff $1,000,000 under the MCS-90, (which have already been ruled upon by this Court), the plaintiff also seeks compensatory damages for alleged bad faith on Canal's part, as set forth in Count Two of the complaint, which states, in pertinent part [emphasis added]:

> 8.    *During the underlying litigation*, the defendant Canal was given numerous opportunities to settle *within the policy limits.*

> 9.    The failure of Canal to settle *within the policy limits* exposed the insureds to damages in *excess of the policy limits.*

> 10.   Canal *breached its duty* to act fairly and in good faith *to its insured,* and should be held liable for the total judgment.

The issue before the Court in the present motion, therefore, is whether as a matter of law, Canal can be held liable to Barbarula, for that portion of the judgment which exceeds the $1,000,000 limit of the MCS-90 endorsement, on a theory of breach of good faith allegedly owed to "the insureds" for failure to settle "within the policy limits" where the policy was properly canceled before the subject accident.

## ARGUMENT

**THERE CAN BE NO DUTY TO SETTLE ARISING OUT OF CANAL'S POLICY SINCE THE POLICY WAS CANCELED. FURTHERMORE, THERE IS NO LEGAL DUTY OWED BY CANAL TO SETTLE UNDER THE MCS-90. THEREFORE, THE PLAINTIFF HAS FAILED TO ALLEGE A VALID, LEGALLY COGNIZABLE CAUSE OF ACTION FOR BAD FAITH.**

**A.    Barbarula's Claim is Derivative and Can Rise No Higher Than Haniewski's Rights Against Canal.**

Plaintiff's bad faith claim is built on the assumption that Canal had a duty to weigh offers of settlement and, if plaintiff presented a reasonable settlement offer, a duty to settle and thereby protect the interests of the insured. Canal acknowledges that under Connecticut state law, if an insurance policy is in effect, such a duty may, in fact, exist. Here, though, as this Court has recently reaffirmed, the insurance policy was no longer in effect. No duty to settle-or to protect the former insured's interests-exists under the MCS-90, as more fully set forth herein.

Count Two of Barbarula's complaint in the present matter asserts that Canal breached a duty of good faith to its insured, Haniewski. The complaint does not, however, set forth any clear basis for Barbarula's claim to damages based on Canal's alleged breach of duty owed to its insured, but Barbarula presumably seeks to proceed under Connecticut's direct action statute, Connecticut Statutes § 38a-321.[1]

---

[1] Barbarula, as a matter of law, cannot assert a claim in his own right based on Canal's alleged bad faith failure to settle. *See Bourget v. Government Employees Ins. Co.*, 456 F.2d 282, 287 (2d Cir. 1972):

> Little need be written with respect to plaintiffs' suggestion that, even absent the statute, they are entitled to sue for the excess judgment in their own right or by subrogation to the rights of the insured. The decisions have been practically unanimous in following Professor Keeton's statement, *supra*, 67 Harv.L.Rev. at 1176:
>
>> The excess liability of company arises out of the relationship between insured and company. Claimant is a stranger to that relationship.

Furthermore, the very language of the MCS-90 sets forth what Barbarula's limited right is vis-a-vis Canal: He could bring a direct action against Canal "…upon failure of the company to pay any final judgment recovered against the company to compel such payment." Elsewhere, the MCS-90 states that "the company shall not be liable for amounts in excess of $1,000,000 for each accident." Thus, Barbarula had no independent cause of action against Canal until after a judgment was rendered, and then, only to compel payment of the limit listed in the MSC-90, or said differently, Canal owed no independent duty to pay Barbarula,

Under Connecticut Statutes § 38a-321, theoretically, Barbarula, as a judgment creditor of Haniewski, could bring a direct action against Canal, but only to assert those rights (whether for coverage under a policy or for extra-contractual damages)  which could be asserted by Haniewski herself.  The statute provides:

> Each insurance company which issues a policy to any person, firm or corporation, insuring against loss or damage on account of the bodily injury or death by accident of any person, or damage to the property of any person, for which loss or damage such person, firm or corporation is legally responsible, shall, *whenever a loss occurs under such policy*, become absolutely liable, and the payment of such loss shall not depend upon the satisfaction by the assured of a final judgment against him for loss, damage or death occasioned by such casualty.  No such contract of insurance shall be canceled or annulled by any agreement between the insurance company and the assured after the assured has become responsible for such loss or damage, and any such cancellation or annulment shall be void. Upon the recovery of a final judgment against any person, firm or corporation by any person, including administrators or executors, for loss or damage on account of bodily injury or death or damage to property, *if the defendant in such action was insured against such loss or damage at the time when the right of action arose* and if such judgment is not satisfied within thirty days after the date when it was rendered, *such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment.* (Emphasis added.)

On its face, therefore, the statute allows a judgment creditor to pursue an action against a defendant's insurer only "to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment...."  Moreover, a judgment creditor's

---

until *after* a judgment was rendered against the motor carrier. Moreover, Canal's maximum exposure to Barbarula would be $1,000,000 and no more.

action against an insurer under § 38a-321 lies only "if the defendant in such

action was insured against such loss or damage at the time when the right of

action arose...."

It has now been established, as a matter of law in this case, that the

Canal policy issued to Haniewski had been canceled properly and effectively

prior to the date of the motor vehicle accident giving rise to Barabarula's

cause of action.   As a matter of law, therefore, Haniewski has no right to

insurance coverage under the Canal policy in question for any liability arising

out of the subject accident.   *See Tiedemann v. Nationwide Mut. Fire Ins. Co.*,

164 Conn. 439, 445-46, 324 A.2d 263, 266 (1973), in which the plaintiff as

judgment creditor brought an action under the predecessor statute to § 38a-

321 to enforce a judgment against the defendant's insurer:

> The basis of the plaintiffs' claim against McGlynn is a fire which
> occurred on March 4, 1962, over two months after the policy
> period had expired.  Even assuming the truth of the allegations
> made by the plaintiffs in their suit against McGlynn, we cannot
> agree that the accident causing the loss complained of was
> covered under the policy of insurance between Nationwide and
> McGlynn.... Obviously, the plaintiffs can claim no greater rights
> against Nationwide than could the insured, McGlynn, and have
> no action against Nationwide for a liability of McGlynn which
> was not insured. We conclude, therefore, that the claim on
> which the plaintiffs recovered a judgment against McGlynn was
> not one for which McGlynn had contracted insurance coverage
> with Nationwide, and that Nationwide stands absolved of any
> duty to answer the adjudged liability of McGlynn since it had no
> duty to defend the action against McGlynn.

*See also Deloreto v. American Policyholders Ins. Co.*, 10 Conn. Supp. 136

(Super. Ct. 1941) ("The accident which was the basis of the claim against this

plaintiff did not occur during the policy period, since the accident occurred

9

June 17, 1939, and the policy having been returned June 1, 1939, for cancellation and having been canceled on that date when a new policy was issued to the new owner.").

This Court, as well, recognized that cancellation of its policy absolved Canal of any duty to defend Haniewski and also relieved Canal of any duty under the policy to indemnify Haniewski. *Barbarula v. Canal Ins. Co.*, 353 F. Supp. 2d 246 (D. Conn. 2004), *quoting DaCruz v. State Farm & Casualty*, 268 Conn. 675, 688, 846 A.2d 849, 849 (2004) ("Because the duty to defend is significantly broader than the duty to indemnify, 'where there is no duty to defend, there is no duty to indemnify....'").  Since Haniewski had no right under any Canal policy to be indemnified for any liability arising in the underlying action, Canal had no duty under any policy to settle such liability for Haniewski.  To the extent Barbarula's rights are derivative of Haniewski's contractual rights against Canal, which are non-existent, Barabarula's claim against Canal for failure to settle must be dismissed.

Simply put, there is no legal basis for Haniewski to sue Canal for bad faith.  Any bad faith cause of action for failure to settle that could possibly arise out of an insurance policy under state law in Connecticut is not available to Haniewski since the insurance policy was canceled.  A claim brought pursuant to §38a-321 is derivative, and since Haniewski, herself, would have no valid cause of action for the alleged bad faith refusal to settle arising from the canceled policy, Barbarula, who stands in the shoes of Haniewski, could have no cause of action for Canal's alleged bad faith refusal to settle.

The only remaining issue, therefore, is whether the MCS-90 imposed a duty on Canal to settle the claims against Haniewski.  As set out below, no such duty existed.

**B.    Canal Owed No Duty to Haniewski Under the MCS-90 Endorsement.**

The MCS-90 endorsement does not support either a direct or derivative cause of action by Barbarula based upon Canal's failure to settle the underlying case before judgment had entered.  On the face of the MCS-90 endorsement, Canal's obligations to pay Barbarula are triggered only by a judgment against Haniewski.  There is nothing in the language of the MCS-90 endorsement which imposes a duty on the issuing insurer to settle a claim against the insured motor carrier, and Barbarula had no direct claim against Canal under the endorsement until judgment in his favor was awarded.  While the MCS-90 endorsement may create an obligation to compensate an injured plaintiff, the endorsement is not liability insurance and creates no rights in Haniewski.  *See White v. Insurance Co. of State of Pa.*, 405 F. 3d 455, 458 (6th Cir. 2005) (the MCS-90 endorsement "is not insurance"); *National Am. Ins. Co. v. Central States Carriers, Inc.*, 785 F. Supp. 793 (N.D. Ind. 1992) (holding "that the [government] endorsement does not constitute insurance coverage per se."); *Fireman's Fund Ins. Co. v. CNA Ins. Co.*, 177 Vt. 215, 229, 862 A. 2d 251 (2004), *citing Progressive Casualty Ins. Co. v. Hoover*,

570 Pa. 423, 809 A. 2d 353, 360 n. 11 (2002) (the MCS-90, "does not create

coverage where there is none....").

The terms of the policy do not attach to the MCS-90, as this Court has

held. In other words, the insurance policy, having been properly canceled, falls

away and the MCS-90 stands alone in this instance. Thus it is the unanimous

view of the case law that there is no duty to defend if the policy, for whatever

reason, is not applicable and the insurer's only obligation is based on the MCS-

90. *Harco National Ins. Co. v. Bobac*, 107 F.3d 733, 735-736 (9th Cir. 1997);

*Northland Ins. Co. v. New Hampshire Ins. Co.*, 63 F. Supp. 2d 128, 139 (D.N.H.

1999); *Canal Ins. Co. v. First General Ins. Co.*, 889 F. 2d 604, 611-612 (5th Cir.

1989); *National American Ins. C. v. Central States Carriers, Inc.*, 785 F. Supp.

793, 797 (N.D. Ind. 1992); *Carolina Cas. Ins. Co. v. Ins. Co. of N. Am.*, 595 F.

2d 128, 144 (3d Cir. 1979).

For the same reason, there is no duty to settle under the MCS-90. The

endorsement provides, in pertinent part, as follows:

> ...[T]he insurer (the company) agrees to pay, within the limits of
> liability described herein, any final judgment recovered against
> the insured for public liability resulting from negligence in the
> operation, maintenance or use of motor vehicles subject to the
> financial responsibility requirements of Sections 29 and 30 of
> the Motor Carrier Act of 1980...

Thus until a final judgment is entered the insurer has no obligation to do

anything under the endorsement. Having said that, the courts recognize that

an insurer may opt to settle a case prior to judgment if it wishes to do so, and if

it does, it will still be permitted to seek reimbursement from its insured or from

another insurer which provides actual coverage for the loss. *Canal v. First*

*General*, *supra at 612* ("the ICC endorsement created in Canal a manifest interest in controlling the litigation to minimize the size of any judgments," and thus Canal was not a volunteer); *T.H.E. Insurance Co. v. Larsen Intermodal Services, Inc.*, 242 F. 3d 667, 676 (5th Cir. 2001) ("If the insurer must pay a final judgment under the MCS-90, there is no reason why it could not seek a favorable settlement rather than risk litigating to a final judgment that could be more onerous.")   The language of the Fifth Circuit is quite explicit: in determining whether or not to settle a case when only an MCS-90 applies, the insurer has no obligation to the motor carrier.  It is <u>permitted</u> to settle a claim or a suit if it believes that it can thereby reduce its <u>own</u> exposure, or for any other reason that appeals to its own interests.  There is, however, not even a hint in the endorsement or case law that requires the insurer to consider the motor carrier's interests under the MCS-90.  That is because the motor carrier has no rights under the MCS-90, which exists for the benefit of the public up to the monetary limit contained in the MCS-90, and not for the benefit of the motor carrier.

Thus the MCS-90 insists that "all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company."  In other words, where the policy does not apply (whether because, as here, it has been canceled, or for any other reason such as the fact that the loss arose out of the use of a non-covered auto, or the insured's failure to give prompt notice), the MCS-90 does not in any way restore coverage.  Quite the opposite is true; the insured

"agrees to reimburse the company (i.e., the insurer) for any payment made by the company on account of any accident, claim or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement." The first rule of insurance law is that an insurer may not subrogate against its own insured. *Falconer v. Penn Maritime, Inc.*, 397 F. Supp. 2d 144, 150 (D. Maine 2005) (subrogation against insured is contrary to basic insurance principles); *Lussier v. Runyon*, 50 F.3d 1103, 1110 (1st Cir. 1995), cert. den. 516 U.S. 815; *Adams v. Union Mediterranea Di Sicurta*, 364 F.3d 646, 656 (5th Cir. 2004). The very fact that such reimbursement is required when payment is made under an MCS-90 is the strongest evidence that the insured has lost all of his rights under the policy when payment is made under an MCS-90. In fact, as the *Fifth Circuit pointed out in Minter v. Great American Ins. Co. of N.Y.*, 423 F.3d 460, 470 (5th Cir. 2004), the MCS-90 is triggered precisely when there is no policy coverage.

Under § 38a-321, where an insurer which has policy coverage fails to satisfy a judgment against its insured promptly, the statute gives the judgment creditor the right to bring a direct action against the insurer; it succeeds to the right that the insured itself would have had to demand repayment from the insurer had the insured paid the judgment. Where, as here, the insurance policy is not applicable, and the insurer's sole exposure is based on the MCS-90, the direct action statute is simply not applicable. That is because under the terms of the MCS-90, a motor carrier could not pay a judgment and then

14

seek reimbursement from the insurer—clearly, it is the other way around. It is the insurer which is entitled to full reimbursement from the insured when it pays under the MCS-90. *See* 49 **C.F.R.** § 387.15 (setting out the MCS-90 text) ("The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement."); cf. *Raintree Trucking Co. v. First Am. Ins. Co.*, 245 Ga. App. 305, 534 S.E.2d 459 (Ga. Ct. App. 2000) (where insured paid judgment, insured was not entitled to reimbursement from insurer whose only exposure was under state equivalent of MCS-90).

Since the Canal policy issued to Haniewski was canceled prior to the loss, Haniewski was nothing more than a former insured to whom Canal owed nothing. Canal repeatedly wrote to Haniewski before judgment was rendered in the underlying case (she was apparently insufficiently interested in the trial to even show up) that it had no coverage and that it was only the possibility of exposure under the MCS-90 which accounted for Canal's defense of the case. In fact, this Court has concluded that the MCS-90 remained in effect at the time of the loss. As noted, *supra,* however, the MCS-90 was created to protect the public and offers no rights to the insured.

The case law offers not even a hint of any duty to settle under the MCS-90. In fact, the only discussion of the issue counsel has been able to locate is the recently decided *McGirt v. Royal Ins. Co. of America*, 399 F. Supp. 2d 655,

669 (D. Md. 2005). In that case, the plaintiff, like plaintiff here, convinced the court that there was an applicable MCS-90 which required the insured to pay a final judgment. The insured McGirt also asked the Maryland court to award him attorney fees expended in the declaratory judgment action on the theory that an insured is entitled to attorneys fees when it is forced to resort to litigation in order to enforce its liability insurer's contractual duty to provide coverage. McGirt, in short, wanted the insurer to settle the case rather than litigate its exposure and sought to punish the insurer for not settling by recovering his attorney fees and costs. The court, noting that the insurer had no contractual duty under the policy, held that the insurer's "contentions about whether the MSC-90 applies, and what its effect should be, do not constitute the sort of recalcitrance to fulfill an insurance obligation… [which could justify an order that the insurer must pay the insured's legal fees and expenses incurred to litigate the coverage issue.] *Id.*

In short, Canal had no duty to settle or do anything else in the underlying litigation since its potential exposure was based solely on the MCS-90, which exposure could not become a legal obligation until after judgment was rendered in the underlying tort case. In fact, Canal would have been entirely within its rights had it chosen not to defend the underlying action, to allow the plaintiff to obtain a judgment against Haniewski and only then to pay the $1,000,000 to the plaintiff pursuant to the MCS-90. Had that course of action been followed, which would have been perfectly proper under the law, Haniewski would be liable, just as she is now, to the plaintiff for that portion of the judgment in

16

excess of the $1,000,000 limit of the MCS-90, and furthermore, Haniewski would also be liable, just as she will be once the money is paid by Canal under the MSC-90, to reimburse Canal the $1,000,000 paid by it under the MCS-90. The fact that a legal defense was provided by Canal to Haniewski under a reservation of rights does not alter the legal rights and obligations of the parties.

Pursuant to the terms of the MCS-90, an insurer is permitted to settle, but is not obligated to do so. If the insurer does choose to settle pursuant to the MCS-90, such insurer could then seek reimbursement from the motor carrier. *See T.H.E. Ins. Co. v. Larsen Intermodal Servs., Inc.*, 242 F.3d 667, 676 (5th Cir.2001) ("If the insurer must pay a final judgment under the MCS-90, there is no reason why it could not seek a favorable settlement rather than risk litigating to a final judgment that could be more onerous....[T]he reimbursement provision of the MCS-90 permits the insurer to recover "any payment," not just final judgments, that the insurer would not have been obligated to pay except for the agreement contained in the MCS-90."). Neither the language of the MCS-90, nor the federal legislation spawning the MCS-90, nor the federal case law construing the MCS-90 creates an obligation on the part of the insurer to settle. [2]

---

[2] Based upon comments made by plaintiff's counsel at the status conference on August 8, 2006, it appears that the plaintiff will rely upon *PSE Consulting Inc. v. Frank Mercede and Sons, Inc.*, 267 Conn. 279, 838 A.2d, 135 (2004). However, that case, which does not even involve an MSC-90 endorsement, certainly does not stand for the proposition that the issuer of an MCS-90 owes, to the motor carrier, a duty to settle. That case, which involved a true suretyship, merely held that if and when a surety actually does settle and then seeks reimbursement, the settlement should have been made in good faith or the insurer's reimbursement rights might be compromised. Canal will further discuss the inapplicability of the *PSE Consulting* case in greater detail, if necessary, in its Reply to the plaintiff's objection to this motion.

Canal's assumption of Haniewski's defense imposed no duty on Canal to advance money, pursuant to its MCS-90 endorsement, to settle the Barbarula claim before judgment was rendered in the underlying case. Canal's defense of Haniewski was undertaken under an express reservation of its right to refuse to indemnify Haniewski, should the facts demonstrate that the policy imposed no obligation on Canal to do so. As stated above, this Court found that Canal had no obligation under its policy to indemnify Haniewski. Canal's refusal to do so, notwithstanding its defense of Haniewski under a reservation of rights, cannot support a claim of bad faith. *See City of West Haven v. Hartford Ins. Co.*, 221 Conn. 149, 165, 602 A.2d 988, 996 (1992), *quoting Basta v. United States F & G Co.*, 107 Conn. 446, 450, 140 A. 816, 816 (1928) ("An insurer is not estopped to set up the defense that the assured's loss was not covered by the contract of indemnity by the fact that the insurer participated in the action against the assured, if at the same time it gives notice to the assured that it does not waive the benefits of such defense.").

## CONCLUSION

At the time of the loss in question, and at all times subsequent, there was no insurance contract in effect between Canal and Haniewski. Canal, therefore, had no contractual duty to settle any claim nor does Canal have any duty to satisfy any judgment against Haniewski. Pursuant to the MCS-90 endorsement, assuming it was in effect at the time of the accident, Canal's only obligation would be to compensate the plaintiff, up to $1,000,000 <u>after</u> he

obtained the judgment against Haniewski. The MSC-90, however, imposed no duty, statutory or contractual, to settle a claim against Haniewski before judgment entered. Consequently, Barbarula's claims for bad faith failure to settle as set forth in Count Two fail to state a valid, legally cognizable cause of action against Canal. Therefore, judgment should enter in favor of Canal on Count Two.

THE DEFENDANT
CANAL INSURANCE COMPANY


BY _Karen L. Karpie_
KAREN L. KARPIE, Esq.
MURPHY and KARPIE, LLC
350 Fairfield Avenue, Suite 408
Bridgeport, CT 06604
Federal Bar #CT 04269
Tel. 203-333-0177, Fax 203-333-8475
E-mail: klkarpie@sbcglobal.net


## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed, U.S. Mail, postage prepaid and faxed/or e-mailed on August 16, 2006 to:

Michael Stratton/Joel Faxon
Stratton Faxon
59 Elm St.
New Haven CT 06510

_Karen L. Karpie_
KAREN L. KARPIE